UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALANA CAIN, ET AL.   )<br>)<br>v.   )<br>)<br>THE CITY OF NEW ORLEANS, et al.  )<br>) | CIVIL ACTION NO. 15-4479<br><br>(CLASS ACTION)<br><br>JUDGE VANCE<br><br>MAG. WILKINSON |

### Opposition to Motion for Preliminary Injunction
by the Judges of Orleans Parish Criminal District Court, their Judicial Administrator, and the Orleans Parish Criminal District Court

**May It Please The Court**:

Plaintiffs, who are also state court criminal defendants, seek extraordinary relief—they want this Court to enjoin the entire Orleans Parish Criminal District Court bench from following, applying, and enforcing state law in the exercise of their judicial powers. Plaintiffs' request does not stop there; they also ask this court to unilaterally fashion an entirely new system for the judges to follow and implement pending disposition of their complaint. This Court lacks subject matter jurisdiction under three important and controlling federal abstention doctrines. Issuing an injunction under the circumstances presented will place this Court directly at odds with Supreme Court dictates about the proper role of federal courts in balancing federal/state comity. This Court lacks the required statutory authority to enjoin a state judicial officer; to do so would violate both 42 U.S.C.§1983 and the Anti-Injunction Act, 28 U.S.C. §2283.

Of the five named plaintiffs, four are currently fulfilling their sentences and are participants in ongoing state court proceedings. The fifth has satisfied his sentence and is not in jeopardy of being arrested for that reason; his claim for injunction is moot. Finally, the rules and

{00452879 - v1}

considerations for preliminary injunctions are to be narrowly construed and such injunctions should be rarely granted. Their purpose, if appropriate, is to maintain the status quo. But that is hardly what these plaintiffs want; they seek a complete abrogation of the status quo and imposition of a judicially contrived system pending completion of this litigation. Such broad relief has never been a sufficient ground for injunctive relief; to the contrary, it is a ground to deny it.

To assist the Court, Defendants offer certified true copies of the dockets pertaining to the named plaintiffs.  These materials include the history of their payments of, and failure to pay, assessed fees and costs as part of their sentences. In summary form, defendants oppose the preliminary injunction because:

1. This Court lacks jurisdiction to issue a preliminary injunction under the abstention doctrines of *Younger*[1] and *Burford.*[2]

2. Plaintiffs had and continue to have the opportunity under state law to change or modify that portion of their sentence pertaining to fees and costs on the grounds of their inability to pay. They have the opportunity to change the payment schedule. As shown by the Exhibits 1-5, except for occasional extensions to pay no other relief has been sought by plaintiffs.  Under the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction to review state court judgments.[3]

3. The defendant judges and their agent, the judicial administrator, are absolutely immune from suit, including prospective injunctive relief. 42 U.S.C. 1983 prohibits injunctions against a judicial officer in his judicial capacity; they "shall not be granted unless a

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).
[2] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).
[3] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

    declaratory decree was violated or declaratory relief was unavailable." The proposed injunction seeks to prohibit state court judges and their agents from conducting their judicial activities in accordance with state law.

4. As evidenced by Exhibits 1, 2, 3, and 4, state court criminal proceedings are ongoing respecting plaintiff Alana Cain, Ashton Brown, Vanessa Maxwell, and Reynaiji Variste. The Anti-Injunction Act prohibits this court from enjoining ongoing state court proceedings unless it is authorized by federal law, aids the court's jurisdiction or effectuates its judgments. None of the exceptions apply here and 42 U.S.C. §1983 prohibits injunctions against a judicial officer for an act or omission taken in their judicial capacity.

5. As evidenced by Exhibit 5, the state court criminal proceedings respecting plaintiff Renaud Variste were concluded prior to this action being filed; the request for injunctive relief is moot.

6. An injunction is to preserve the status quo; that is not what plaintiffs propose in their motion. They wish to have this Court order state court judges and their agents to ignore state law and in its place impose a federally-crafted system pending this litigation. That is improper and must not be allowed; such an order would put this court at odds with Supreme Court policies and pronouncements.

                  I.    **Summary of Relevant Facts**

    In their motion for preliminary injunction, plaintiffs seek: "an order for preliminary injunction, pending final decision on the merits in this case, enjoining defendants from jailing Alana Cain, Ashton Brown, Reynajia Variste, Renaud Variste, or Vanessa Maxwell for nonpayment of outstanding Orleans Parish Criminal District Court

debts."[4] In addition to a prohibition of jailing, plaintiffs want this Court to fashion a new procedure for state criminal court judges that includes, among other things, the issuance of summons when fines are not paid and automatic release on their own recognizance or the posting of an unsecured bond if arrested.[5]

Though all the Judges are sued (along with others), the named plaintiffs do not have criminal cases before all the judges; their cases are allotted to only three Divisions of the Criminal Court.[6] Further, as detailed, Reynaud Variste has no pending criminal case before the state criminal court. The state court proceedings regarding the other plaintiffs, Alana Cain, Ashton Brown, Vanessa Maxwell, and Reynajia Variste, continue to this day. All these plaintiffs, save Maxwell, were arrested on an alias capias; Maxwell's capias was recalled. There are no currently outstanding capias warrants as to any plaintiff.

A brief summary of the still on-going state criminal proceedings is in order:

**Alana Cain (Exhibit 1)**

Date of Charge:

    11/8/2012

Charge:

    Theft of $1,500 or more

Represented by Counsel:

---

[4] Court Doc. 8, p. 1
[5] Court Doc. 8 p. 1; plaintiffs want this court to order the state court judges to issue summons to compel appearances and to release plaintiffs "immediately" on their own recognizance.
[6] Divisions A, B, and G.

The court appointed counsel at her first appearance (12/4/2012) who was present for all matters, including at time of Cain's plea, sentencing, restitution hearing, and the hearing on capias arrest.

Date of Disposition:

   5/30/2013

Disposition:

   Ms. Cain pled guilty under Art. 893. The Court imposed sentence under Art. 893: three years at DOC at Hard Labor. Three years suspended and three years active probation. Concurrent with credit for time served. Fines, Costs and Fees $201.50 for felony court costs; $600.00 misdemeanor/felony costs 1381.4(A)(2); $100.00 to be applied to the indigent transcript fund; 1st $100 to be applied to the ITF Fund first payment due 7/8/2013. Restitution hearing set 7/8/2013. Restitution ordered; $1,800.00 to victim.

Costs/fines payment history:

   The computer notes of the collection Department reveal that there were multiple telephone calls with Cain. The phrase "ext" means there was a telephone communication where an extension to pay was granted. "C" means there had been no payment and a contact would be made before a capias issued for nonpayment. Cain received numerous extensions to pay and frequently failed to pay.

Date of Alias Capias:

   3/4/2015

Capias Disposition:

    Court notified of arrest 3/17/2015; she was in court with counsel on 3/18/2015, at which time her counsel's request for release was granted and status conference set.

Status of Proceeding:

    Open; her current balance is $836.50. Funds first received were applied to the transcript fund and victim restitution.

### Ashton Brown (Exhibit 2)

Date of Charge:

    9/27/2013

Charges:

    Brown was charged with simple burglary on an inhabited building and theft of goods less than $500.00.

Counsel:

    Counsel was court appointed at Brown's first appearance. Counsel was present at all pertinent times (except at capias hearing).

Date of Disposition:

    12/16/2013

Disposition:

    Plea agreement: the State agreed not to multiple bills; Count one amended to theft of goods less than $500. Defendant pled guilty per count one as to count one sentenced 90 days at OPP suspended for 90 days. Inactive probation concurrent with these cases and any other sentence imposed. Credit for time served. Fines, costs, or fees assessed:

$276.50 for felony; court costs: $146.00; misdemeanor/felony costs assessed are as 1381.4 (A) (2); $20 DA costs assessed; $100.00 to the indigent transcript fund; first payment due on or before 1/13/14 and fines and fees Department. Payment set for 1/13/14.

Payment History:

No payments prior to 9/14/2015. The computer notes reveal this plaintiff was reminded to pay when he failed to comply with the court order.

Date of alias capias:

7/16/2015

Disposition of alias capias:

Appeared without counsel upon proof of payment of $100, Brown was released. Next payment set for 8/17/15; counsel notified.

Current status:

Open.

**Vanessa Maxwell (Exhibit 3)**

Date of charge:

12/8/11

Charges:

Maxwell was charged with aggravated battery, simple criminal damage to property less than $500, and second-degree battery.

Counsel:

    Maxwell did not appear for her first arraignment date, but did appear at the next day on 12/14/2011 at which time the court appointed counsel. Counsel attended all matters except for her arrest on capias.

Date of charge disposition:

    3/6/12

Charge disposition:

    Maxwell pled guilty to counts one and two as charged. She was sentenced to 18 months at DOC at hard labor concurrent with credit for time served. Fines and fees: $191.50 as court costs. State agreed not to file multiple bills.

History of cost/fee payment:

    Maxwell's first payment was due 4/9/2012. When she did not pay, a notice was sent. Later in 2013, another notice was sent when she missed another payment. At the time the present action was filed, there was an outstanding capias for nonpayment. As shown by Exhibit 3, the capias was recalled and a status conference is set for 11/12/2015. Notice to be sent to Maxwell.

Date of alias capias:

    There were two; one on May 2012 and the other 5/8/2015 which was recalled prior to arrest/service.

Disposition of alias capias:

    Recalled.

Current status:

    Status conference set November 2015.

### Reynajia Variste (Exhibit 4)

Date of Charge:

    9/26/2014

Charges:

    Variste was charged with aggravated battery and second degree battery.

Counsel:

    The court appointed counsel at the first appearance on 10/2/2014.

Date of Disposition:

    10/21/2014

Disposition:

    Plea reached: Count one reduced to second degree battery and defendant pled guilty to both counts of second degree battery. Sentence: two years at hard labor at DOC, suspended. Two years active probation to run concurrent with credit for time served. Special conditions: a non-domestic stay-away order. Also assessed with fines and costs of $286.50 felony court, $400.00 misdemeanor/felony costs; $200.00 to the Indigent Transcript Fund. State agreed to not file multiple bills. Alias Capias recalled and probation status hearing set.

Payment History:

No payments were made until 6/2/2015 following arrest/appearance on capias. Money still owed.

Date of alias capias:

Disposition of alias capias:

Recalled following arrest.

Current status:

Open.

None of the plaintiffs objected to their sentences when imposed, sought to change it thereafter, or ever raised any claimed constitutional violations in their state court proceedings.

## II. This Court Lacks Jurisdiction

The Supreme Court doctrines of *Younger* and *Burford* abstention require federal courts to decline the exercise of jurisdiction under certain circumstances. In *Younger*, the Supreme Court held that abstention is mandated vis a vis pending state criminal proceedings if the State's interests are so important that the exercise of federal judicial power would disregard the comity between the states and the federal government.[7] *Younger* abstention "is generally deemed appropriate (when) assumption of jurisdiction by a federal court would interfere with the pending state proceedings, whether of a criminal, civil, or even administrative character."[8] To determine whether *Younger* abstention is warranted, courts must consider whether (1) there is an ongoing state judicial proceeding (2) that implicates an important state interest and (3) there is an adequate opportunity in the state proceedings to litigate the constitutional challenge.[9] When

---

[7] *Younger*, supra, FN 1
[8] *Louisiana Debating and Literary Ass'n. v. City of N.O.*, 42 F.3d 1483, 1490 (5th Cir. 1995).
[9] *Middlesex County Ethics Committee v. Garden State Bar Ass'n.*, 457 U.S. 423, 432 (1982).

these requirements are met, the federal court has no choice but to dismiss the federal action; it may not abstain, nor may it stay the federal action pending resolution of the state proceedings.[10]

### a. There Are Ongoing State Proceedings

Here, there are ongoing state judicial proceedings concerning four of the named plaintiffs. See Exhibits 1-4.

### b. The State Court Proceedings Implicate Important State Interests

Louisiana has more than one interest here. It has, by and through its criminal codes and statutes, created a uniform and cohesive set of laws, both substantive and procedural, that govern criminal cases. There is a strong policy of uniform application of these laws throughout the entire state. Louisiana also has an interest in criminal defendants fulfilling their criminal sentences, including victim restitution. Finally, it has an interest in the operations of its district courts and fiscal policies governing those operations. The interests of Louisiana include all three of its governmental branches.

### c. Opportunity to Raise These Challenges in the State Court Proceedings

Plaintiffs had ample opportunity to raise the purported constitutional violations in their respective state criminal proceedings. If a plaintiff is indigent and unable to pay the fine, there are a variety of code provisions which allow for relief, and failing that the right to appeal or seek supervisory relief via writ application.[11]

### d. An Injunction Interferes with All Louisiana Criminal Cases

The Fifth Circuit decision in *Health Net*[12] is important and raises an additional concern. The court explained that *Younger* abstention seeks to have federal courts avoid interpreting state laws that would result in an unwarranted determination of federal

---

[10] *Noll v. Stringer*, 4 F. 3d 989 (5th Cir. 1993).
[11] C. Crim. P. Arts. 881, 881.1, 881.2, 881.3, 881.4, 881,5, 881.6, and 911, et seq.
[12] *Health Net, Inc. v. Wooley*, 534 F.3d 487 (5th Cir. 2008).

constitutional questions. "This is important because the federal court's interpretation of state law is not binding on state courts and may be discredited at any time, thus essentially rendering the federal court decision advisory and the litigation underlying it meaningless."[13]

An injunction here would affect only one of the 42 Louisiana judicial districts. In the end, should any Louisiana court take up these issues and conclude contrary to the terms of the injunction, this Court will have undertaken two unnecessary and non-binding acts—(1) issuance of the advisory opinion and (2) the suspension of Louisiana law in Orleans Parish via the imposition of an unnecessary federally crafted system.

**II. The Court Should Abstain Pursuant to *Burford***

In *Burford*,[14] the Supreme Court held that abstention was proper in an action in which the Sun Oil Company challenged the Texas Railroad Commission's order granting a permit to drill certain oil wells. The court reasoned that the state provided a unified method for the formation of policy and that determination of cases by the Commission in state courts conflicted in state law interpretation posed a danger to state policy:

> The State provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commission's decisions in the state court is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower courts. On the other hand, if the state procedures followed from the Commission to the State Supreme Court, ultimate review of the federal question is fully preserved here. Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand.[15]

To determine whether *Burford* applies, the court must consider (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into

---

[13] *Ibid.* at p. 495.
[14] *Burford, supra* FN 2
[15] *Burford* at 333-334

unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for coherent policy in that area; and (5) the presence of a special state forum for judicial review.[16]

The *Health Net* court explained *Burford* abstention as involving:

"…difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the particular case at bar," and second, when "the exercise of federal jurisdiction over the question and in the case would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern."[17]

In *Health Net*, the court found that *Younger* and *Burford* abstentions both applied:

Though *Younger* and *Burford* abstention do not normally both apply, they do in this case: *Younger* abstention, because the federal court should not interfere with the important interest Louisiana has an affecting its system of reviewing judgments, on appeal and to nullity actions, as in *Pennzoil*; and *Burford* abstention, because the receivership of an insurer is an area of law left for the states to establish a coherent policy.[18]

Plaintiffs' instant cause of action arises under state criminal laws. The question of plaintiffs' indigence and the efficacy of their sentences are unsettled and Louisiana law requires an assessment of facts peculiar to each plaintiff and related to the nature of their guilty pleas. Louisiana has a comprehensive scheme for amending, reconsidering, and reviewing criminal sentences in felony and misdemeanor cases.[19] All of those decisions of the state criminal court, whether it is a denial to amend, suspend, or reconsider a sentence, are subject to appeal or a request for supervisory review via a writ application.[20]

---

[16] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).
[17] *Ibid.* at pp. 333-334.
[18] *Moore v. State Farm Fire and Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009); *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993).
[19] *Health Net, supra*, at p. 496; C. Crim. P. Arts. 881, 881.1, 881.2, 881.3, 881.4, 881.5, 881.6, and 911, et seq.
[20] C. Crim. P. Arts. 881, 881.1, 881.2, 881.3, 881.4, 881.5, 881.6, and 911, et seq.

By prohibiting jailing of criminal defendants who default in their sentences where fines or costs were imposed, this Court would be negating Louisiana law in only one parish which allows for imprisonment when default on payment has occurred:

> If a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant shall be imprisoned for a specified period not to exceed one year; provided that where the maximum prison sentence which may be imposed as a penalty for a misdemeanor is 6 months or less, the total period of imprisonment upon conviction of the offense, including imprisonment for default in payment of a fine or costs, shall not exceed 6 months for that offense.[21]

### III. *Rooker-Feldman* Doctrine Bars Review On Jurisdictional Grounds

Federal district courts lack subject matter jurisdiction to review decisions of state courts. Known as the *Rooker–Feldman* doctrine, this applies when a state court decision is final and when the plaintiff's injury does not stem from "some other source besides the state court decision." Plaintiffs' source of injury in this case is an enforcement of their sentence. If plaintiffs are aggrieved by the state court's sentence, they have adequate remedies under state law, namely to seek reconsideration, amendment, etc., or an appeal—steps which no plaintiff has yet taken. All these plaintiffs can litigate the constitutional issues asserted in this action in the state courts, and on appeal, and may even petition the United States Supreme Court for certiorari per 28 U.S.C. § 1257 (8). It is; however, improper for this Court to review the state court's capias warrants since this Court is one of original, not appellate, jurisdiction.

### IV. 42 USC 1983 Prohibits Injunctions Against Judicial Officers

---

[21] C.Cr.P. Art 884. Article 885 provides that a defendant imprisoned for defaults in the payment of the fine, or fine and costs, may be released by paying a sum of money that bears the same proportion to the imposed fine as the term of alternate imprisonment yet to run bears to the whole of such term of imprisonment.

42 U.S.C. § 1983 was amended in 1996 to provide that injunctive relief against a "judicial officer" in his or her judicial capacity "shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." No declaratory decree has been issued and none has been violated. Declaratory relief is sought in plaintiffs' main demand. An injunction is not permitted or, at the least, the request for one is premature.

**V. This Court is Not Authorized to Enjoin Ongoing State Court Proceedings**

The Anti-Injunction Act provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.[22]

42 U.S.C. §1983 specifically prohibits injunctions against judicial officers acting in their judicial roles. No other act of Congress expressly authorizes a federal court to enjoin an ongoing state court proceeding by prohibiting a state court from issuing warrants under certain circumstances and by ordering the state court to adopt a certain procedure in lieu of the warrant. No facts have been pleaded nor do they exist to show that this injunction is necessary to aid this court in its jurisdiction or to protect or effectuate its judgments. The Anti-Injunction Act applies. None of the three mandatory exceptions apply; accordingly, this Court is prohibited, as a matter of law, from enjoining the state criminal court proceedings respecting Alana Cain, Ashton Brown, Vanessa Maxwell, and Reynajia Variste.

**IV. Injunction Cannot Issue in Absence of Justiciable Dispute**

Exhibit 5 makes clear that there is no ongoing proceeding concerning Renaud Variste. This defendant completed his sentence. A claim is moot if it no longer presents

---

[22] 28 U.S.C. §2283

the requisite live dispute between the parties.[23] As Variste is no longer a defendant in an ongoing criminal proceeding, he is no longer at risk of non-compliance of his sentence. An injunction serves no purpose.

**V. What is Sought Violates Rules Governing Issuance of Injunctions**

Putting aside the statutory proscriptions on injunctions directed at state judicial officers, injunctions in civil rights cases generally are considered extreme remedies and are rarely granted.[24] The purpose of an injunction is to "freeze the status quo," and is intended "to preserve the relative positions of the parties until a trial on the merits can be held."[25] What these plaintiffs' ask is for this Court to upset the status quo, order state court judges to ignore state laws, and to follow an as yet undrafted federally mandated summons system. Such a result is entirely inconsistent with the law of injunctions and contrary to the Supreme Court's holding that where the result of the injunction is to involve the federal court in oversight of state courts, the injunction must be denied.[26] Continuous and piecemeal interruptions of state court proceedings must be avoided.[27]

**VI. Conclusion**

The request for preliminary injunction must be denied. This Court has no jurisdiction, no statutory authority to enjoin ongoing state court proceedings, and, respecting one plaintiff, the matter is clearly moot. The Supreme Court has repeatedly

---

[23] *Capeheart v. Terrell,* 695 F.3d 681, 684 (7th Cir. 2012).
[24] *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).
[25] *Wenner v. Texas Lottery Comm'n.,* 123 F. 3d 321, 626 (5th Cir 1997), citing *Univ. of Texas v. Camenisch,*, 451 US 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed 2d 175 (1981).
[26] *O'Shea v. Littleton,* 414 U.S.488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974).
[27] Ibid.

recognized that federal courts are not in the business of overseeing or managing state courts. That is what plaintiffs want and they must be denied.

Respectfully submitted,
/s/ Celeste Brustowicz
**Burglass and Tankersley, LLC**
Dennis J. Phayer (#10408) (T.A.)
dphayer@burglass.com
Celeste Brustowicz (#16835)
cbrustowicz@burglass.com
Christopher K. Tankersley (#19176)
ctankersley@burglass.com
Elizabeth A. Doubleday (#34916)
edoubleday@burglass.com
5213 Airline Drive
Metairie, LA 70001
Tel: (504) 836-0428
Fax: (504) 287-0468
*Attorneys for:* Orleans Parish Criminal District Court, Judicial Administrator Robert Kazik, Honorable Judge Laurie A. White, Honorable Judge Tracey Flemings-Davillier, Honorable Judge Benedict Willard, Honorable Judge ad hoc Dennis Waldron, Honorable Judge Keva Landrum-Johnson, Honorable Judge Robin Pittman, Honorable Judge Byron C. Williams, Honorable Judge Camille Buras, Honorable Judge Karen K. Herman, Honorable Judge Darryl Derbigny, Honorable Judge Arthur Hunter, Honorable Judge Franz Zibilich, and Magistrate Judge Harry Cantrell

**Certificate of Service**

I hereby certify that on the 20th day of October 2015, I have electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

/s/ Celeste Brustowicz