UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALANA CAIN, ET AL.                          CIVIL ACTION

VERSUS                                      NO. 15-4479

CITY OF NEW ORLEANS, ET AL.                 SECTION: R(2)

## ORDER AND REASONS

Named plaintiffs Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell filed this civil rights action under 42 U.S.C. § 1983 seeking to declare the manner in which the Orleans Parish Criminal District Court collects post-judgment court costs from indigent debtors unconstitutional. According to plaintiffs, the Criminal District Court and other, related actors maintain a policy of jailing criminal defendants who fail to pay their court costs solely because of their indigence.[1]

The "judicial defendants" move the Court to dismiss this case for lack of subject matter jurisdiction.[2] Although defendants concede that this Court has subject matter jurisdiction over plaintiffs' constitutional claims arising

---

[1]   *See generally* R. Doc. 7 (Plaintiffs' First Amended Class Action Complaint).

[2]   R. Doc. 52. The "judicial defendants" are the Orleans Parish Criminal District Court, its thirteen judges, and the judicial administrator, Robert Kazik. Originally, plaintiffs also sued the Criminal District Court clerk, Arthur Morell, but he has been voluntarily dismissed. R. Doc. 65.

1

under section 1983, they argue that the facts and circumstances presented here demand the Court's abstaining from jurisdiction.[3]   For the following reasons, the Court denies the motion.

## I.   BACKGROUND

### A.   Factual Allegations

In this section 1983 civil rights lawsuit, plaintiffs allege, on behalf of themselves and those similarly situated, that the City of New Orleans, the Orleans Parish Criminal District Court, its judges and judicial administrator, and Orleans Parish Sheriff Marlin Gusman maintain an unconstitutional scheme of jailing indigent criminal defendants and imposing excessive bail amounts for nonpayment "offenses" in an effort to collect unpaid court courts.   According to plaintiffs, the Criminal District Court maintains an internal "Collections Department," informally called the "fines and fees" department, that oversees the collection of court debts from former criminal defendants.   The "typical" case allegedly proceeds as follows.

When a person is charged with a crime, the Criminal District Court judges first determine whether the criminal defendant is legally "indigent,"

---

[3]      R. Doc. 52-1 at 1.

meaning they qualify for appointment of counsel through the Orleans Public Defenders under Louisiana Revised Statutes § 15:175.   According to plaintiffs, eight-five percent of the criminal defendants in Orleans Parish are legally indigent.[4]  With assistance of counsel, the defendants either plead guilty to their criminal charges or proceed to trial.  If convicted, the criminal defendants must appear before a judge at the Criminal District Court for sentencing.

At sentencing, in addition to imposing a term of imprisonment or probation, the court may assess against the criminal defendants various "court costs."  These costs may include restitution to any victim, a statutory fine, fees, or other costs imposed at the judge's discretion.  According to plaintiffs, the discretionary assessments "fund the District Attorney's office, the Public Defender, and the Court[,]" which rely on these collections "to fund their operations and to pay employee salaries and extra benefits."[5] Plaintiffs allege that the Criminal District Court judges impose court costs without inquiring into the criminal defendants' ability to pay.[6]

---

[4]     R. Doc. 7 at 5.

[5]     *Id.* at 22-23 ¶ 88.

[6]     *Id.* at 23 ¶ 91.

If the criminal defendants cannot immediately pay in full immediately, the Criminal District Court judges direct them to the Collections Department, or "fines and fees." There, a Collections Department employee imposes, at his discretion and without inquiring into a defendant's ability to pay, a payment schedule—usually requiring a certain amount per month.[7] Collections Department employees also warn the defendants that failure to pay the monthly amount, in full, will result in their arrests. Collections Department employees refuse to accept anything less than full payment.[8]

When criminal defendants fail to pay, a Collections Department employee allegedly issues a pre-printed warrant for the defendant's arrest by forging a judge's name.[9] According to plaintiffs, the Collections Department often issues these warrants "years after a purported nonpayment," and the warrants are "routinely issued in error" or without regard to a debtor's indigence.[10]

Plaintiffs also allege that each Collections Department arrest warrant is "accompanied by a preset $20,000 secured money bond required for

---

[7]      *Id.* at 27-28 ¶103.

[8]      *Id.* at 28 ¶ 106.

[9]      *Id.* at 29 ¶ 109.

[10]     *Id.* at ¶ 110.

release."[11]  According to plaintiffs, defendants' unwavering adherence to this "automatic $20,000 secured money bond" requirement results from defendants' financial interest in state-court arrestees' paying for their release.[12]  Plaintiffs contend that the Criminal District Court judges collect 1.8% of each bond, while the Orleans Parish District Attorney's office, the Orleans Public Defenders' office, and the Orleans Parish Sheriff each collect 0.4% of each bond.[13]

When criminal defendants are arrested for nonpayment, they are "routinely told" that to be released from prison, they must pay for the $20,000 secured money bond, the entirety of their outstanding court debts, or some other amount "unilaterally determine[d]" by the Collections Department.[14]  As a result, these indigent debtors "languish" in prison "indefinite[ly]" because they cannot afford to pay any of the foregoing amounts.[15]  Although "arrestees are eventually brought to court," the Sheriff, the Criminal District Court, and the judges "have no set policy or practice"

---

[11]     *Id.* at ¶ 113.

[12]     *Id.* at 21-22 ¶88.

[13]     *Id.* at 22 ¶88.

[14]     *Id.* at 30 ¶114.

[15]     *Id.* at ¶115.

regarding how long arrestees must wait for a hearing.  According to plaintiffs, indigent debtors "routinely" spend a week or more in prison.[16]   Some arrestees, with help from family and friends, pay for their release without ever having a hearing and thus have "no opportunity to contest the debt or the jailing."[17]

When criminal defendants are brought to court, the Criminal District Court judges allegedly send them back to prison if they are unable to pay their debts or release them "on threat of future arrest and incarceration" if they do not promptly pay the Collections Department.[18]   At these brief "failure-to-pay hearings," the judges do not consider the debtors' abilities to pay.[19]

Plaintiffs contend that these practices are unconstitutional and have created "a local debtors' prison" in Orleans Parish.[20]

---

[16]     *Id.*

[17]     *Id.* at ¶114.

[18]     *Id.* at ¶116.

[19]     *Id.*

[20]     *See* R. Doc. 7 at 3.

## B.    Parties

The named plaintiffs in the First Amended Complaint are six individuals who were defendants in the Orleans Parish Criminal District Court—Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell.[21]  The facts pertaining to the named plaintiffs, as alleged in their complaint, are as follows.

The Criminal District Court appointed counsel from the Orleans Public Defenders to represent each of the named plaintiffs, except Reynaud Variste, during their criminal proceedings.[22]  Thus, the court must have determined Cain, Brown, Reynajia Variste, Long, and Maxwell to be legally indigent

---

[21]    R. Doc. 7 at 7 ¶7.

[22]    R. Doc. 59-3 at 1 (Alana Cain Docket Sheet, entry for 12/04/2012) ("Court appointed Alex Liu, OPD."), 5 (Ashton Brown Docket Sheet, entry for 10/02/2013) ("Court appointed Seth Wayne, OPD."), 9 (Reynajia Variste Docket Sheet, entry for 10/02/2014) ("Court appointed Lindsey Samuel, OPD.") 23 (Vanessa Maxwell Docket Sheet, entry for 12/14/2011) ("Court appointed Jerrod Thompson-Hicks, OIPD."); R. Doc.95-7 at 1 (Thaddeus Long Docket Sheet, entry for 06/02/2011) ("Court appointed Anna Fecker, OIDP).

On December 3, 2015, the Court took judicial notice of the facts contained in the Criminal District Court docket sheets, signed guilty pleas, sentencing hearing transcripts of certain named plaintiffs.  R. Doc. 74.  Since then, defendants moved the Court to take judicial notice of the facts contained in additional records, including court docket sheets, signed guilty pleas, and sentencing hearing transcripts for other named plaintiffs.  R. Doc. 95.  To the extent the Court relies on these documents throughout this order, defendants' second motion to take judicial notice is granted in part.

under Louisiana Revised Statutes §15:175.[23]   Reynaud Variste appears to have retained private counsel.[24]

With the assistance of counsel, all of the named plaintiffs pleaded guilty to their respective criminal charges, which include theft,[25] battery,[26] drug possession,[27] "simple criminal damage,"[28] and disturbing the peace.[29] At plaintiffs' sentencings, the presiding judges imposed terms of imprisonment, which were often suspended, as well as terms of active or inactive probation.  In addition, the judges assessed against plaintiffs various court costs—whether restitution, fines, and/or discretionary fees and costs.[30]

---

[23]   *See* R. Doc. 7 at 5.

[24]   R. Doc. 59-3 at 14 (Reynaud Variste Docket Sheet, entry for 9/25/2012) ("Defendant must retain private counsel.").

[25]   *Id.* at 4 (Alana Cain Guilty Plea), 8 (Ashton Brown Guilty Plea).

[26]   *Id.* at 12 (Reynajia Variste Guilty Plea).

[27]   *Id.* at 22 (Reynaud Variste Guilty Plea).

[28]   *Id.* at 28 (Vanessa Maxwell Guilty Plea).

[29]   R. Doc. 95-7 at 5 (Thaddeus Long Guilty Plea).

[30]   R. Doc. 59-3 at 2 (Alana Cain Docket Sheet, entry for 5/30/2013), 6 (Ashton Brown Docket Sheet, entry for 12/16/2013), 9 (Reynajia Variste Docket Sheet, entry for 10/21/2014), 18 (Reynaud Variste Docket Sheet, entry for 10/31/2013), 23 (Vanessa Maxwell Docket Sheet, entry for 3/06/2012); R. Doc. 95-7 at 1 (Thaddeus Long Docket Sheet, entry for 7/29/2011).

At some point, all of the named plaintiffs were arrested for failing to pay outstanding court costs.

For example, plaintiffs allege that on one occasion, Alana Cain explained to a Collections Department supervisor that she could not satisfy the full amount of her expected monthly payment. The Collections Department supervisor warned Cain that if she could not afford her monthly payment, he would issue a warrant for her arrest.[31] In March 2015, Cain was arrested for failing to pay her court debts.[32] Jail staff told Cain that her bail was set at "a $20,000 secured bond pursuant to standard policy" and that "there was no way to find out when her court date would be."[33] When Cain eventually attended a hearing, the presiding judge told her that "if she ever missed a payment again, she would have to spend 90 days in jail."[34] The judge did not inquire into Cain's ability to meet the monthly payments imposed by the Collections Department.

According to plaintiffs, in July and August 2015, Ashton Brown spent twenty-nine days in prison solely because of unpaid debts stemming from a

---

[31]   R. Doc. 7 at 10 ¶ 18.

[32]   *Id.* at ¶¶20-22.

[33]   *Id.* at 10-11 ¶¶22-23.

[34]   *Id.* at 11 ¶27.

2013 conviction.[35]  When Brown finally received a hearing on the issue of his nonpayment, the presiding judge refused to release Brown, "unless he paid at least $100."[36]  Because Brown could not afford to pay, the judge set another hearing for several days later and warned Brown "that he would be kept in jail unless he got a family member to pay."[37]  Eventually, Brown's family "scrape[d] together $100," and Brown was released.[38]  Collections Department employees have since threatened arrest and jail time if Brown does not continue making monthly payments.[39]

Reynaud Variste was allegedly arrested for nonpayment in January 2015 when police "stormed [Variste's] home with assault rifles and military gear."[40]  These officers told Variste "not to worry . . . because he simply owed some old court costs."[41]  In prison, jail staff allegedly told Variste that they

---

[35]     *Id.* at 12-13 ¶¶ 33-38.

[36]     *Id.* at 13 ¶ 38.

[37]     *Id.*

[38]     *Id.* at 14 ¶40.

[39]     *Id.*

[40]     *Id.* at ¶41.

[41]     *Id.* at ¶42.

"had no idea when or whether [he] would be taken to court."[42]   A bail bondsman told Variste that "he would probably not be released . . . until he paid his entire court debts, which would be cheaper than paying the $20,000 money bond" imposed upon him.[43]  Eventually, Variste's girlfriend paid "the entire debt amount."  Variste was released from prison without a hearing.[44]

Reynajia Variste was arrested in May 2015 for failing to pay her court costs.  Jail staff allegedly told Variste that she could pay her outstanding court debts or post the "standard $20,000 money bond" to be released.[45] While Variste was still in jail, a Collections Department employee told a member of Variste's family that Variste had to pay "at least $400 before [the Collections Department] would agree to let [Variste] out of jail."[46]  The Collections Department allegedly arrived at this amount because it was "close to half of what [Variste] owed in total."[47] Variste spent at least seven days in prison and was never given a hearing before her family gathered

---

[42]    *Id.* at 15 ¶47.

[43]    *Id.*

[44]    *Id.* at ¶48.

[45]    *Id.* at 16 ¶55.

[46]    *Id.* at 17 ¶57.

[47]    *Id.*

enough money "to buy her release."[48]   According to the First Amended Complaint, the Collections Department continues to threaten Reynajia Variste with prison time if she cannot make her monthly payments.[49]

Plaintiffs contend that Thaddeus Long was wrongly arrested for failing to pay his court costs because Long paid his debts in full years before. According to the First Amended Complaint, Long was convicted in 2011 and finished paying his court costs in October 2013.[50]   In June 2015, a New Orleans police officer, conducting a traffic stop, discovered an outstanding warrant for Long's supposed nonpayment.[51]   The officer arrested Long, and Long spent six days in prison, unable to post "the standard $20,000 secured money bond" before he was given a hearing.   At the failure-to-pay hearing, Long explained that he had already paid his court debts in full, a "mistake . . . apparent from the court records," and he was released immediately.[52]

---

[48]     *Id.* at ¶60.

[49]     *Id.* at ¶ 64.

[50]     *Id.* at 18 ¶67.

[51]     *Id.*

[52]     *Id.* at ¶69.

Vanessa Maxwell allegedly spent twelve days in prison after her arrest for nonpayment before being brought to court.[53]  According to plaintiffs, the presiding judge did not evaluate Maxwell's present ability to pay, but nonetheless made her release from prison contingent on Maxwell's paying $191 "within a week."[54]  Plaintiffs contend that Maxwell was never able to come up with the money, and Maxwell is now "in imminent danger of arrest . . . pursuant to monetary conditions that she cannot [meet]."[55]

Plaintiffs now sue the City of New Orleans for hiring the Criminal District Court's Collection Department workers, as well as the police officers who execute the allegedly invalid arrest warrants.[56]  Plaintiffs also sue Sheriff Marlin Gusman, in his official capacity, for "unconstitutionally detain[ing] impoverished people indefinitely because of their inability to . . . pay[] for their release."[57]  In addition, plaintiffs sue the Orleans Parish Criminal District Court for its role in managing and funding the Collections Department, and the court's Judicial Administrator, Robert Kazik, in his

---

[53]     *Id.* at 20 ¶83.

[54]     *Id.*

[55]     *Id.* at ¶84.

[56]     *Id.* at 7 ¶8.

[57]     *Id.* at 8 ¶12.

individual and official capacities, because he is allegedly responsible for operating the Collections Department.[58]   Finally, plaintiffs name as defendants every judge at the Criminal District Court—thirteen in all— because they allegedly supervise the Collections Department employees and have failed to provide the parish's criminal defendants with constitutionally-required process before imprisoning people for failure to pay court costs. Plaintiffs sue the judges only for declaratory relief.[59]

### C.   Plaintiffs' Claims for Relief

Plaintiffs filed this civil rights action under 42 U.S.C. § 1983, alleging violations of their Fourth and Fourteenth Amendment rights, as well as violations of Louisiana tort law.   Plaintiffs seek damages (including attorneys' fees) and an injunction against all defendants, except the judges. Plaintiffs also seek a declaratory judgment regarding the constitutionality of defendants' practices.

The Court summarizes plaintiffs' allegations, as articulated in the First Amended Complaint, as follows:

---

[58]     *Id.* at 7-8 ¶¶9-10.

[59]     *Id.* at 8 ¶13.

(1)     Defendants' policy of issuing and executing arrest warrants for nonpayment of court costs is unconstitutional under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment;

(2)     Defendants' policy of requiring a $20,000 "fixed secured money bond" for each Collections Department warrant (issued for nonpayment of court costs) is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(3)     Defendants' policy of indefinitely jailing indigent debtors for nonpayment of court costs without a judicial hearing is unconstitutional under the Due Process Clause of the Fourteenth Amendment;

(4)     Defendants' "scheme of money bonds" to fund certain judicial actors is unconstitutional under the Due Process Clause of the Fourteenth Amendment.  To the extent defendants argue this scheme is in compliance with Louisiana Revised Statutes §§ 13:1381.5 and 22:822, which govern the percentage of each surety bond that the judicial actors receive, those statutes are unconstitutional;

(5)      Defendants' policy of jailing indigent debtors for nonpayment of court costs without any inquiry into their ability to pay is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(6)      Defendants' policy of jailing and threatening to imprison criminal defendants for nonpayment of court debts is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment because it imposes unduly harsh and punitive restrictions on debtors whose creditor is the State, as compared to debtors who owe money to private creditors;

(7)      Defendants' conduct constitutes wrongful arrest under Louisiana law; and

(8)      Defendants' conduct constitutes wrongful imprisonment under Louisiana law.

### D.    The Judicial Defendants' Motion to Dismiss

The Orleans Parish Criminal District Court, the thirteen judges, and the judicial administrator now move to dismiss plaintiffs' suit for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defendants admit that plaintiffs invoke the Court's subject matter jurisdiction, *see* 28 U.S.C. § 1331, because plaintiffs' constitutional claims

16

arise under section 1983.[60]  Nonetheless, defendants argue that "important considerations of comity and federalism" demand that the Court decline jurisdiction in this case.[61]  Defendants urge the Court to abstain under the doctrines announced in *Younger v. Harris*, 401 U.S. 37 (1971) ("Younger abstention"); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) ("Burford abstention"); and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (collectively, the "*Rooker-Feldman* doctrine").  The Court first addresses whether certain plaintiffs have standing and then addresses each of defendants' arguments in turn.

## II.    LEGAL STANDARD

Motions submitted under Rule 12(b)(1) of Federal Rules of Civil Procedure allow a party to challenge the court's subject matter jurisdiction on the allegations of the complaint.  *Lopez v. City of Dallas, Tex.*, 2006 WL 1450520, *2 (N.D. Tex. 2006).  In ruling on a Rule 12(b)(1) motion to

---

[60]    Defendants do not address the Court's supplemental jurisdiction to hear plaintiffs' state-law claims, which are "so related" to the constitutional claims as to "form part of the same case or controversy."  *See* 28 U.S. § 1367.  Defendants' arguments for dismissal are directed only to plaintiffs' constitutional claims.  *See* R. Doc. 52-1.  Accordingly, the Court's analysis is limited to plaintiffs' claims arising under section 1983.

[61]    *Id.* at 1-2.

dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Accordingly, the court may consider matters outside the pleadings, such as testimony and affidavits. *See Garcia*, 104 F.3d at 1261. A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## III.  DISCUSSION

### A.  Reynaud Variste's and Thaddeus Long's Standing to Pursue Equitable Relief

18

Defendants do not raise the issue of plaintiffs' Article III standing. When necessary, however, a federal court must address the issue of standing on its own. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 (5th Cir. 2002) (citations omitted).

Article III of the Constitution requires plaintiffs in federal court to allege an actual "case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974); *see generally* U.S. Const. art. III, § 2 ("The judicial power shall extend to all cases [and] to controversies . . . ."). The case-or-controversy requirement means that plaintiffs "must allege some threatened or actual injury resulting from the [defendants'] putatively illegal action before a federal court may assume jurisdiction." *Id.* (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)). "Abstract injury is not enough. . . . The injury or threat of injury must be both real and immediate." *Id.* at 494 (quoting *Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969)). For plaintiffs seeking equitable relief, "past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 495-96; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (finding allegation that defendants "routinely" engage in unconstitutional conduct "falls far short of the allegations . . . necessary to establish a case or controversy" for plaintiff seeking injunctive relief).

19

Here, by plaintiffs' own allegations, and the Criminal District Court records of which this Court has taken judicial notice, neither Reynaud Variste nor Thaddeus Long owe any outstanding court costs for which they may be imprisoned according to defendants' allegedly unconstitutional policy.[62]  Nor are they currently incarcerated for past-due debts.  Because Variste and Long have no outstanding debts and are not currently incarcerated, they are not suffering any "real or immediate" injury or threat of the alleged injury—the unconstitutional arrest and imprisonment as a result of their indigence.  *Cf. Ray v. Judicial Corr. Servs.*, No. 12-CV-02819-RDP, 2013 WL 5428360, at *(N.D. Ala. Sept. 26, 2013) ("Plaintiffs are experiencing continuing, present adverse effects [because] all of the Plaintiffs are still on probation and still owe various fines and fees.").

Any "prospect of future injury" assumes that Variste and Long will again be charged with violations of Louisiana criminal law, will again be assessed with courts costs that they cannot pay, and will again be arrested and imprisoned for nonpayment.  *O'Shea*, 414 U.S. at 496.  But the Court

---

[62]    *See* R. Doc. 7 at 15 (noting that after his arrest in 2015, Reynaud Variste "eventually used his paycheck to pay the entire debt amount"), 18 (alleging that Thaddeus Long was wrongfully arrested for failing to pay because he "paid his debts in full in October 2013"); R. Doc. 59-3 at 20 (Reynaud Variste Docket Sheet) ("The defendant has paid all fines and fees as ordered by the court."); R. Doc. 95-7 at 1-2 (Thaddeus Long Docket Sheet) (same).

must assume that plaintiffs "will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct." *Id.* at 497. Thus, any threat of injury is mere "speculation and conjecture"—too abstract to satisfy Article III's requirement of a "case or controversy." *See id.*

Because Reynaud Variste and Thaddeus Long lack standing to pursue their claims for equitable relief, the Court dismisses their claims for declaratory and injunctive relief against all defendants. *See generally Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) ("[P]laintiffs may lack standing to seek prospective relief even though they have standing to sue for damages.").

In addressing defendants' arguments for dismissal in the remainder of this order, the Court will refer only to plaintiffs Cain, Brown, Reynajia Variste, and Maxwell where necessary.

**B.** ***Heck v. Humphrey* Does Not Bar Plaintiffs' Section 1983 Claims for Damages**

The Court begins with an analysis of *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* is not a traditional abstention case like the other doctrines defendants contend require dismissal. Nonetheless, because defendants briefly argue it, the Court will address it.

In *Heck*, the United States Supreme Court held that a criminal defendant may not challenge the constitutionality of his conviction or sentence in a suit for damages under 42 U.S.C. § 1983 unless that conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state court, or called into question by a federal court's issuing a writ of habeas corpus.  512 U.S. at 486-87.  A criminal defendant challenges the constitutionality of his conviction or sentence in a section 1983 case when "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction." *Id.* at 482-83.  In other words, *Heck* bars suit when the factual findings necessary to prevail on the 1983 claim directly contradict or undermine the factual findings underlying the plaintiff's criminal conviction.  For example, *Heck* often applies in 1983 claims for offenses such as false imprisonment, use of excessive force, or malicious prosecution against the plaintiff's arresting officers or others.  *See, e.g.*, *DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007) (applying *Heck* to claims for false arrest, false imprisonment, malicious prosecution, illegal search and seizure, and use of excessive force); *LaMartina-Howell v. St. Tammany Par. Sch. Bd.*, No. 07-1168, 2009 WL 3837323, at *6 (E.D. La. Nov. 12, 2009) (applying *Heck* to plaintiff's claim of

false arrest because it would undermine plaintiff's state-court conviction for resisting arrest).

Here, the named plaintiffs have all pleaded guilty to various criminal offenses under Louisiana law. Alana Cain was convicted of theft of $1500 or more for stealing a ring.[63] Ashton Brown was convicted of misdemeanor theft of under $500.[64] Reynajia Variste and Vanessa Maxwell were both convicted of second-degree battery.[65] Maxwell was also convicted of "simple criminal damage under $500."[66] In this section 1983 action, plaintiffs allege that the Orleans Parish Criminal District Court, its judges, and other actors maintain an unconstitutional policy of issuing post-judgment arrest warrants and indefinitely jailing criminal defendants for their failure to pay outstanding court costs. Plaintiffs contend, among other things, that this violates the Due Process Clause of the Fourteenth Amendment because defendants routinely deny the state-court criminal defendants judicial

---

[63]    R. Doc. 59-3 at 4 (Alana Cain Guilty Plea); R. Doc. 59-4 at 3 (Transcript of Alana Cain's Guilty Plea).

[64]    R. Doc. 59-3 at 5 (Ashton Brown Guilty Plea); R. Doc. 95-4 at 11-12 (Transcript of Ashton Brown's Guilty Plea).

[65]    R. Doc. 59-3 at 12 (Reynajia Variste Guilty Plea), 28 (Vanessa Maxwell Guilty Plea).

[66]    *Id.* at 28 (Vanessa Maxwell Guilty Plea).

hearings or any other opportunity to explain their inability to pay, which is allegedly due only to their indigence.

Beyond bare or conclusory statements such as "plaintiffs cannot state a claim under the *Heck* doctrine,"[67] and "the [*Heck*] rule applies here,"[68] defendants have not articulated any argument for applying *Heck* to plaintiffs' constitutional claims.   Defendants cannot seriously argue that the facts necessary to support plaintiffs' section 1983 claims (*i.e.*, the Criminal District Court judges' failing to conduct a sufficient inquiry into the criminal defendants' good-faith ability to pay) contradict or undermine the factual bases for plaintiffs' state-court guilty pleas for theft, battery, and "simple criminal damage."  Therefore, *Heck* does not apply.  *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 604 (11th Cir. 2007) ("To prevail in his § 1983 suit, [plaintiff] must show that he was not afforded an indigency hearing to which he had a constitutional right before being committed to jail. If he succeeds, the resulting judgment in his favor would in no way impugn his conviction for reckless driving.").

## B.   *Younger* Abstention Does Not Apply

---

[67]   R. Doc. 52-1 at 13.

[68]   *Id.* at 14.

As to the abstention doctrines, defendants first argue that *Younger* abstention applies. Following the rule of *Younger v. Harris*, federal courts may not enjoin pending state court proceedings. 401 U.S. 37, 42 (1971) ("[N]ational policy forbid[s] federal courts to stay or enjoin pending state court proceedings except under special circumstances."); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("*Younger* itself held that, absent unusual circumstances, a federal court could not interfere with a pending state criminal prosecution."). *Younger* abstention is warranted when (1) "the federal proceeding would interfere with an ongoing state judicial proceeding," (2) the state proceeding "implicates important state interests," and (3) the plaintiff has "an adequate opportunity in the state proceeding[] to raise constitutional challenges." *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012); *accord Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

Plaintiffs contend that there are no "ongoing state judicial proceedings" because each plaintiff has been convicted and sentenced. According to plaintiffs, the Criminal District Court issued final judgments in their criminal cases "years ago."[69] Defendants argue that plaintiffs are

---

[69]     R. Doc. 70 at 4.

subject to ongoing criminal proceedings because each of them was sentenced to pay a certain amount of court courts, and "none have paid in full."[70] According to defendants, plaintiffs' criminal cases will "remain open until all assessed costs are paid."[71]

Pending criminal prosecutions are classic "ongoing state judicial proceedings." *See, e.g.*, *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494 (5th Cir. 2008) ("*Younger* abstention originally applied only to criminal prosecutions . . . ."). Once a criminal defendant's conviction and sentence have become final, however, his criminal prosecution is no longer "ongoing" even though the defendant may still be serving the remainder of his sentence. *See generally New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 369 (1989) ("[T]he proceeding is not complete until judicial review is concluded. . . . For *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system . . . ."); *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 605-06 (11th Cir. 2007) (finding *Younger* inapplicable after state-court revoked plaintiff's probation months before he filed suit because the "proceedings in state court have long since

---

[70]     R. Doc. 52-1 at 3, 5.

[71]     R. Doc. 78 at 2.

concluded"); *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1316 n.9 (11th Cir. 2005) (finding *Younger* abstention "clearly erroneous" when plaintiff "has already been tried and convicted . . . and none of the parties suggests that any charges remain pending against him"); *Trombley v. Cty. of Cascade, Mont.*, 879 F.2d 866 (9th Cir. 1989) (finding no ongoing proceeding when plaintiff "has pleaded guilty and is currently out on parole"); *Almodovar v. Reiner*, 832 F.2d 1138, 1141 (9th Cir. 1987) ("Probation is not a pending criminal action for *Younger* purposes."); *Moncier v. Jones*, No. 3:11-CV-301, 2012 WL 262984, at *5 (E.D. Tenn. Jan. 30, 2012) (explaining that a proceeding is "pending" from "the time of filing . . . until a litigant has exhausted his state appellant remedies"); *Baltzer v. Birkett*, No. 02 C 4718, 2003 WL 366577, at *3 (N.D. Ill. Feb. 19, 2003) (finding no ongoing proceeding when plaintiff was serving his prison sentence, but the time for appeal had expired).

Here, each of the named plaintiffs has pleaded guilty and been sentenced by the Orleans Parish Criminal District Court—the most recent in 2014, nearly a year before plaintiffs filed this suit.[72]  With the exception of Vanessa Maxwell, who appears to have served eighteen months, all of the

---

[72]     *See* R. Doc. 59-3 at 9 (Reynajia Variste Docket Sheet).

named plaintiffs were sentenced to "suspended" or "deferred" terms of imprisonment and sentenced to active or inactive probation. The Criminal District Court also imposed court costs as part of plaintiffs' criminal sentences.[73] For some, the court ordered payment of these court costs as a condition of their probation.[74] After sentencing, the Criminal District Court "referred" plaintiffs to "fines and fees"—the court's internal collections department—and marked plaintiffs' court records as "case closed."[75] It is undisputed that these convictions and sentences are now final because none of the plaintiffs directly appealed. Moreover, there are no new pending prosecutions against any named plaintiff. None of the plaintiffs is currently incarcerated while awaiting trial or other criminal proceeding, and none currently has a warrant outstanding for his or her arrest or charges filed against him or her for nonpayment of court costs or any substantive criminal offense.[76] *See Abusaid*, 405 F.3d at 1316 n.9 (finding *Younger* abstention

---

[73]   *Id.* at 4 (Alana Cain Guilty Plea), 8 (Ashton Brown Guilty Plea), 12 (Reynajia Variste Guilty Plea), 28 (Vanessa Maxwell Guilty Plea).

[74]   *See id.* at 4 (Alana Cain Guilty Plea).

[75]   *See, e.g.*, *id.* at 2 (Alana Cain Docket Sheet), 23 (Vanessa Maxwell Docket Sheet).

[76]   *See* R. Doc. 61 at 2 ("[T]here are no outstanding capias warrants for nonpayment or late payment of outstanding Orleans Parish Criminal District Court debts[.]").

"clearly erroneous" when "none of the parties suggests that any charges remain pending against [the plaintiff]"); *Moncier*, 2012 WL 262984, at *5 (explaining that a proceeding is "pending" from "the time of filing . . . until a litigant has exhausted his state appellant remedies")

The issue here is whether plaintiffs, merely because their court costs remain unpaid, are subject to ongoing state judicial proceedings. Defendants' only argument is that plaintiffs' original criminal prosecutions remain open because their sentences are not "complete" or "satisfied" until plaintiffs pay the full amount of outstanding court costs. But an incomplete sentence, such as an undischarged term of imprisonment, probation, or parole, does not constitute an "ongoing state judicial proceeding" for purposes of *Younger* abstention. *See, e.g.*, *Trombley*, 879 F.2d 866 (9th Cir. 1989) (no ongoing proceeding when plaintiff "is currently out on parole"); *Almodovar*, 832 F.2d at 1141 (9th Cir. 1987) ("Probation is not a pending criminal action for *Younger* purposes."); *Baltzer*, 2003 WL 366577, at *3 (finding no ongoing proceeding when plaintiff was serving his prison sentence, but the time for appeal had expired). Because the mere existence of plaintiffs' undischarged debts does not constitute an "ongoing state judicial proceeding," *Younger* abstention does not apply. *See generally Steffel v. Thompson*, 415 U.S. 452, 462 (1974) ("When no state criminal

proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.").

Defendants' argument that *Bice v. Louisiana Public Defender Board* controls the outcome here is misplaced.  In *Bice*, the Fifth Circuit Court of Appeals affirmed a district court's decision to abstain from interfering with the plaintiff's pending prosecution in New Orleans Municipal Court.  677 F.3d 712, 715 (5th Cir. 2012).  The plaintiff in *Bice* argued that a Louisiana law requiring convicted criminal defendants to pay into the state's Indigent Defender Fund was unconstitutional under Sixth and Fourteenth Amendments because the plaintiff's appointed counsel was biased against him.  *Id.* at 715-16.  Applying *Younger*, the Fifth Circuit held that the plaintiff was subject to an ongoing criminal prosecution in municipal court and that his civil rights challenge would have required "postpon[ing] Bice's prosecution until adequate funding is located" or "withdraw[ing] Bice's public defender [and] requiring the municipal court judge to locate new counsel."  *Id.* at 718-19.

Similar circumstances are not present in this case.  As noted, each of the plaintiffs was convicted and sentenced long ago, and those convictions are now final.  None of the plaintiffs is currently subject to criminal charges in state-court.  Therefore, there are no ongoing state judicial proceedings and abstention under *Younger* is not warranted here.

### C.   *Burford* Abstention Does Not Apply Because Plaintiffs' Constitutional Claims Do Not Involve a State Administrative Procedures

Defendants also argue that *Burford* abstention is warranted here because a ruling that jailing criminal defendants for failing to pay court costs is unconstitutional would "negat[e] Louisiana law" in Orleans Parish, which maintains a "comprehensive scheme for amending, reconsidering, and reviewing criminal sentences."[77]  Plaintiffs counter that *Burford* abstention is inappropriate for two reasons.  First, plaintiffs argue that they have not challenged the validity of their criminal sentences and therefore do not want their sentences amended, reconsidered, or reviewed.  Second, plaintiffs emphasize that regardless of what Louisiana law may allow, "all Louisiana

---

[77]    R. Doc. 52-1 at 8-9.

parishes, all municipal entities, and all state actors" must abide by the Constitution of the United States.[78]

In *Burford v. Sun Oil Co.*, the Supreme Court affirmed a district court's decision to abstain in a case involving "questions of the regulation of the [Texas oil and gas] industry by the State administrative agency." 319 U.S. 315, 332 (1943).  In support of its holding, the Court emphasized that "the federal government . . . chose[] to leave the principal regulatory responsibility with the states." *Id.* at 319.  After *Burford*, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of *state administrative agencies.*" *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (emphasis added).  As a general rule, "*Burford* abstention requires the existence of a *state administrative proceeding* to which the federal court could defer." *Lipscomb v. Columbus. Municipal Separate School District*, 145 F.3d 238, 242 (5th Cir. 1998) (emphasis added) (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 589 (5th Cir. 1994)); *see also Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012) ("*Burford* abstention is concerned with protecting *complex state administrative processes* from

---

[78]    R. Doc. 70 at 9-10.

undue federal inference . . . ." (emphasis added)); *Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 700 (5th Cir. 1999) ("The *Burford* doctrine allows a federal court to abstain from exercising its jurisdiction in deference to *complex state administrative procedures.*" (emphasis added)).

Although courts have applied *Burford* to areas other than state administrative proceedings, these occasions are rare and arise only when the case presents state-law issues of wholly local concern. *See Estate of Merkel v. Pollard*, 354 F. App'x 88 (5th Cir. 2009) (applying *Burford* abstention because adjudication required resolving Texas divorce law); *Claudill v. Eubanks Farms, Inc.*, 301 F.3d 658 (6th Cir. 2002) (applying *Burford* abstention to diversity action for dissolution of a Kentucky corporation); *see generally Aransas Project v. Shaw*, 775 F.3d 641, 650 (5th Cir. 2014) ("Of primary concern in *Burford* was the involvement of the federal courts in deciding issues of essentially state law and policy.").

Here, plaintiffs' section 1983 claims neither implicate the procedures of a state administrative agency nor raise state-law issues of only local concern. On the contrary, plaintiffs allege that defendants have deprived them of their constitutional rights—claims that plainly arise under federal law and that "are entitled to be adjudicated in the federal courts." *McNeese v. Bd. of Ed. For Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 674

(1963) (refusing to apply *Burford* abstention).   Defendants' argument that they have validly adhered to Louisiana law misses the point.   In evaluating a constitutional claim, "it is immaterial whether [defendants'] conduct is legal or illegal as a matter of state law." *Id.* *Burford* abstention does not apply.

### D. ***Rooker-Feldman*** **Does Not Apply Because Plaintiffs' Constitutional Claims Do Not Require Rejecting Their State-Court Convictions**

Finally, defendants argue that the Court should abstain from adjudicating plaintiffs' claims under the *Rooker-Feldman* doctrine.   *Rooker-Feldman* bars federal district courts from "modify[ing] or revers[ing] state court judgments." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) (citations omitted); *see also Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003) (holding *Rooker-Feldman* applies when a federal plaintiff challenges a state-court judgment as "legal[ly] wrong" or otherwise "erroneous"). *Rooker-Feldman* is an especially narrow doctrine, "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In determining whether *Rooker-Feldman* applies, a court must carefully evaluate what it is asked to review and reject. *Truong*, 717 F.3d at

382 (citing *Exxon Mobil*, 544 U.S. at 284).  The court lacks jurisdiction only when the plaintiff "seeks relief that *directly attacks* the validity of an existing state court judgment," *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (emphasis added), or the plaintiff's federal claims "are so inextricably intertwined with a state judgment that the federal court is in essence being called upon to review the state court decision." *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 390-91 (5th Cir. 2012) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)).  *Rooker-Feldman* does not prohibit a federal plaintiff from "present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil*, 544 U.S. at 293.

Defendants' arguments in support of abstention under *Rooker-Feldman* rest on a misunderstanding of the relief plaintiffs seek through their section 1983 claims.  Defendants emphasize that all of the named plaintiffs pleaded guilty to their respective criminal charges and that none of their convictions or sentences has been reversed or expunged.  Defendants argue that plaintiffs' efforts to "reconsider[], amend[], . . . or appeal" their sentences must be done in state court.[79]  But plaintiffs' allegations, as well as

---

[79]     R. Doc. 52-1 at 10.

their arguments in opposition to dismissal, make clear that plaintiffs do not contest the validity of their state-court convictions or sentences.  Indeed, plaintiffs plainly admit that none of them "is challenging his or her criminal conviction or sentence."[80]  Nor do they argue "that their convictions should be overturned or that the monetary portion of the judgment against them is invalid."[81]

Instead, plaintiffs challenge the means by which defendants' attempt to *enforce* the state court judgment, an issue separate and distinct from the validity of the judgment itself.  *See Mosley v. Bowie Cty. Tex.*, 275 F. App'x 327, 329 (5th Cir. 2008) (distinguishing between challenging a judgment and challenging defendants' "efforts to enforce" the judgment); *Ray v. Judicial Corr. Servs.*, No. 12-CV-02819-RDP, 2013 WL 5428360, at *8-9 (N.D. Ala. Sept. 26, 2013) (finding plaintiffs' challenge to arrests for nonpayment attacks only "the post-judgment probationary program[,]" rather than the "merits" or "bases" of the state court decisions).  Because a claim that defendants violated plaintiffs' constitutional rights in defendants' enforcement of the state court judgments "do[es] not ask the district court to

---

[80]    R. Doc. 70 at 2.

[81]    *Id.*

36

review, modify, or nullify, a final order of a state court, [this claim is] not barred under the *Rooker-Feldman* doctrine. *Mosley*, 275 F. App'x at 329 (quoting *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000)).

In sum, none of the foregoing abstention doctrines applies to plaintiffs' section 1983 civil rights claims. Because the Court has subject matter jurisdiction over these claims and supplemental jurisdiction over plaintiffs' state-law claims, the Court denies defendants' motion to dismiss for lack of jurisdiction under Rule 12(b)(1).

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss for lack of jurisdiction.

New Orleans, Louisiana, this ___21st___ day of April, 2016.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE