UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALANA CAIN, ET AL.                                CIVIL ACTION

VERSUS                                            NO. 15-4479

CITY OF NEW ORLEANS, ET AL.                       SECTION: R(2)

## ORDER AND REASONS

Named plaintiffs Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell filed this civil rights action under 42 U.S.C. § 1983 seeking to declare the manner in which the Orleans Parish Criminal District Court collects post-judgment court costs from indigent debtors unconstitutional. According to plaintiffs, the Criminal District Court and other, related actors maintain a policy of jailing criminal defendants who fail to pay their court costs solely because of their indigence.[1]

The "judicial defendants" now move the Court to dismiss this case for plaintiffs' alleged failure to join indispensable parties under Federal Rule of Civil Procedure 12(b)(7) and 19.[2] Because the Court finds that the parties

---

[1]   *See generally* R. Doc. 7 (Plaintiffs' First Amended Class Action Complaint).

[2]   R. Doc. 53. The "judicial defendants" are the Orleans Parish Criminal District Court, its thirteen judges, and the judicial administrator, Robert Kazik. Originally, plaintiffs also sued the Criminal District Court clerk, Arthur Morell, but he has been voluntarily dismissed. R. Doc. 65.

defendants assert must be joined are not required, the Court denies the motion.

## I.   BACKGROUND

### A.   Factual Allegations

In this section 1983 civil rights lawsuit, plaintiffs allege, on behalf of themselves and those similarly situated, that the City of New Orleans, the Orleans Parish Criminal District Court, its judges and judicial administrator, and Orleans Parish Sheriff Marlin Gusman maintain an unconstitutional scheme of jailing indigent criminal defendants and imposing excessive bail amounts for nonpayment "offenses" in an effort to collect unpaid court courts.   According to plaintiffs, the Criminal District Court maintains an internal "Collections Department," informally called the "fines and fees" department, that oversees the collection of court debts from former criminal defendants.   The "typical" case allegedly proceeds as follows.

When a person is charged with a crime, the Criminal District Court judges first determine whether the criminal defendant is legally "indigent," meaning they qualify for appointment of counsel through the Orleans Public Defenders under Louisiana Revised Statutes § 15:175.   According to plaintiffs, eight-five percent of the criminal defendants in Orleans Parish are

legally indigent.³  With assistance of counsel, the defendants either plead guilty to their criminal charges or proceed to trial.  If convicted, the criminal defendants must appear before a judge at the Criminal District Court for sentencing.

At sentencing, in addition to imposing a term of imprisonment or probation, the court may assess against the criminal defendants various "court costs."  These costs may include restitution to any victim, a statutory fine, fees, or other costs imposed at the judge's discretion.  According to plaintiffs, the discretionary assessments "fund the District Attorney's office, the Public Defender, and the Court[,]" which rely on these collections "to fund their operations and to pay employee salaries and extra benefits."⁴ Plaintiffs allege that the Criminal District Court judges impose court costs without inquiring into the criminal defendants' ability to pay.⁵

If the criminal defendants cannot immediately pay in full, the Criminal District Court judges direct them to the Collections Department, or "fines and fees."  There, a Collections Department employee imposes, at his discretion and without inquiring into a defendant's ability to pay, a payment

---

³      R. Doc. 7 at 5.

⁴      *Id.* at 22-23 ¶ 88.

⁵      *Id.* at 23 ¶ 91.

schedule—usually requiring a certain amount per month.[6]   Collections Department employees also warn the defendants that failure to pay the monthly amount, in full, will result in their arrests.  Collections Department employees refuse to accept anything less than full payment.[7]

When criminal defendants fail to pay, a Collections Department employee allegedly issues a pre-printed warrant for the defendant's arrest by forging a judge's name.[8]  According to plaintiffs, the Collections Department often issues these warrants "years after a purported nonpayment," and the warrants are "routinely issued in error" or without regard to a debtor's indigence.[9]

Plaintiffs also allege that each Collections Department arrest warrant is "accompanied by a preset $20,000 secured money bond required for release."[10]  According to plaintiffs, defendants' unwavering adherence to this "automatic $20,000 secured money bond" requirement results from defendants' financial interest in state-court arrestees' paying for their

---

[6]    *Id.* at 27-28 ¶103.

[7]    *Id.* at 28 ¶ 106.

[8]    *Id.* at 29 ¶ 109.

[9]    *Id.* at ¶ 110.

[10]   *Id.* at ¶ 113.

release.[11]  Plaintiffs contend that the Criminal District Court judges collect 1.8% of each bond, while the Orleans Parish District Attorney's office, the Orleans Public Defenders' office, and the Orleans Parish Sheriff each collect 0.4% of each bond.[12]

When criminal defendants are arrested for nonpayment, they are "routinely told" that to be released from prison, they must pay for the $20,000 secured money bond, the entirety of their outstanding court debts, or some other amount "unilaterally determine[d]" by the Collections Department.[13]  As a result, these indigent debtors "languish" in prison "indefinite[ly]" because they cannot afford to pay any of the foregoing amounts.[14]  Although "arrestees are eventually brought to court," the Sheriff, the Criminal District Court, and the judges "have no set policy or practice" regarding how long arrestees must wait for a hearing.  According to plaintiffs, indigent debtors "routinely" spend a week or more in prison.[15]  Some arrestees, with help from family and friends, pay for their release without

---

[11]     *Id.* at 21-22 ¶88.

[12]     *Id.* at 22 ¶88.

[13]     *Id.* at 30 ¶114.

[14]     *Id.* at ¶115.

[15]     *Id.*

ever having a hearing and thus have "no opportunity to contest the debt or the jailing."[16]

When criminal defendants are brought to court, the Criminal District Court judges allegedly send them back to prison if they are unable to pay their debts or release them "on threat of future arrest and incarceration" if they do not promptly pay the Collections Department.[17]  At these brief "failure-to-pay hearings," the judges allegedly do not consider the debtors' abilities to pay. [18]

Plaintiffs contend that these practices are unconstitutional and have created "a local debtors' prison" in Orleans Parish.[19]

### B.    Parties

The named plaintiffs in the First Amended Complaint are six individuals who were defendants in the Orleans Parish Criminal District Court—Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste,

---

[16]     *Id.* at ¶114.

[17]     *Id.* at ¶116.

[18]     *Id.*

[19]     *See* R. Doc. 7 at 3.

Thaddeus Long, and Vanessa Maxwell.[20]  The facts pertaining to the named plaintiffs, as alleged in their complaint, are as follows.

The Criminal District Court appointed counsel from the Orleans Public Defenders to represent each of the named plaintiffs, except Reynaud Variste, during their criminal proceedings.[21]  Thus, the court must have determined that Cain, Brown, Reynajia Variste, Long, and Maxwell were legally indigent under Louisiana Revised Statutes §15:175.[22]  Reynaud Variste appears to have retained private counsel.[23]

With the assistance of counsel, all of the named plaintiffs pleaded guilty to their respective criminal charges, which include theft,[24] battery,[25]

---

[20]   R. Doc. 7 at 7 ¶7.

[21]   R. Doc. 59-3 at 1 (Alana Cain Docket Sheet, entry for 12/04/2012) ("Court appointed Alex Liu, OPD."), 5 (Ashton Brown Docket Sheet, entry for 10/02/2013) ("Court appointed Seth Wayne, OPD."), 9 (Reynajia Variste Docket Sheet, entry for 10/02/2014) ("Court appointed Lindsey Samuel, OPD.") 23 (Vanessa Maxwell Docket Sheet, entry for 12/14/2011) ("Court appointed Jerrod Thompson-Hicks, OIPD."); R. Doc.95-7 at 1 (Thaddeus Long Docket Sheet, entry for 06/02/2011) ("Court appointed Anna Fecker, OIDP).

[22]   *See* R. Doc. 7 at 5.

[23]   R. Doc. 59-3 at 14 (Reynaud Variste Docket Sheet, entry for 9/25/2012) ("Defendant must retain private counsel.").

[24]   *Id.* at 4 (Alana Cain Guilty Plea), 8 (Ashton Brown Guilty Plea).

[25]   *Id.* at 12 (Reynajia Variste Guilty Plea).

drug possession,[26] "simple criminal damage,"[27] and disturbing the peace.[28] At plaintiffs' sentencings, the presiding judges imposed terms of imprisonment, which were often suspended, as well as terms of active or inactive probation.  In addition, the judges assessed against plaintiffs various court costs—whether restitution, fines, and/or discretionary fees and costs.[29] At some point, all of the named plaintiffs were arrested for failing to pay outstanding court costs.

For example, plaintiffs allege that on one occasion, Alana Cain explained to a Collections Department supervisor that she could not satisfy the full amount of her expected monthly payment.   The Collections Department supervisor warned Cain that if she could not afford her monthly payment, he would issue a warrant for her arrest.[30]  In March 2015, Cain was

---

[26]     *Id.* at 22 (Reynaud Variste Guilty Plea).

[27]     *Id.* at 28 (Vanessa Maxwell Guilty Plea).

[28]     R. Doc. 95-7 at 5 (Thaddeus Long Guilty Plea).

[29]     R. Doc. 59-3 at 2 (Alana Cain Docket Sheet, entry for 5/30/2013), 6 (Ashton Brown Docket Sheet, entry for 12/16/2013), 9 (Reynajia Variste Docket Sheet, entry for 10/21/2014), 18 (Reynaud Variste Docket Sheet, entry for 10/31/2013), 23 (Vanessa Maxwell Docket Sheet, entry for 3/06/2012); R. Doc. 95-7 at 1 (Thaddeus Long Docket Sheet, entry for 7/29/2011).

[30]     R. Doc. 7 at 10 ¶ 18.

arrested for failing to pay her court debts.[31]  Jail staff told Cain that her bail was set at "a $20,000 secured bond pursuant to standard policy" and that "there was no way to find out when her court date would be."[32]  When Cain eventually attended a hearing, the presiding judge told her that "if she ever missed a payment again, she would have to spend 90 days in jail."[33]  The judge did not inquire into Cain's ability to meet the monthly payments imposed by the Collections Department.

According to plaintiffs, in July and August 2015, Ashton Brown spent twenty-nine days in prison solely because of unpaid debts stemming from a 2013 conviction.[34]  When Brown finally received a hearing on the issue of his nonpayment, the presiding judge refused to release Brown, "unless he paid at least $100."[35]  Because Brown could not afford to pay, the judge set another hearing for several days later and warned Brown "that he would be kept in jail unless he got a family member to pay."[36]  Eventually, Brown's

---

[31]     *Id.* at ¶¶20-22.

[32]     *Id.* at 10-11 ¶¶22-23.

[33]     *Id.* at 11 ¶27.

[34]     *Id.* at 12-13 ¶¶ 33-38.

[35]     *Id.* at 13 ¶ 38.

[36]     *Id.*

family "scrape[d] together $100," and Brown was released.[37]  Collections Department employees have since threatened arrest and jail time if Brown does not continue making monthly payments.[38]

Reynaud Variste was allegedly arrested for nonpayment in January 2015 when police "stormed [Variste's] home with assault rifles and military gear."[39]  These officers told Variste "not to worry . . . because he simply owed some old court costs."[40]  In prison, jail staff allegedly told Variste that they "had no idea when or whether [he] would be taken to court."[41]  A bail bondsman told Variste that "he would probably not be released . . . until he paid his entire court debts, which would be cheaper than paying the $20,000 money bond" imposed upon him.[42]  Eventually, Variste's girlfriend paid "the entire debt amount."  Variste was released from prison without a hearing.[43]

---

[37]   *Id.* at 14 ¶40.

[38]   *Id.*

[39]   *Id.* at ¶41.

[40]   *Id.* at ¶42.

[41]   *Id.* at 15 ¶47.

[42]   *Id.*

[43]   *Id.* at ¶48.

Reynajia Variste was arrested in May 2015 for failing to pay her court costs.  Jail staff allegedly told Variste that she could pay her outstanding court debts or post the "standard $20,000 money bond" to be released.[44] While Variste was still in jail, a Collections Department employee told a member of Variste's family that Variste had to pay "at least $400 before [the Collections Department] would agree to let [Variste] out of jail."[45]  The Collections Department allegedly arrived at this amount because it was "close to half of what [Variste] owed in total."[46] Variste spent at least seven days in prison and was never given a hearing before her family gathered enough money "to buy her release."[47]  According to the First Amended Complaint, the Collections Department continues to threaten Reynajia Variste with prison time if she cannot make her monthly payments.[48]

Plaintiffs contend that Thaddeus Long was wrongly arrested for failing to pay his court costs because Long paid his debts in full years before. According to the First Amended Complaint, Long was convicted in 2011 and

---

[44]     *Id.* at 16 ¶55.

[45]     *Id.* at 17 ¶57.

[46]     *Id.*

[47]     *Id.* at ¶60.

[48]     *Id.* at ¶ 64.

finished paying his court costs in October 2013.[49]   In June 2015, a New Orleans police officer, conducting a traffic stop, discovered an outstanding warrant for Long's supposed nonpayment.[50]   The officer arrested Long, and Long spent six days in prison, unable to post "the standard $20,000 secured money bond" before he was given a hearing.   At the failure-to-pay hearing, Long explained that he had already paid his court debts in full, a "mistake . . . apparent from the court records," and he was released immediately.[51]

Vanessa Maxwell allegedly spent twelve days in prison after her arrest for nonpayment before being brought to court.[52]   According to plaintiffs, the presiding judge did not evaluate Maxwell's present ability to pay, but nonetheless made her release from prison contingent on Maxwell's paying $191 "within a week."[53]   Plaintiffs contend that Maxwell was never able to come up with the money, and Maxwell is now "in imminent danger of arrest . . . pursuant to monetary conditions that she cannot [meet]."[54]

---

[49]     *Id.* at 18 ¶67.

[50]     *Id.*

[51]     *Id.* at ¶69.

[52]     *Id.* at 20 ¶83.

[53]     *Id.*

[54]     *Id.* at ¶84.

Plaintiffs now sue the City of New Orleans for hiring the Criminal District Court's Collection Department workers, as well as the police officers who execute the allegedly invalid arrest warrants.[55]  Plaintiffs also sue Sheriff Marlin Gusman, in his official capacity, for "unconstitutionally detain[ing] impoverished people indefinitely because of their inability to . . . pay[] for their release."[56]   In addition, plaintiffs sue the Orleans Parish Criminal District Court for its role in managing and funding the Collections Department, and the court's Judicial Administrator, Robert Kazik, in his individual and official capacities, because he is allegedly responsible for operating the Collections Department.[57]   Finally, plaintiffs name as defendants every judge at the Criminal District Court—thirteen in all—because they allegedly supervise the Collections Department employees and have failed to provide the parish's criminal defendants with constitutionally-required process before imprisoning people for failure to pay court costs. Plaintiffs sue the judges only for declaratory relief.[58]

---

[55]   *Id.* at 7 ¶8.

[56]   *Id.* at 8 ¶12.

[57]   *Id.* at 7-8 ¶¶9-10.

[58]   *Id.* at 8 ¶13.

## C.   Plaintiffs' Claims for Relief

Plaintiffs filed this civil rights action under 42 U.S.C. § 1983, alleging violations of their Fourth and Fourteenth Amendment rights, as well as violations of Louisiana tort law.   Plaintiffs seek damages (including attorneys' fees) and an injunction against all defendants, except the judges. Plaintiffs also seek a declaratory judgment regarding the constitutionality of defendants' practices.[59]

The Court summarizes plaintiffs' claims as follows:

(1)     Defendants' policy of issuing and executing arrest warrants for nonpayment of court costs is unconstitutional under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment;

(2)     Defendants' policy of requiring a $20,000 "fixed secured money bond" for each Collections Department warrant (issued for nonpayment of court costs) is unconstitutional under the Due

---

[59]     Only Cain, Brown, Reynajia Variste, and Maxwell's claims for equitable relief remain.  In an order addressing an earlier motion to dismiss, the Court found that Reynaud Variste and Thaddeus Long lacked standing to pursue prospective equitable relief and dismissed those claims.  R. Doc. 109 at 19-21.

Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(3)     Defendants' policy of indefinitely jailing indigent debtors for nonpayment of court costs without a judicial hearing is unconstitutional under the Due Process Clause of the Fourteenth Amendment;

(4)     Defendants' "scheme of money bonds" to fund certain judicial actors is unconstitutional under the Due Process Clause of the Fourteenth Amendment.  To the extent defendants argue this scheme is in compliance with Louisiana Revised Statutes §§ 13:1381.5 and 22:822, which govern the percentage of each surety bond that the judicial actors receive, those statutes are unconstitutional;

(5)     Defendants' policy of jailing indigent debtors for nonpayment of court costs without any inquiry into their ability to pay is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(6)     Defendants' policy of jailing and threatening to imprison criminal defendants for nonpayment of court debts is unconstitutional under the Equal Protection Clause of the

Fourteenth Amendment because it imposes unduly harsh and punitive restrictions on debtors whose creditor is the State, as compared to debtors who owe money to private creditors;

(7)     Defendants' conduct constitutes wrongful arrest under Louisiana law; and

(8)     Defendants' conduct constitutes wrongful imprisonment under Louisiana law.

Importantly, plaintiffs do not ask the Court to declare that defendants' practice of *imposing* court costs, discretionary or not, is unconstitutional.

### D.     The Judicial Defendants' Motion to Dismiss

The Orleans Parish Criminal District Court, the thirteen judges, and the judicial administrator now move to dismiss plaintiffs' suit for plaintiffs' alleged failure to join required parties under Federal Rule of Civil Procedure 12(b)(7) and 19.  Defendants argue that the "Indigent Transcript Fund," the Orleans Public Defenders office, the Orleans Parish District Attorney, the "[Louisiana Commission on Law Enforcement] Training and Assistance Fund," the "Crime Victims Reparation Fund," the Louisiana Supreme Court, "Crime Stoppers," the "Coroner's Operational Fund," and the "Drug Abuse Education and Treatment Fund" are all required parties because Louisiana law empowers Criminal District Court judges to impose varying amounts of

"courts cost" on criminal defendants to fund the operations of these entities. According to defendants, any ruling by this Court regarding the constitutionality of defendants' "assessing and collecting these costs will have direct . . . and potentially catastrophic impacts" on these absent parties.[60]  Defendants also argue that a ruling in plaintiffs' favor by this Court may conflict with an existing state writ of mandamus that requires defendants to assess the Indigent Defender Fund fee mandated by Louisiana Revised Statute §15:68.[61]  *See Louisiana Public Defender Board v. Parker*, No. 597627 (19th Judicial District Court, Parish of Jefferson, Mar. 4, 2011).

In opposition to the motion to dismiss, plaintiffs argue that defendants misunderstand the relief plaintiffs seek.  To start, plaintiffs reiterate that they do not challenge the validity of the court costs imposed upon them by defendants.  Plaintiffs do not seek to eliminate the Criminal District Court judges' ability to impose court costs, as permitted by Louisiana law. Plaintiffs' constitutional challenges lie with defendants' means of collecting validly-imposed court costs—specifically, with defendants' alleged jailing of indigent debtors without a meaningful inquiry into the debtors' ability to

---

[60]   R. Doc. 53-1 at 2.

[61]   *Id.*

pay.  Plaintiffs therefore contend that the entities defendants argue must be joined are unnecessary and not required to resolve this litigation.


## II.   LEGAL STANDARD

Federal Rules of Civil Procedure 12(b)(7) permits a party to bring a motion to dismiss a complaint for failure to join a required party under Rule 19.  *See* Fed. R. Civ. P. 12(b)(7).  Proper joinder under Rule 19 is a two-step process.  First, the court must decide if the absent party is required to fairly and completely resolve the dispute.  *See* Fed. R. Civ. P. 19(a); *Sch. Bd. of Avoyelles Par. V. U.S. Dep't of Interior*, 647 F.3d 570, 578 (5th Cir. 2011); *Dore Energy Corp. v. Prospective Inv. & Trading Co. Ltd.*, 570 F.3d 219, 230-31 (5th Cir. 2009).  Second, if the absent party is required, but joinder is not feasible, the court must decide whether the absent party is "indispensable" to the action under Rule 19(b).  *See* Fed. R. Civ. P. 19(b); *Sch. Bd. of Avoyelles Par.*, 647 F.3d at 578.

Under Rule 19(a)(1), a party is "required" if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(b) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
  (i) as a practical matter impair or impede the person's ability to protect the interest; or

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

If a required party cannot be joined in the action because its joinder would defeat the court's diversity jurisdiction, the court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).  In making this determination, the court may consider:

> (1) the extent to which a  judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

State law is relevant "in determining what interest the outsider actually has, but the ultimate question whether, given those state-defined interests, a federal court may proceed without the outsider is a federal matter." *Morrison v. New Orleans Pub. Serv. Inc.*, 415 F.2d 419, 423 (5th Cir. 1969)

(citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102,

125 n. 22, 88 S.Ct. 733, 746 n. 22 (1968)).

## III.   DISCUSSION

The Court begins by clarifying the relief plaintiffs seek in their First

Amended Complaint.     Although defendants characterize plaintiffs'

complaint as a broad attack on the "constitutional permissibility of assessing

and collecting" court costs imposed on state-court criminal defendants,[62]

this characterization is incorrect for two reasons.   First, plaintiffs do not

complain about defendants' imposing or assessing court costs as valid terms

of the sentences of state-court criminal defendants.   Indeed, as defendants

note, the Louisiana Supreme Court has recently held that state trial courts

maintain discretion to impose a "broad category of costs" under Louisiana

law.   *See generally State v. Griffin,* 180 So. 3d 1262, 1268 (La. 2015).

Moreover, the imposition of some costs, such as the "special costs to the

district indigent defender fund," are not discretionary; a Louisiana trial court

has no choice but to impose these costs on a criminal defendant who has been

convicted. *See generally* La. Rev. Stat. § 15:168 ("Every court of original

---

[62]      R. Doc. 53-1 at 2.

criminal jurisdiction . . . *shall* remit the following special costs . . ." (emphasis added)).   Second, plaintiffs do not complain about defendants' generally collecting court costs, assuming those collection efforts are carried out in a manner consistent with constitutional principles.

A review of the First Amended Complaint reveals that plaintiffs challenge only the manner in which defendants allegedly collect outstanding court costs from indigent criminal defendants who have failed to pay. Specifically, plaintiffs take issue with the following alleged policies: defendants' failing to inquire into a criminal defendant's reasons for failing to pay court costs before issuing and executing arrest warrants for nonpayment by indigent debtors (Counts One, Five, Six, Seven, and Eight); defendants' requiring a $20,000 "secured money bond," allegedly motivated by their financial interests, to release indigent debtors from prison (Counts Two and Four); and defendants' detaining indigent debtors without a prompt judicial appearance after their arrests (Count Three).   Having properly framed plaintiffs' allegations, the Court finds that none of the absent parties defendants argue must be joined is a required party under Rule 19.

Despite the absence of the third party entities that defendants propose must be joined, the Court can accord complete relief among the existing litigants.   In making this determination, the Court looks to the relief prayed

for by the claimant.  *See In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 273 F.R.D. 380, 385-86 (E.D. La. 2011); *Plains Expl. & Prod. Co. v. 4-C's Land Corp.*, No. 10-702, 2010 WL 3430516, at *3 (E.D. La. Aug. 20, 2010).  The Court "does not consider the effect that a judgment may have on absent parties when evaluating 'complete relief.'"  *VFS US LLC v. Vaczilla Trucking, LLC*, No. 15-2226, 2015 WL 7281619, at *14 (E.D. La. Nov. 16, 2015) (citing *United States v. Rutherford Oil Corp.*, No. G-08-0231, 2009 WL 1351794, at *2 (S.D. Tex. May 13, 2009)).

As noted, plaintiffs request the Court to declare unconstitutional defendants' policies of incarcerating indigent debtors for nonpayment, automatically requiring from them a "$20,000 secured money bond," and detaining them without a prompt judicial appearance.  In seeking this relief, plaintiffs have sued the state actors who are allegedly responsible for the specific conduct at issue.  There are no allegations (from either plaintiffs or defendants) that the Orleans Parish Coroner or whoever administers Louisiana's Drug Abuse Education and Treatment Fund, for example, participates in the decisions to arrest indigent debtors for nonpayment.  The same is true for defendants' allegedly requiring a "$20,000 secured money bond" and detaining arrestees without a prompt judicial appearance—these third party entities are not involved.  Because none of the third parties

participates in the conduct complained of, their presence in this litigation is unnecessary for the Court to "accord complete relief" if plaintiffs ultimately prevail on their claims. *See Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 398 (5th Cir. 1971) (finding absent person to be a required party under Rule 19(a) because "his presence is critical to the disposition of the important issues in the litigation").

The Court next addresses whether any of these third parties "claim[] an interest relating to the subject of the action." *See* Fed. R. Civ. P. 19(a)(1). The "interest relating to the subject of the action" must be a legally protected one. *E.g.*, *United States v. San Juan Bay Marina*, 239 F.3d 400, 406 (1st Cir. 2001) ("A party is necessary under Rule 19(a) only if they claim a 'legally protected interest' relating to the subject matter of the action."); *see also Escamilla v. M2 Tech., Inc.*, 536 F. App'x 417, 421 (5th Cir. 2013) (noting that the licensor of a trademark is usually a required party because "the licensor has a legally protected interest in the subject matter of the action"). "Rule 19 does not contemplate joinder of any party who might possibly be affected by a judgment in any way." *Shelton v. Exxon Corp.*, 843 F.2d 212, 218 (5th Cir. 1998). Several district courts in the Fifth Circuit hold that an absent party's failure to "seek joinder on its own is indicative of its lack of interest in the subject matter of the suit." *Woodard v. Woodard Villa, Inc.*, No. 15-1777,

2016 WL 1298995, at *4 (W.D. La. Mar. 31, 2016) (collecting cases); *see also*

*Colbert v. First NBC Bank*, No. 13-3043, 2014 WL 1329834, at *3 (E.D. La.

Mar. 31, 2014) ("[T]o be a required party under Rule 19(a)(1)(B) because of

an interest in the subject matter of the action, the party must assert its own

interest.").

     Here, none of the absent parties has moved to intervene or otherwise

attempted to participate in this litigation. Defendants merely argue on

behalf of the absent parties that any potential ruling on the merits in this case

will have "potentially catastrophic impacts on the criminal justice operations

of entities not before the Court."[63] Defendants' dire prediction, lacking any

concrete support, is insufficient to show that these absent parties are

necessary to resolve plaintiffs' claims.

     Regardless, defendants' only argument that the absent parties are

interested in the subject matter of this litigation rests on the erroneous

assertion that plaintiffs challenge defendants' *imposition* of court costs.[64]

Any potential ruling regarding the manner in which defendants *collect* court

---

[63]    R. Doc. 53-1 at 2.

[64]    Defendants do not argue—and the Court cannot discern any legitimate reason why—the absent parties have any interest in the subject matter of plaintiffs' other allegations, *i.e.*, determining the appropriate amount of bail for nonpayment offenses or how long arrestees wait for a judicial hearing.

costs will not, "as a practical matter[,] impair or impede" the absent parties' entitlement to receive court costs under Louisiana law.  *See* Fed. R. Civ. P. 19(a)(1)(b)(i).  Any argument that defendants will collect less money overall, and thus financially impact the absent parties, unless they continue current— allegedly unconstitutional—practices is theoretical at best.  "[T]he mere theoretical possibility of prejudice does not require joinder."  *Colbert*, 2014 WL 1329834, at *4 (quoting *Cortez v. County of L.A.*, 96 F.R.D. 427, 430 (C.D. Cal. 1983)).

   Further, this proceeding is unlikely to subject defendants to "multiple or otherwise inconsistent obligations," as they contend.  *See* Fed. R. Civ. P. 19(a)(1)(b)(ii).  Defendants argue that the Criminal District Court judges are currently subject to state-court writ of mandamus requiring them to assess a "special cost[]" benefitting the Orleans Parish indigent defender fund in every case in which a state-court criminal defendant is convicted.  *See Louisiana Public Defender Board v. Parker*, No. 597627 (19th Judicial District Court, Parish of Jefferson, Mar. 4, 2011).  Again, because plaintiffs do not challenge the validity of the costs, any relief, if ultimately granted, will not invalidate the imposition of court costs. *Cf. Shelton v. Exxon Corp.*, 843 F.2d 212, 218 (5th Cir. 1988) ("It is the threat of inconsistent obligations, not the possibility of multiple litigation or a subjective preference for state court,

that determines Rule 19 considerations."); *EEOC v. Brown & Root, Inc.*, 688 F.2d 338, 342 (5th Cir.1982) (finding insufficient under Rule 19(a) a party's claim "that it will somehow be left facing inconsistent obligations," which was "groundless"); *U.S. ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 265 F.R.D. 266, 272 (E.D. La. Feb. 12, 2010). ("[T]he key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria.").[65]

Because joinder of the absent parties is not required under Rule 19(a), further analysis under Rule 19(b) is unnecessary.

---

[65] The only case defendants cite in support of their arguments that the proposed third parties must be joined is *Schutten v. Shell Oil Co.*, 421 F.2d 869 (5th Cir. 1970). *Schutten* involved an ownership dispute over immovable property and its attendant mineral rights. The plaintiffs sought to evict the defendant, Shell Oil Company. *Id.* at 870. Shell was the lessee of a mineral contract with the Orleans Parish Levee Board, who also claimed ownership of the property at issue. *Id.* at 870-71. The Fifth Circuit held that the Levee Board was a required party because any resolution in favor of the plaintiffs against Shell affected the Levee Board "would most assuredly create a cloud on the Levee Board's title and greatly diminish the value of the property." *Id.* at 874. For the reasons already explained, the facts of *Schutten*, a property dispute among multiple parties—each of which asserted a direct, tangible ownership interest in the property—do not bolster defendants' arguments here.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss for failure to join indispensable parties.


New Orleans, Louisiana, this ___22nd___ day of April, 2016.


_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE