UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALANA CAIN, ET AL.                                    CIVIL ACTION

VERSUS                                                NO. 15-4479

CITY OF NEW ORLEANS, ET AL.                           SECTION: R(2)

## <u>ORDER AND REASONS</u>

Named plaintiffs Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell filed this civil rights action under 42 U.S.C. § 1983 seeking to declare the manner in which the Orleans Parish Criminal District Court collects post-judgment court costs from indigent debtors unconstitutional. According to plaintiffs, the Criminal District Court and other, related actors maintain a policy of jailing criminal defendants who fail to pay their court costs solely because of their indigence.[1]

The "judicial defendants" now move the Court to dismiss plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] Defendants contend that plaintiffs fail to state a claim upon which relief can

---

[1]   *See generally* R. Doc. 7 (Plaintiffs' First Amended Class Action Complaint).

[2]   The "judicial defendants" are the Orleans Parish Criminal District Court, its thirteen judge, and the judicial administrator, Robert Kazik.

be granted because they are entitled to absolute and qualified immunity.[3] For the following reasons, the Court grants in part and denies in part the motion.

## I.   BACKGROUND

### A.   Factual Allegations

In this section 1983 civil rights lawsuit, plaintiffs allege, on behalf of themselves and those similarly situated, that the City of New Orleans, the Orleans Parish Criminal District Court, its judges and judicial administrator, and Orleans Parish Sheriff Marlin Gusman maintain an unconstitutional scheme of jailing indigent criminal defendants and imposing excessive bail amounts for nonpayment "offenses" in an effort to collect unpaid court courts.  According to plaintiffs, the Criminal District Court maintains an internal "Collections Department," informally called the "fines and fees" department, that oversees the collection of court debts from former criminal defendants.  The "typical" case allegedly proceeds as follows.

When a person is charged with a crime, the Criminal District Court judges first determine whether the criminal defendant is legally "indigent,"

---

[3]      R. Doc. 54.

meaning they qualify for appointment of counsel through the Orleans Public Defenders under Louisiana Revised Statutes § 15:175.   According to plaintiffs, eight-five percent of the criminal defendants in Orleans Parish are legally indigent.[4]   With assistance of counsel, the defendants either plead guilty to their criminal charges or proceed to trial.  If convicted, the criminal defendants must appear before a judge at the Criminal District Court for sentencing.

At sentencing, in addition to imposing a term of imprisonment or probation, the court may assess against the criminal defendants various "court costs."  These costs may include restitution to any victim, a statutory fine, fees, or other costs imposed at the judge's discretion.  According to plaintiffs, the discretionary assessments "fund the District Attorney's office, the Public Defender, and the Court[,]" which rely on these collections "to fund their operations and to pay employee salaries and extra benefits."[5] Plaintiffs allege that the Criminal District Court judges impose court costs without inquiring into the criminal defendants' ability to pay.[6]

---

[4]     R. Doc. 7 at 5.

[5]     *Id.* at 22-23 ¶ 88.

[6]     *Id.* at 23 ¶ 91.

If the criminal defendants cannot immediately pay in full, the Criminal District Court judges direct them to the Collections Department, or "fines and fees." There, a Collections Department employee allegedly imposes, at his discretion and without inquiring into a defendant's ability to pay, a payment schedule—usually requiring a certain amount per month.[7] Collections Department employees also allegedly warn the defendants that failure to pay the monthly amount, in full, will result in their arrests. Plaintiffs contend that Collections Department employees refuse to accept anything less than full payment.[8]

When criminal defendants fail to pay, a Collections Department employee allegedly issues a pre-printed warrant for the defendant's arrest by forging a judge's name.[9] According to plaintiffs' allegations, the Collections Department often issues these warrants "years after a purported nonpayment," and the warrants are "routinely issued in error" or without regard to a debtor's indigence.[10]

---

[7]    *Id.* at 27-28 ¶103.

[8]    *Id.* at 28 ¶ 106.

[9]    *Id.* at 29 ¶ 109.

[10]   *Id.* at ¶ 110.

Plaintiffs also allege that each Collections Department arrest warrant is "accompanied by a preset $20,000 secured money bond required for release."[11] According to plaintiffs, defendants' unwavering adherence to this "automatic $20,000 secured money bond" requirement results from defendants' financial interest in state-court arrestees' paying for their release.[12] Plaintiffs contend that the Criminal District Court judges collect 1.8% of each bond, while the Orleans Parish District Attorney's office, the Orleans Public Defenders' office, and the Orleans Parish Sheriff each collect 0.4% of each bond.[13]

Plaintiffs allege that when criminal defendants are arrested for nonpayment, they are "routinely told" that to be released from prison, they must pay for the $20,000 secured money bond, the entirety of their outstanding court debts, or some other amount "unilaterally determine[d]" by the Collections Department.[14] As a result, these indigent debtors allegedly "languish" in prison "indefinite[ly]" because they cannot afford to pay any of

---

[11]   *Id.* at ¶ 113.

[12]   *Id.* at 21-22 ¶88.

[13]   *Id.* at 22 ¶88.

[14]   *Id.* at 30 ¶114.

the foregoing amounts.[15]   Although "arrestees are eventually brought to court," plaintiffs allege that the Sheriff, the Criminal District Court, and the judges "have no set policy or practice" regarding how long arrestees must wait for a hearing.  According to plaintiffs, indigent debtors "routinely" spend a week or more in prison.[16]   According to plaintiffs' allegations, some arrestees, with help from family and friends, pay for their release without ever having a hearing and thus have "no opportunity to contest the debt or the jailing."[17]

When criminal defendants are brought to court, the Criminal District Court judges allegedly send them back to prison if they are unable to pay their debts or release them "on threat of future arrest and incarceration" if they do not promptly pay the Collections Department.[18]   At these brief "failure-to-pay hearings," the judges allegedly do not consider the debtors' abilities to pay. [19]

---

[15]     *Id.* at ¶115.

[16]     *Id.*

[17]     *Id.* at ¶114.

[18]     *Id.* at ¶116.

[19]     *Id.*

Plaintiffs contend that these practices are unconstitutional and have created "a local debtors' prison" in Orleans Parish.[20]

## B.    Parties

The named plaintiffs in the First Amended Complaint are six individuals who were defendants in the Orleans Parish Criminal District Court—Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell.[21]

The Criminal District Court appointed counsel from the Orleans Public Defenders to represent each of the named plaintiffs, except Reynaud Variste, during their criminal proceedings.[22]  Thus, the court must have determined that Cain, Brown, Reynajia Variste, Long, and Maxwell were legally indigent

---

[20]    *See* R. Doc. 7 at 3.

[21]    *Id.* at 7 ¶7.

[22]    R. Doc. 59-3 at 1 (Alana Cain Docket Sheet, entry for 12/04/2012) ("Court appointed Alex Liu, OPD."), 5 (Ashton Brown Docket Sheet, entry for 10/02/2013) ("Court appointed Seth Wayne, OPD."), 9 (Reynajia Variste Docket Sheet, entry for 10/02/2014) ("Court appointed Lindsey Samuel, OPD.") 23 (Vanessa Maxwell Docket Sheet, entry for 12/14/2011) ("Court appointed Jerrod Thompson-Hicks, OIPD."); R. Doc.95-7 at 1 (Thaddeus Long Docket Sheet, entry for 06/02/2011) ("Court appointed Anna Fecker, OIDP).

under Louisiana Revised Statutes §15:175.[23]   Reynaud Variste appears to
have retained private counsel.[24]

With the assistance of counsel, all of the named plaintiffs pleaded
guilty to their respective criminal charges, which include theft,[25] battery,[26]
drug possession,[27] "simple criminal damage,"[28] and disturbing the peace.[29]
At plaintiffs' sentencings, the presiding judges imposed terms of
imprisonment, which were often suspended, as well as terms of active or
inactive probation.  In addition, the judges assessed against plaintiffs various
court costs—whether restitution, fines, and/or discretionary fees and costs.[30]

---

[23]     *See* R. Doc. 7 at 5.

[24]     R. Doc. 59-3 at 14 (Reynaud Variste Docket Sheet, entry for 9/25/2012)
("Defendant must retain private counsel.").

[25]     *Id.* at 4 (Alana Cain Guilty Plea), 8 (Ashton Brown Guilty Plea).

[26]     *Id.* at 12 (Reynajia Variste Guilty Plea).

[27]     *Id.* at 22 (Reynaud Variste Guilty Plea).

[28]     *Id.* at 28 (Vanessa Maxwell Guilty Plea).

[29]     R. Doc. 95-7 at 5 (Thaddeus Long Guilty Plea).

[30]     R. Doc. 59-3 at 2 (Alana Cain Docket Sheet, entry for 5/30/2013), 6
(Ashton Brown Docket Sheet, entry for 12/16/2013), 9 (Reynajia Variste
Docket Sheet, entry for 10/21/2014), 18 (Reynaud Variste Docket Sheet,
entry for 10/31/2013), 23 (Vanessa Maxwell Docket Sheet, entry for
3/06/2012); R. Doc. 95-7 at 1 (Thaddeus Long Docket Sheet, entry for
7/29/2011).

At some point, all of the named plaintiffs were arrested for failing to pay outstanding court costs on a warrant issued by the court's Collections Department.

Plaintiffs now sue the City of New Orleans for hiring the Criminal District Court's Collection Department workers and the police officers who execute the allegedly invalid arrest warrants.[31]   Plaintiffs also sue Sheriff Marlin Gusman, in his official capacity, for "unconstitutionally detain[ing] impoverished people indefinitely because of their inability to . . . pay[] for their release."[32]   In addition, plaintiffs sue the Orleans Parish Criminal District Court for its role in managing and funding the Collections Department, and the court's Judicial Administrator, Robert Kazik, in his individual and official capacities, because he is allegedly responsible for operating the Collections Department.[33]   Finally, plaintiffs name as defendants every judge at the Criminal District Court—thirteen in all—because they allegedly supervise the Collections Department employees and have failed to provide the parish's criminal defendants with constitutionally-

---

[31]    R. Doc. 7 at 7 ¶8.

[32]    *Id.* at 8 ¶12.

[33]    *Id.* at 7-8 ¶¶9-10.

required process before imprisoning people for failure to pay court costs. Plaintiffs sue the judges only for declaratory relief.[34]

## C.   Plaintiffs' Claims for Relief

Plaintiffs filed this civil rights action under 42 U.S.C. § 1983, alleging violations of their Fourth and Fourteenth Amendment rights, as well as violations of Louisiana tort law.   Plaintiffs seek damages (including attorneys' fees) and an injunction against all defendants, except the judges. Plaintiffs also seek a declaratory judgment regarding the constitutionality of defendants' practices.[35]

The Court summarizes plaintiffs' claims as follows:

(1)     Defendants' policy of issuing and executing arrest warrants for nonpayment of court costs is unconstitutional under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment;

---

[34]     *Id.* at 8 ¶13.

[35]     Only Cain, Brown, Reynajia Variste, and Maxwell's claims for equitable relief remain.  In an order addressing an earlier motion to dismiss, the Court found that Reynaud Variste and Thaddeus Long lacked standing to pursue prospective equitable relief and dismissed those claims.  R. Doc. 109 at 19-21.

(2)     Defendants' policy of requiring a $20,000 "fixed secured money bond" for each Collections Department warrant (issued for nonpayment of court costs) is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(3)     Defendants' policy of indefinitely jailing indigent debtors for nonpayment of court costs without a judicial hearing is unconstitutional under the Due Process Clause of the Fourteenth Amendment;

(4)     Defendants' "scheme of money bonds" to fund certain judicial actors is unconstitutional under the Due Process Clause of the Fourteenth Amendment.  To the extent defendants argue this scheme is in compliance with Louisiana Revised Statutes §§ 13:1381.5 and 22:822, which govern the percentage of each surety bond that the judicial actors receive, those statutes are unconstitutional;

(5)     Defendants' policy of jailing indigent debtors for nonpayment of court costs without any inquiry into their ability to pay is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(6)     Defendants' policy of jailing and threatening to imprison criminal defendants for nonpayment of court debts is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment because it imposes unduly harsh and punitive restrictions on debtors whose creditor is the State, as compared to debtors who owe money to private creditors;

(7)     Defendants' conduct constitutes wrongful arrest under Louisiana law; and

(8)     Defendants' conduct constitutes wrongful imprisonment under Louisiana law.

## D.     The Judicial Defendants' Motion to Dismiss

The Orleans Parish Criminal District Court, the thirteen judges, and the judicial administrator now move to dismiss plaintiffs' suit on grounds of absolute and qualified immunity.  According to defendants, the judges are absolutely immune from suit for conduct which constitutes a "judicial act."[36] Defendants concede, however, that absolute judicial immunity does not apply to plaintiffs' claims for declaratory relief, but argue that the Court's awarding declaratory relief in this case upsets "federalism, fairness, and

---

[36]     R. Doc. 54-1 at 1.

efficiency concerns."[37]   Further, defendants argue that the Judicial Administrator, Robert Kazik, is shielded by absolute or qualified immunity for his alleged conduct because he merely "assist[ed] judges in carrying out judicial functions."[38]  In the present motion to dismiss, defendants do not raise any arguments pertaining to the amenability to suit of the Criminal District Court itself.

In opposition to the motion to dismiss, plaintiffs note that they sue the judges for only declaratory relief, and thus absolute immunity does not bar these claims.  Regarding the Judicial Administrator, plaintiffs argue that Kazik is not entitled to absolute immunity because he was not acting pursuant to a valid judicial order.  Further, plaintiffs argue that Kazik's conduct was objectively unreasonable, precluding his entitlement to qualified immunity.


## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Ashcroft*

---

[37]     *Id.*

[38]     *Id.*

*v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

## III.   DISCUSSION

### A.   Plaintiffs' Claims Against the Criminal District Court Judges

Defendants admit that their arguments about judicial immunity do not apply to claims for declaratory relief.[39]  *See generally Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985) ("Judicial immunity does not extend to suits for . . . declaratory relief under section 1983.").  Here, plaintiffs have sued the Criminal District Court judges for only declaratory relief.  Plaintiffs do not seek damages or injunctive relief against the judges.  Conceding this point, defendants nonetheless argue that the Court should decline to decide

---

[39]    *Id.*

plaintiffs' claims for declaratory relief in the interests of "federalism, fairness, [and] efficiency."[40]

The Declaratory Judgment Act, 28 U.S.C. § 2201, which plaintiffs invoke here, is "an enabling act, which confers discretion on the courts" to decide or dismiss a declaratory judgment suit, "rather than an absolute right on a litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citations omitted); *accord Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387, 389 (5th Cir. 2003) (citations omitted). In analyzing claims under the Act, a court must determine "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams*, 343 F.3d at 387.

In an earlier order resolving another motion to dismiss, the Court satisfied itself that the claims for declaratory relief were justiciable as to four of the six named plaintiffs.[41] The Court also has the authority to grant declaratory relief.[42] Therefore, the only issue presented by defendants'

---

[40] R. Doc. 54-1 at 6.

[41] R. Doc. 109 at 19-21.

[42] Defendants do not argue that the Court lacks proper authority. The Court's authority to grant declaratory relief depends on whether (1) the declaratory defendant previously filed a cause of action in state court against

current motion is whether the Court should, in its discretion, exercise that

authority.

In determining whether to exercise its authority to hear a declaratory

judgment action, a court should consider the following factors:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedent in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
>
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

---

the declaratory plaintiff, (2) the state suit and the pending federal suit involve the same legal issues, and (3) the Anti-Injunction Act prohibits the court from enjoining the state court proceedings. *AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 319-20 (5th Cir. 2006) (citation omitted). These concerns are not present here.

*Id.* at 388 (quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994)). These considerations aim to address concerns of federalism ("the proper allocation of decision-making between state and federal courts"), fairness ("legitimate and proper reasons for forum selection"), and judicial efficiency ("avoid[ing] duplicative or piecemeal litigation where possible"). *Id.* at 390-91.

Defendants argue that the foregoing considerations dictate dismissal. Defendants contend that there are ongoing state-court proceedings and that plaintiffs have "clear[ly] engaged in forum shopping" because their constitutional challenges "should have been raised in the ongoing state criminal proceedings [because] the potential exists for conflicting rulings."[43] These contentions, however, are merely re-packaged versions of defendants' earlier arguments in favor of *Younger* abstention and joinder of certain parties, which the Court rejected in other orders.[44] Having considered the relevant factors, the Court will exercise its discretion to hear plaintiffs' claims for declaratory relief.

---

[43]   R. Doc. 54-1 at 6-7.

[44]   R. Doc. 109 at 25-31; R. Doc. 111 at 25.

First, there is no pending state action between the same parties and involving the same legal issues.  *See id.* at 396; *cf. Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 166 (5th Cir. 2015) ("[A] district court may decline to decide a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties.").  As explained in the Court's earlier order, there is no ongoing state court action at all.[45]  Further, plaintiffs do not raise "novel questions of state law" that might warrant the Court's declining to decide the declaratory judgment action.  *See Sherwin-Williams*, 343 F.3d at 396.  On the contrary, plaintiffs' constitutional challenges caution against dismissal; "[t]he presence of federal issues must always be a major consideration weighing against surrender of federal jurisdiction."  *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983)).  Moreover, defendants' argument that plaintiffs have engaged in forum shopping is without merit.  "Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it . . . is not in itself improper . . . or otherwise abusive 'forum shopping.'"  *Id.* at 391.  Finally, this Court is sufficiently convenient for all parties, who are Louisiana citizens, and judicial

---

[45]    R. Doc. 109 at 25-30.

economy is not wasted by the Court's retaining the lawsuit.  As addressed in a previous order, defendants' concern about inconsistent rulings rests on the erroneous assertion that plaintiffs challenge the *imposition* of court costs, rather than the manner in which court costs are collected.  *Cf. id.* ("Duplicative litigation may also raise federalism or comity concerns because of the potential for inconsistent state and federal court judgments . . . .").  The remaining considerations (the second, fourth, and seventh factors) do not apply.  *Cf. Ironshore Specialty Ins.*, 624 F. App'x at 167 (noting that certain factors "speak to fairness"—"whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds").  Because federalism, fairness, and efficiency do not weigh in favor of dismissal, the Court denies defendants' motion to dismiss plaintiffs' claims for declaratory relief against the Criminal District Court judges.

## B.    Plaintiffs' Claims against the Criminal District Court Judicial Administrator

Defendants argue that Robert Kazik, the Criminal District Court Judicial Administrator, is entitled to absolute immunity because at all times he was assisting the judges in carrying out their judicial functions. Alternatively, defendants argue that Kazik is at least entitled to qualified immunity for his actions, which were not objectively unreasonable.  Because

the Court finds that Kazik is protected by absolute quasi-judicial immunity, the Court does not address defendants' arguments for qualified immunity.

"Despite the broad terms of § 1983," the Supreme Court "has long recognized" that immunity doctrines protect certain potential defendants from liability under the statute. *Rehberg v. Paulk*, 132 S. Ct. 1497, 1502 (2012). For example, judges are absolutely immune from monetary liability "for all judicial acts that are not performed in the clear absence of jurisdiction, however erroneous the act and however evil the motive." *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir.), *cert denied*, 492 U.S. 921 (1989) (citing *Stump v. Sparkman*, 435 U.S. 349 (1978)). This is so because of the "special nature" of a judge's responsibilities. *Id.* (quoting *Butz v. Economou*, 438 U.S. 478, 511 (1978)). Absolute immunity "help[s] guarantee an independent, disinterested decision-making process" by "prevent[ing] harassment and intimidation that could otherwise result if disgruntled litigants—particularly criminal defendants and inmates . . . could vent their anger by suing . . . the person or persons who rendered an adverse decision." *Id.* at 996-97 (citations omitted).

To further this underlying policy, "other necessary participants in the judicial process are entitled to absolute quasi-judicial immunity." *Kirkendall v. Grambling & Mounce, Inc.*, 4 F.3d 989, 1993 WL 360732, at

*3 (5th Cir. 1993) (citation omitted).  This absolute quasi-judicial immunity

"protects officials that perform *functions* comparable to those of judges. . . ."

*Da Vinci Inv., Ltd. P'ship v. Parker*, 622 F. App'x 367, 373 (5th Cir. 2015)

(quoting *Beck v. Tex. Bd. of Dental Exam'rs*, 204 F.3d 629 (5th Cir. 2000)).

In determining whether an official is entitled to absolute quasi-judicial

immunity, courts must take a "functional approach"—looking to "the nature

of the function performed, not the identity or title of the actor who performed

it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993).

Consistent with this "functional approach," courts often hold that other

judicial employees, such as clerks of court, law clerks, and others, enjoy

absolute quasi-judicial immunity when "performing a discretionary act or . .

. a ministerial function at the direction of the judge."[46]  *Williams v. Wood*,

---

[46]     Absolute quasi-judicial immunity, in another sense of that term, also applies to actors outside of the traditional state judicial system, who perform quasi-judicial functions.  *See O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997) (explaining that "certain quasi-judicial agency officials" are entitled to absolute immunity).  For example, administrative law judges, disciplinary committee members, parole boards, and others have all been entitled to absolute quasi-judicial immunity.  *See Johnson*, 870 F.2d at 995 (collecting cases).  "To determine whether nonjudicial actors perform quasi-judicial functions, and thus are entitled to absolute immunity" the court considers, among other things, "(1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal."  *Da Vinci Inv., Ltd.*, 622 F. App'x at

612 F.2d 982, 985 (5th Cir. 1980) (quoting *Waits v. McGowan*, 516 F.2d 2013, 206 (3d Cir. 1975)); *see generally Evans v. Suter*, 260 F. App'x 726, 727 (5th Cir. 2007) ("Clerks have absolute quasi-judicial immunity . . . when they perform tasks that are an integral part of the judicial process." (citing *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1390 (9th Cir. 1987)); *Bliven v. Hunt*, 579 F.3d 204, 214 (2d Cir. 2009) (granting absolute immunity to family court staff attorneys); *Olivia v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988) ("[F]or purposes of absolute judicial immunity, judges and their law clerks are as one.").   In other words, judicial employees are absolutely immune when they act, whether "in bath faith or with malice" pursuant to a court order or a judge's instructions because the employee is "act[ing] as the arm of the judge and comes within his absolute immunity." *Williams*, 612 F.2d at 985; *accord Johnson*, 870 F.2d at 998 (describing parole board members as "serving essentially as the arm of the sentencing judge"); *Severin v. Parish of Jefferson*, 357 F. App'x 601, 605 (5th Cir. 2009) (granting absolute immunity to "employees of the Louisiana Fifth Circuit

---

373 (denying immunity to city councilmember).   Because the defendant at issue here is a judicial employee serving at the pleasure of the Criminal District Court judges, the Court does not apply these factors in determining whether he is entitled to absolute quasi-judicial immunity.

Court of Appeal who acted pursuant to the procedures allegedly implemented by the judges").

A judicial directive that cloaks court employees with absolute immunity may be formal and official, such as a court order, or more informal, such as verbal communication from a judge. For example, in *Severin v. Parish of Jefferson*, a civil rights plaintiff sued several state-court appellate judges and other employees of the Louisiana appeals court for allegedly instituting a policy to "circumvent Louisiana's constitutional requirement of three judge panels" on pro se post-conviction writs. 357 F. App'x 601, 603 (5th Cir. 1009). The judges allegedly directed a staff member to rule on the prisoners' writ applications without review by the constitutionally-required panel.[47] *Id.* In affirming the district court's dismissal of the 1983 suit, the Fifth Circuit held that the court's employees who allegedly helped carry out the court's unconstitutional policy were protected by judicial immunity, even

---

[47]     In the underlying facts cited by the district court, a deceased member of the court's staff detailed in a suicide note that "for . . . the past 10 years, *not one* criminal writ application filed by an inmate *pro se* has been reviewed by a Judge on the Court." *Severin v. Parish of Jefferson*, No. 09-2766, 2009 WL 1107713, at *2 (E.D. La. Apr. 23, 2009). The staff member continued, "I prepared the ruling on each of those writ applications, and they were signed by a Judge without so much as a glance at the application. In fact, two of the judges on the writ panel never even knew the pro se application was filed, must less aware of the application's contents." *Id.*

though there was no official court order or decree directing the employees to engage in the prohibited conduct. *Id.* at 605. The court explained that because these employees "acted pursuant to the procedures allegedly implemented by the judges [and] were only acting at the express direction of the judges, to assist them in carrying out their judicial functions, these defendants [were] likewise entitled to absolute judicial immunity with respect to [the plaintiff's] claim for monetary damages." *Id.*

Here, the crux of plaintiffs' claims against the Criminal District Court Judicial Administrator Robert Kazik is his supposed involvement in the constitutional violations committed by the Criminal District Court's Collections Department. Specifically, plaintiffs allege that Kazik trained Collections Department employees to issue arrest warrants, accompanied by a $20,000 secured money bond for court debtors' nonpayment of court costs. Kazik allegedly trained the Collections Department employees to sign the judges' names to pre-printed warrants without ever consulting a judge or a member of the judge's staff. Although plaintiffs seemingly argue in opposition to dismissal that Kazik furtively undertook this allegedly unconstitutional conduct on his own, the allegations in the First Amended Complaint reveal the opposite. Indeed, plaintiffs allege that the judges

"supervise and are responsible for the Judicial Administrator,"[48] and a Criminal District Court transcript incorporated by reference to the complaint details the judges' knowledge and approval of Kazik's conduct.[49]  According to this transcript, the judges have, for years, delegated authority to the Collections Department employees to issue arrest warrants for court debtors' nonpayment without the judges' direct oversight.[50]  The judges have allegedly given Kazik and the Collections Department "standing authority" not only to issue warrants for nonpayment, but also to recall arrest warrants or release incarcerated debtors when they pay back-owed debts.[51]  All of the judges are "aware of the [Collections Department's] practice," and unless a judge instructs the Collections Department otherwise, Kazik and other court employees continue operating pursuant to this policy.

It is undisputed that issuing arrest warrants and setting bail are judicial functions, typically performed by a judge in his or her judicial capacity.  *See generally Ballard v. Wall*, 413 F.3d 510, 516 (5th Cir. 2005) ("Ordering the police officers to arrest and imprison [the plaintiff] and

---

[48]     R. Doc. 7 at 8 ¶13.

[49]     R. Doc. 7-1.

[50]     *Id.* at 23.

[51]     *Id.* at 24-25.

requiring . . . payment of a money judgment are clearly acts normally performed by a judge."); *Herring v. Mayfield*, 51 F.3d 1043, 1995 WL 153026, at *1 (5th Cir. 1995) ("[S]etting the amount of the bond . . . is within the scope of [the judge's] jurisdiction, thus affording her absolute judicial immunity."); *Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980) ("[T]he issuance of an arrest warrant is a common judicial function."). It is also undisputed that these acts were carried out within the Criminal District Court, although not necessarily in a formal courtroom proceeding or a judge's chambers.   Further, these arrest warrants for nonpayment concerned former criminal defendants in that court.  Thus, had the arrest warrants been issued by the judges themselves, they would undoubtedly be entitled to absolute judicial immunity.[52]  *See Ballard*, 413 F.3d at 515 (considering whether the act complained of is a "normal judicial function," whether the act occurred in the courtroom or "appropriate adjunct spaces,"

---

[52]     Although judicial officers are not entitled to absolute immunity for acts performed in "the clear absence of jurisdiction," plaintiffs do not argue, and the Court does not find, that the conduct at issue falls within this exception. The "absence of jurisdiction" refers to the court's lacking subject matter jurisdiction to hear the case or personal jurisdiction over a litigant.  *See generally Mullis*, 828 F.2d at 1389 (noting that "a clear absence of all jurisdiction" refers only to a "clear lack" of subject matter or personal jurisdiction).  Nothing in the record indicates the Criminal District Court judges lacked subject matter or personal jurisdiction over the state-court criminal defendants.

whether the controversy centered around a case pending before the court, and whether the acts arose directly out of a visit to the judge in determining whether the judge acted within her judicial capacity for purposes of absolute judicial immunity).

The issue in this case is whether the Criminal District Court's Judicial Administrator, who had "standing authority" from the judges to monitor court debtors' payment of court costs and to issue arrest warrants when debtors failed to pay, is equally entitled to absolute quasi-judicial immunity for acting at the judges' instruction.  Plaintiffs argue that Kazik cannot be immune because there are no allegations that, in issuing arrest warrants for nonpayment, Kazik was "complying with a valid judicial *order*."[53]  But as noted, formal court decrees are not necessary to immunize court employees who act according to a judge's instructions.  *See Severin*, 357 F. App'x at 603. Because, by plaintiffs' own allegations, Kazik acted according to "procedures allegedly implemented by the judges [and] at the express direction of the judges, to assist them in carrying out their judicial functions," Kazik is also protected by absolute quasi-judicial immunity.  *Id.*; *see also Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) (immunizing "deputy circuit

---

[53]    R. Doc. 70 at 19.

clerk [who] issued the arrest warrant at the direction of the assistant circuit judge").

Absolute quasi-judicial immunity shields Kazik from suit under both federal and state law. *See generally Sharp v. Palmisano*, No. 13-5429, 2013 WL 5969661, at *4 (E.D. La. Nov. 8, 2013) ("Louisiana jurisprudence on judicial immunity mirrors the federal doctrine." (quoting *Moore v. Taylor*, 541 So.2d 378, 381 (La. App. 2 Cir. 1989))). As noted, absolute judicial immunity—and therefore absolute quasi-judicial immunity—does not apply to claims for declaratory relief. *See generally Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985). Accordingly, the Court dismisses plaintiffs' claims against Kazik, in his individual capacity, for monetary and injunctive relief under federal and state law.[54]

---

[54] Absolute immunity does not apply to claims against a defendant in his official capacity. *See Turner v. Houma Mun. Fire & POlice Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (collecting cases). However, if the suit against the municipal entity "fails for a jurisdictional, procedural, or pleading defect," any official capacity claim against an individual also fails. *Id.* The Court has not yet addressed the parties' arguments regarding plaintiffs' claims against Criminal District Court.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES

IN PART defendants' motion to dismiss on grounds of absolute and qualified

immunity.

New Orleans, Louisiana, this ____3rd____ day of May, 2016.


_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE