UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALANA CAIN, ET AL.                          CIVIL ACTION

VERSUS                                      NO: 15-4479

CITY OF NEW ORLEANS, ET AL.                 SECTION: R(2)

## ORDER AND REASONS

Named plaintiffs Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell filed this civil rights action under 42 U.S.C. § 1983 seeking to declare the manner in which the Orleans Parish Criminal District Court collects post-judgment court costs from indigent debtors unconstitutional.   According to plaintiffs, the Criminal District Court and other, related actors maintain a policy of jailing criminal defendants who fail to pay their court costs solely because of their indigence.[1]

Sheriff Gusman now asks the Court to dismiss plaintiffs' claims against him under Federal Rule of Civil Procedure 12(b)(6).  Sheriff Gusman argues that plaintiffs' allegations are conclusory and unsupported by facts demonstrating that plaintiffs are entitled to relief.  Sheriff Gusman also argues

---

[1] *See generally* R. Doc. 7 (Plaintiffs' First Amended Class Action Complaint).

that his office is legally required to execute the arrest warrants and enforce the bail bond fee statutes challenged in plaintiffs' First Amended Complaint.[2] For the following reasons, the Court grants the motion.

## I.  BACKGROUND

### A.  Factual Allegations

In this section 1983 civil rights lawsuit, plaintiffs allege, on behalf of themselves and those similarly situated, that the City of New Orleans, the Orleans Parish Criminal District Court, its judges and judicial administrator, and Orleans Parish Sheriff Marlin Gusman maintain an unconstitutional scheme of jailing indigent criminal defendants and imposing excessive bail amounts for nonpayment "offenses" in an effort to collect unpaid court courts. According to plaintiffs, the Criminal District Court maintains an internal "Collections Department," informally called the "fines and fees" department, that oversees the collection of court debts from former criminal defendants. The "typical" case allegedly proceeds as follows.

---

[2] R. Doc. 12.  Sheriff Gusman also argues that a Fifth Circuit case, *Broussard v. Parish of Orleans*, 318 F.3d 644 (5th Cir. 2003), forecloses plaintiffs' claim that defendants' "scheme of money bonds" to fund judicial actors is unconstitutional under the Due Process Clause of the Fourteenth Amendment.  Because the Court resolves Sheriff Gusman's motion on other grounds, the Court does not reach this particular argument and does not address plaintiffs' constitutional challenge to the funding system established in Louisiana Revised Statutes §§ 13:1381.5 and 22:822.

When a person is charged with a crime, the Criminal District Court judges first determine whether the criminal defendant is legally "indigent," which means they qualify for appointment of counsel through the Orleans Public Defenders under Louisiana Revised Statutes § 15:175.  According to plaintiffs, eight-five percent of the criminal defendants in Orleans Parish are legally indigent.[3]  With assistance of counsel, the defendants either plead guilty to their criminal charges or proceed to trial.  If convicted, the criminal defendants must appear before a judge at the Criminal District Court for sentencing.

At sentencing, in addition to imposing a term of imprisonment or probation, the court may assess against the criminal defendants various "court costs."  These costs may include restitution to any victim, a statutory fine, fees, or other costs imposed at the judge's discretion.  According to plaintiffs, the discretionary assessments "fund the District Attorney's office, the Public Defender, and the Court[,]" which rely on these collections "to fund their operations and to pay employee salaries and extra benefits."[4]  Plaintiffs allege

---

[3] R. Doc. 7 at 5.

[4] *Id.* at 22-23 ¶ 88.

that the Criminal District Court judges impose court costs without inquiring into the criminal defendants' ability to pay.[5]

If the criminal defendants cannot immediately pay in full, the Criminal District Court judges allegedly direct them to the Collections Department, or "fines and fees." There, a Collections Department employee allegedly imposes, at his discretion and without inquiring into a defendant's ability to pay, a payment schedule--usually requiring a certain amount per month.[6] Plaintiffs contend that Collections Department employees also warn the defendants that failure to pay the monthly amount, in full, will result in their arrests. Collections Department employees allegedly refuse to accept anything less than full payment.[7]

When criminal defendants fail to pay, a Collections Department employee allegedly issues a pre-printed warrant for the defendant's arrest by forging a judge's name.[8] According to plaintiffs, the Collections Department often issues these warrants "years after a purported nonpayment," and the

---

[5] *Id.* at 23 ¶ 91.

[6] *Id.* at 27-28 ¶ 103.

[7] *Id.* at 28 ¶ 106.

[8] *Id.* at 29 ¶ 109.

warrants are "routinely issued in error" or without regard to a debtor's indigence.[9]

Plaintiffs also allege that each Collections Department arrest warrant is "accompanied by a preset $20,000 secured money bond required for release."[10]  According to plaintiffs, defendants' adherence to this "automatic $20,000 secured money bond" requirement results from defendants' financial interest in state-court arrestees' paying for their release.[11]  Plaintiffs contend that the Criminal District Court judges collect 1.8% of each bond, while the Orleans Parish District Attorney's office, the Orleans Public Defenders' office, and the Orleans Parish Sheriff each collect 0.4% of each bond.[12]

When criminal defendants are arrested for nonpayment, they allegedly are "routinely told" that to be released from prison, they must pay for the $20,000 secured money bond, the entirety of their outstanding court debts, or some other amount "unilaterally determine[d]" by the Collections Department.[13]  As a result, these indigent debtors allegedly "languish" in

---

[9] *Id.* at ¶ 110.

[10] *Id.* at ¶ 113.

[11] *Id.* at 21-22 ¶ 88.

[12] *Id.* at 22 ¶ 88.

[13] *Id.* at 30 ¶ 114.

prison "indefinite[ly]" because they cannot afford to pay any of the foregoing amounts.[14] Plaintiffs contend that although "arrestees are eventually brought to court," defendants "have no set policy or practice" regarding how long arrestees await a hearing. According to plaintiffs, indigent debtors "routinely" spend a week or more in prison.[15] Plaintiffs allege that some arrestees, with help from family and friends, pay for their release without ever having a hearing and thus have "no opportunity to contest the debt or the jailing."[16]

When criminal defendants are brought to court, the Criminal District Court judges allegedly send them back to prison if they are unable to pay their debts or release them "on threat of future arrest and incarceration" if they do not promptly pay the Collections Department.[17] At these brief "failure-to-pay hearings," the judges do not consider the debtors' abilities to pay.[18]

Plaintiffs contend that these practices are unconstitutional under the Fourth Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment.

---

[14] *Id.* at ¶ 115.

[15] *Id.*

[16] *Id.* at ¶ 114.

[17] *Id.* at ¶ 116.

[18] *Id.*

## B.   Parties

The named plaintiffs in the First Amended Complaint are six individuals who were defendants in the Orleans Parish Criminal District Court-Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell.[19]   The facts pertaining to the named plaintiffs, as alleged in their complaint, are as follows.

The Criminal District Court appointed counsel from the Orleans Public Defenders to represent each of the named plaintiffs, except Reynaud Variste, during their criminal proceedings.[20]   Thus, the court must have determined Cain, Brown, Reynajia Variste, Long, and Maxwell to be legally indigent under Louisiana Revised Statutes §15:175.[21]   Reynaud Variste appears to have retained private counsel.[22]

---

[19] *Id.* at 7 ¶ 7.

[20] R. Doc. 59-3 at 1 (Alana Cain Docket Sheet, entry for 12/04/2012) ("Court appointed Alex Liu, OPD."), 5 (Ashton Brown Docket Sheet, entry for 10/02/2013) ("Court appointed Seth Wayne, OPD."), 9 (Reynajia Variste Docket Sheet, entry for 10/02/2014) ("Court appointed Lindsey Samuel, OPD."), 23 (Vanessa Maxwell Docket Sheet, entry for 12/14/2011) ("Court appointed Jerrod Thompson-Hicks, OIPD."); R. Doc. 95-7 at 1 (Thaddeus Long Docket Sheet, entry for 06/02/2011) ("Court appointed Anna fecker, OIDP.").

[21] *See* R. Doc. 7 at 5.

[22] R. Doc. 59-3 at 14 (Reynaud Variste Docket Sheet, entry for 09/2/2012) ("Defendant must retain private counsel.").

With the assistance of counsel, all of the named plaintiffs pleaded guilty to their respective criminal charges, which include theft,[23] battery,[24] drug possession,[25] "simple criminal damage,"[26] and disturbing the peace.[27]  At plaintiffs' sentencings, the presiding judges imposed terms of imprisonment, which were often suspended, as well as terms of active or inactive probation. In addition, the judges assessed against plaintiffs various court costs-whether restitution, fines, and/or discretionary fees and costs.  At some point, all of the named plaintiffs were arrested for failing to pay outstanding court costs.[28]

Plaintiffs now sue the City of New Orleans for hiring the Criminal District Court's Collection Department workers, as well as the police officers who execute the allegedly invalid arrest warrants.[29]  Plaintiffs also sue Sheriff Marlin Gusman, in his official capacity, for "unconstitutionally detain[ing]

---

[23] *Id.* at 4 (Alana Cain Guilty Plea), 8 (Ashton Brown Guilty Plea).

[24] *Id.* at 12 (Reynajia Variste Guilty Plea).

[25] *Id.* at 22 (Reynaud Variste Guilty Plea).

[26] *Id.* at 28 (Vaness Maxwell Guilty Plea).

[27] R. Doc. 95-7 at 5 (Thaddeus Long Guilty Plea).

[28] R. Doc. 59-3 at 2 (Alana Cain Docket Sheet, entry for 05/30/2013), 6 (Ashton Brown Docket Sheet, entry for 12/16/2013), 9 (Reynajia Variste Docket Sheet, entry for 10/21/2014), 18 (Reynaud Variste Docket Sheet, entry for 10/31/2013), 23 (Vanessa Maxwell Docket Sheet, entry for 03/06/2012); R. Doc. 95-7 at 1 (Thaddeus Long Docket Sheet, entry for 07/29/2011).

[29] R. Doc. 7 at 7 ¶ 8.

impoverished people indefinitely because of their inability to . . . pay[] for their release."[30]   In addition, plaintiffs sue the Orleans Parish Criminal District Court[31] for its role in managing and funding the Collections Department, and the court's Judicial Administrator, Robert Kazik, in his individual and official capacities, because he is allegedly responsible for operating the Collections Department.[32]   Finally, plaintiffs name as defendants every judge at the Criminal District Court-thirteen in all-because they allegedly supervise the Collections Department employees and have failed to provide the parish's criminal defendants with constitutionally-required process before imprisoning people for failure to pay court costs.   Plaintiffs sue the judges only for declaratory relief.[33]

### C.   Plaintiffs' Claims for Relief

Plaintiffs filed this civil rights action under 42 U.S.C. § 1983, alleging violations of their Fourth and Fourteenth Amendment rights, as well as violations of Louisiana tort law.  Plaintiffs seek damages (including attorneys'

---

[30] *Id.* at 8 ¶ 12.

[31] This Court dismissed the Criminal District Court as a defendant on May 11, 2016. R. Doc. 123.

[32] *Id.* at 7-8 ¶¶ 9-10.  The Court also dismissed all claims against Kazik, except plaintiffs' claim against Kazik, in his individual capacity, for declaratory relief.  R. Doc. 123.

[33] *Id.* at 8 ¶ 13.

fees) and an injunction against all defendants, except the judges.  Plaintiffs also seek a declaratory judgment regarding the constitutionality of defendants' practices.[34]

The Court summarizes plaintiffs' allegations, as articulated in the First Amended Complaint, as follows:

(1)    Defendants' policy of issuing and executing arrest warrants for nonpayment of court costs is unconstitutional under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment;

(2)    Defendants' policy of requiring a $20,000 "fixed secured money bond" for each Collections Department warrant (issued for nonpayment of court costs) is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(3)    Defendants' policy of indefinitely jailing indigent debtors for nonpayment of court costs without a judicial hearing is

---

[34] Only Cain, Brown, Reynajia Variste, and Maxwell's claims for equitable relief remain.  In an order addressing an earlier motion to dismiss, the Court found that Reynaud Variste and Thaddeus Long lack standing to pursue prospective equitable relief and dismissed those claims.  R. Doc. 109 at 19-21.

unconstitutional under the Due Process Clause of the Fourteenth Amendment;

(4) Defendants' "scheme of money bonds" to fund certain judicial actors is unconstitutional under the Due Process Clause of the Fourteenth Amendment.  To the extent defendants argue this scheme is in compliance with Louisiana Revised Statutes §§ 13:1381.5 and 22:822, which govern the percentage of each surety bond that the judicial actors receive, those statutes are unconstitutional;

(5) Defendants' policy of jailing indigent debtors for nonpayment of court costs without any inquiry into their ability to pay is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(6) Defendants' policy of jailing and threatening to imprison criminal defendants for nonpayment of court debts is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment because it imposes unduly harsh and punitive restrictions on debtors whose creditor is the State, as compared to debtors who owe money to private creditors;

(7)   Defendants' conduct constitutes wrongful arrest under Louisiana law; and

(8)   Defendants' conduct constitutes wrongful imprisonment under Louisiana law.

## D.   Sheriff Gusman's Motion to Dismiss

Sheriff Gusman now moves to dismiss plaintiffs' claims against him under Federal Rule of Civil Procedure 12(b)(6).[35]  Sheriff Gusman argues that plaintiffs' allegations against him are conclusory and insufficient to state a claim upon which relief can be granted.[36]  He further argues that the Sheriff's Office is legally required to execute Collection Department arrest warrants, to detain arrestees who do not post bail, and to collect and distribute bail bond fees pursuant to Louisiana Revised Statutes §§ 13:1381.5 and 22:822.  Thus, Sheriff Gusman contends, these activities cannot give rise to a claim against the Sheriff's Office under 42 U.S.C. § 1983.[37]

---

[35] R. Doc. 12.

[36] *Id.* at 3-6.

[37] *Id.* at 6-9, 11-15.  Sheriff Gusman also argues that a Fifth Circuit case, *Broussard v. Parish of Orleans*, 318 F.3d 644 (5th Cir. 2003), forecloses plaintiffs' claim that defendants' "scheme of money bonds" to fund judicial actors is unconstitutional under the Due Process Clause of the Fourteenth Amendment.  Because the Court resolves Sheriff Gusman's motion on other grounds, the Court does not reach this argument and does not address plaintiffs' constitutional challenge to the funding system established in Louisiana Revised Statutes §§ 13:1381.5 and 22:822.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Iqbal*, 556 U.S. at 678.  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an

insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## III.   DISCUSSION

With few exceptions, the First Amended Complaint directs its allegations not towards Sheriff Gusman, or any other individual or public body, but towards "defendants" as a group.  Rather than identifying specific acts of misconduct by specific defendants, the First Amended Complaint rests largely on allegations of collective wrongdoing by all eighteen defendants.  For instance, plaintiffs allege that "[d]efendants have developed a policy, pattern, and practice of advocating for and implementing high bonds, fines, costs and fees without any constitutional basis and any meaningful inquiry into a person's ability to pay, even when they know the person is indigent."[38]  They further allege that "[d]efendants are aware of these open policies and practices and yet allow them to continue."[39]  Similar allegations pervade the First Amended Complaint.[40]

---

[38] R. Doc. 7 at 22 ¶ 89.

[39] R. Doc. 7 at 29 ¶ 111.

[40] *See, e.g.*, *id.* at 6 ¶ 2 ("Defendants act in concert to implement a regime of debt collection . . . that deliberately ignores longstanding and constitutional protections."); *id.* at 30 ¶ 117 ("The Defendants' policy and practice is never to allow court debtors to enjoy any of the civil judgment protections offered to every judgment debtor under

This pleading structure--lumping all defendants together and asserting identical allegations as to each, without distinction--largely prevents the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions. As the Seventh Circuit recently noted, "liability is personal." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Because the notice pleading requirement of the Federal Rules of Civil Procedure entitles "each defendant . . . to know what he or she did that is asserted to be wrongful," allegations based on a "theory of collective responsibility" cannot withstand a motion to dismiss. *Id.* (affirming dismissal of complaint alleging that collectively responsibility as to all defendants); *see also Zola H. v. Snyder*, No. 12-14073, 2013 WL 4718343, at *7 (E.D. Mich. Sept. 3, 2013) (dismissing complaint that lumped defendants together and failed "to impute concrete acts to specific litigants"); *Petri v. Kestrel Oil & Gas Properties, L.P.*, No. CIV.A. H-09-3994, 2011 WL 2181316, at *7 (S.D. Tex. June 3, 2011) ("[T]he remaining claims against all Defendants here are not adequately pleaded under . . . *Twombly* and *Iqbal* and their progeny. Defendants . . . are entitled to a more definite statement to provide them with adequate notice of the claims against

---

Louisiana law."); *id.* at 38 ¶ 144 ("The Defendants' policy and practice is to issue and execute arrest warrants for those debtors who have not paid old court debts solely based on nonpayment.").

them, as well as factual pleading distinguishing plausible claims against each Defendant individually.").

Accordingly, in evaluating Sheriff Gusman's motion to dismiss, the Court looks only to well-pleaded facts concerning the Sheriff's alleged misconduct. The Court disregards bare assertions of collective responsibility, unsupported by concrete factual allegations. *See Iqbal*, 566 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 557)).

The entirety of plaintiffs' factual allegations against Sheriff Gusman, rather than all "defendants," are as follows:

- Sheriff Gusman enforces Collections Department warrants by detaining individuals who are arrested for nonpayment of court costs. Individuals who are unable to post the standard $20,000 secured money bond are detained indefinitely, often for a period of days or weeks.[41]

- On one occasion, plaintiff Alana Cain asked jail staff employed by Sheriff Gusman whether she could pay the Collections Department using money in her possession. Jail staff responded that she could not and "that she had a $20,000 secured money bond pursuant to standard policy."[42] When Cain asked when she would go to court, "jail staff told her that

---

[41] R. Doc. 7 at 8 ¶ 12 ("Orleans Parish Sheriff Marlin Gusman operates the local jail and unconstitutionally detains impoverished people indefinitely because of their inability to make a financial payment for their release."); *see also id.* at 21 ¶ 86 (alleging that "proceedings are eventually held days or weeks" after an indigent debtor's arrest).

[42] *Id.* at 10 ¶ 22.

someone from her family had to call the court to get her placed on the docket or else she would not get a court date."[43]

• Pursuant to Louisiana Revised Statute § 22:822, Sheriff Gusman collects an "annual license fee" fee that surety companies must pay with every appearance bond submitted in Orleans Parish, including bonds for individuals who are arrested for failure to pay outstanding court costs.[44]

• Pursuant to Louisiana Revised Statutes §§ 22:822 and 13:1381.5, Sheriff Gusman keeps a percentage of each annual license fee for his office's operating fund, and he distributes the remainder to the Criminal District Court, the Criminal District Court's judicial expense fund, the district attorney's operating fund, and the indigent defender's program.[45]

With these allegations in mind, the Court considers the sufficiency of plaintiffs' section 1983 and state-law claims against Sheriff Gusman.

## A.    Section 1983

Plaintiffs sue Sheriff Gusman in his official capacity. As the Fifth Circuit has noted, "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Thus, plaintiffs' official-capacity claims against Sheriff Gusman are actually claims against the Orleans Parish Sheriff's Office itself. *See Bean v. Pittman*, No. CIV.A. 14-2210, 2015 WL

---

[43] *Id.* at 11 ¶ 23.

[44] *Id.* at 6 ¶ 3.

[45] R. Doc. 7 at 40-41 ¶ 152; *see also* La. Rev. Stat. §§ 22:822 and 13:1381.5 (imposing annual licensing fee and providing for its distribution among the named entities).

350284, at *2 (E.D. La. Jan. 26, 2015); *Picard v. Gusman*, Civ. Action No. 12–1966, 2012 WL 6504772, at *4 (E.D. La. Nov. 26, 2012).  Because the Sheriff's Office is a municipal entity, plaintiffs' section 1983 claims against Sheriff Gusman must satisfy the requirements outlined in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Although plaintiffs suggest that *Monell* governs only their claims for monetary relief,[46] *Monell*'s principles apply to all section 1983 claims against municipal defendants, regardless of whether the plaintiff seeks money damages or prospective relief, such as an injunction or a declaratory judgment.  *See Los Angeles Cty. v. Humphries*, 562 U.S. 29, 36-37 (2010) ("The language of § 1983 read in light of *Monell* . . . explains why claims for prospective relief, like claims for money damages, fall within the scope of the 'policy or custom' requirement.").[47]

---

[46] R. Doc. 35 at 2 (distinguishing between plaintiffs' damages claims against Sheriff Gusman and their claims for declaratory and injunctive relief); *id.* at 5 (same).

[47] Plaintiffs' reliance on *Ex parte Young*, 209 U.S. 123 (1908) and *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980) is misplaced.  Those cases establish an exception to the sovereign immunity that states enjoy under the Eleventh Amendment, which permits plaintiffs to sue state officials for prospective relief.  *See Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F. 2d 966, 968 (5th Cir. 1992) (noting that for *Ex parte Young* to apply, the "suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect").  They have no bearing on *Monell*'s standard for liability in a section 1983 claim against municipalities--which, unlike states and state officials sued in their official capacities, are not entitled to Eleventh Amendment immunity.  *See Rounds v. Clements*, 495 F. App'x 938, 941 (10th Cir. 2012) (distinguishing *Ex parte Young* from *Monell*).

Under *Monell*, to state a section 1983 claim against a municipality, a plaintiff must allege the existence of (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).  As the Fifth Circuit has noted, these elements are necessary "to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted).

The "official policy or custom" may be "an actual policy, regulation or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542.  It may also be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Esteves v. Brock*, 106 F.3d 674, 677 (citing *Monell*, 436 U.S. at 694).  Importantly, however, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, Civ. Action No. 09–7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).  Rather, he must *identify* the policy or custom which allegedly

caused the deprivation of his constitutional rights. *See, e.g., Murray v. Town of Mansura*, 76 Fed. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 Fed. App'x 315, 316 (5th Cir. 2003).

As to the second element, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policymaking authority." *Valle*, 613 F.3d at 542. (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). Finally, to satisfy the "moving force" element, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). In other words, "the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411).

Here, plaintiffs have not identified any policy or custom attributable to the Orleans Parish Sheriff's Office that caused the alleged Fourth and Fourteenth Amendment violations. Most of plaintiffs' allegations center on the policies and alleged wrongdoing of entities other than Sheriff's Office. For instance, plaintiffs allege that "defendants" issue arrest warrants for

20

nonpayment of court costs without inquiring into the debtors' ability to pay and that they require a $20,000 "fixed secured money bond" for every Collections Department warrant.  Although plaintiffs level these allegations against "defendants" as a group, the alleged misconduct involves judicial functions, such as the issuance of warrants and the setting of bail.  *See* La. Code Crim. Proc. art. 202 (authorizing magistrates to issue arrest warrants); La. Code Crim. Proc. art. 333 (authorizing judges and magistrates to fix bail "throughout their several territorial jurisdictions").   Absent a plausible allegation that the Sheriff's Office exercises policymaking authority in these domains, these allegations fail to state an official-capacity section 1983 claim against Sheriff Gusman. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("[T]he challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business."); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy *with respect to the subject matter in question.*") (emphasis added).

Plaintiffs' allegation that "[d]efendants' standard policy is to let arrestee debtors languish in prison indefinitely" is unavailing for the same reason.[48] While the parish sheriff is undoubtedly "the keeper of the public jail of his parish," *See* La. Rev. Stat. §§ 13:5539(C), 15:704, plaintiffs do not contend that the Sheriff's Office detains indigent debtors on its own initiative.  Instead, their claim is that the Sheriff's Office holds indigent debtors pursuant to Collections Department warrants bearing the signatures of Criminal District Court judges. Plaintiffs allege no facts--and cite no law--indicating that the Sheriff's Office has authority to refuse custody of individuals arrested on Collections Department warrants or that the Sheriff can release detainees who fail to post bond without a court order.  Nor is there any plausible allegation that the Sheriff's Office is authorized to schedule court appearances or otherwise impact the judicial process affecting detainees.  Thus, plaintiffs fail to allege that a policy or practice attributable to the Sheriff's Office is the moving force behind the alleged constitutional violations identified in the First Amended Complaint.

Plaintiffs' allegations concerning defendants' "money bond scheme" do not change this result.  In Count Four of the First Amended Complaint,

---

[48] R. Doc. 7 at 29 ¶ 112.

plaintiffs level a due process challenge against Louisiana Revised Statutes §§ 22:822 and 13:1381.5.  Section 22:822 provides that "there shall be a fee on premiums for all commercial surety underwriters who write criminal bail bonds in the state of Louisiana."  La. Rev. Stat. § 22:822(A).  In Orleans Parish, the fee amounts to "three dollars for each one hundred dollars worth of liability underwritten," which the surety must pay to the parish sheriff upon submitting a bond for the release of a person on bail.  *Id.* at § 22:822(A)(2). Payment is mandatory and non-negotiable: "[f]ailure to pay such fees shall prevent the sheriff from accepting the appearance bond and power of attorney."  *Id.*  Once the sheriff receives the surety's fee, he or she must distribute the proceeds according to a detailed statutory formula.  In Orleans Parish, the distributions are as follows: 33.33% to the Criminal District Court, 26.67% to the Criminal District Court's judicial expense fund, 13.33% to the sheriff's operating fund, 13.33% to the district attorney's operating fund, 13.33% to the indigent defender's program.  La. Rev. Stat. §§ 22:822(B)(3), 13:1381.5.  Plaintiffs argue that this system is unconstitutional because it gives judges an economic incentive to set high bail amounts to increase their own revenues.  They further argue that because the Sheriff's Office enforces the relevant statutes--by collecting and distributing sureties' fees--Sheriff Gusman is an appropriate party to defend plaintiffs' constitutional challenge.

23

Plaintiffs' argument rests on the premise that a municipal defendant may be held liable under section 1983 for enforcing a state statute, even though the statute mandates a particular course of action.  The Fifth Circuit has rejected this premise as inconsistent with *Monell*'s requirement that a *municipal policy* be the "moving force" behind the constitutional violation.  In *Familias Unidas v. Briscoe*, the Fifth Circuit held that a county was not liable for a county judge's enforcement of a Texas education statute that compelled an organization to disclose the names of members who were boycotting public schools.  619 F.2d 391, 404 (5th Cir. 1980).  The court reasoned that the judge's "duty in implementing [the statute], much like that of a county sheriff in enforcing a state law, may more fairly be characterized as the effectuation of the policy of the State of Texas . . . for which the citizens of a particular county should not bear singular responsibility."  *Id.*; *see also Crane v. State of Tex.*, 759 F.2d 412, 430 n. 19 (5th Cir.), *amended on denial of reh'g*, 766 F.2d 193 (5th Cir. 1985) ("[L]ocal governments and their officials who act in conformance with a state statutory scheme will not be held liable for § 1983 damages if the scheme is later held unconstitutional.").  Other courts have reached the same conclusion.  *See Bockes  v. Fields*, 999 F.2d 788, 791 (4th Cir. 1993) (holding that county board did not act in a policy-making capacity when it fired plaintiff because termination procedures and criteria were

24

prescribed by the state); *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791 (7th Cir. 1991) (holding plaintiff's claim insufficient for *Monell* liability when plaintiff asserted that municipality had a policy of enforcing state statutes, stating that "[i]t is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law.").

The same reasoning applies here. Louisiana Revised Statutes §§ 22:822 and 13:1381.5 require parish sheriffs to collect fees on bail bonds and distribute the proceeds according to a statutory formula. By their plain language, these statutes leave no room for discretionary enforcement. The statutes therefore reflect Louisiana law, not the policy of the Orleans Parish Sheriff's Office. Thus, Sheriff Gusman's enforcement of the relevant provisions cannot be the basis for a section 1983 claim the Sheriff's Office. In light of this ruling, the Court need not address plaintiffs' constitutional challenge to the statutes to resolve Sheriff Gusman's motion to dismiss.

In sum, for all its allegations of collective wrongdoing by all eighteen defendants, plaintiffs do not allege that an official custom or policy attributable to the Sheriff's Office caused their constitutional injuries. Plaintiffs' section 1983 claims against Sheriff Gusman in his official capacity

must therefore be dismissed. *See, e.g., Simmons v. Mesquite Indep. Sch. Dist.*, CIV. A. No. 3:03–CV–2665, 2004 WL 1171189, at *5 (N.D. Tex. May 26, 2004) ("Because plaintiffs fail to allege that they were damaged by the action of an official policymaker or defendant's policy, practice, or custom, plaintiffs have failed to state a claim under § 1983."); *Richardson v. Sewerage & Water Bd.*, CIV. A. No. 95–3033, 1996 WL 288275, at *3 (E.D. La. May 30, 1996) (dismissing claim against a legislatively-created political subdivision of Louisiana, because plaintiff failed to identify an official policy or custom).

## B.    State-Law Claims

In addition to their section 1983 claims, plaintiffs also allege that "defendants" are liable for wrongful arrest (count seven) and wrongful imprisonment (count eight) under Louisiana law. Sheriff Gusman challenges plaintiffs' ability to state a claim for relief under the Louisiana jurisprudence.[49]

To start, "wrongful arrest" and "wrongful imprisonment" are not separate causes of action. *See Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006) (using "wrongful arrest" and "the tort of false imprisonment" interchangeably); *Parker v. Town of Woodworth*, 86 So. 3d

---

[49] R. Doc. 12-1 at 9-11.

141, 144 (La. App. 3 Cir. 2012) ("[F]alse arrest is not distinguished as a separate tort from false imprisonment.").

Plaintiffs fail to state a plausible claim for relief under Louisiana law due to plaintiffs' penchant for group pleading and theory of collective responsibility, as the Court discussed earlier.  In addition, construing plaintiffs' complaint most generously--which this Court need not do because plaintiffs are represented by counsel--the only potential theory of liability against Sheriff Gusman under Louisiana law is vicarious liability or respondeat superior for the conduct of his jail employees, Orleans Parish sheriff's deputies and jail staff.  As Sheriff Gusman argues in his motion to dismiss, and as this Court earlier explained, nothing in plaintiffs' complaint indicates that the Collections Department arrest warrants were facially invalid.  Rather, plaintiffs' complaint and incorporated state-court hearing transcript indicate that the warrants appear to be issued under the authority of the Criminal District Court and appear to bear the signatures of court judges.  In Louisiana, an arresting officer cannot be liable for false arrest when he acts pursuant to a facially valid arrest warrant.  *Winn v. City of Alexandria*, 685 So. 2d 281, 283 (La. App. 3 Cir. 1996); *see also McMasters v. Dep't of Police*, 172 So. 3d 105, 116 (La. App. 4 Cir. 2015) ("[P]robable cause to arrest 'is an absolute defense to any claim against police officers for wrongful arrest, false

imprisonment, or malicious prosecution.'" (quoting *Brown v. City of Monroe*, 135 So. 3d 792, 796 (La. App. 2 Cir. 2014)); *Dyas v. Shreveport Police Dep't*, 136 So. 3d 897, 903 (La. App. 2 Cir. 2014) ("False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority.").  If Sheriff's Office personnel have not acted tortiously, Sheriff Gusman, whose liability is only "secondary or derivative," cannot be liable under respondeat superior.  *Griffin v. Kmart Corp.*, 776 So. 2d 1226, 1232 (La. App. 5 Cir. 2000).  Plaintiffs therefore fail to state a claim for false arrest against Sheriff Gusman.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Sheriff Gusman's motion to dismiss.


New Orleans, Louisiana, this __13th__ day of May, 2016.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

29