UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALANA CAIN, ET AL.                          CIVIL ACTION

VERSUS                                      NO. 15-4479

CITY OF NEW ORLEANS, ET AL.                 SECTION: R(2)

## ORDER AND REASONS

Named plaintiffs Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell filed this civil rights action under 42 U.S.C. § 1983 seeking to declare the manner in which the Orleans Parish Criminal District Court collects post-judgment court costs from indigent debtors unconstitutional. According to plaintiffs, the Criminal District Court and other, related actors maintain a policy of jailing criminal defendants who fail to pay their court costs solely because of their indigence.[1]

The City of New Orleans now asks the Court to dismiss plaintiffs' claims against it under Federal Rule of Civil Procedure 12(b)(6).[2] The City argues that plaintiffs lodge general allegations against all "defendants" and state only legal conclusions. Because plaintiffs have not plausibly stated a

---

[1]   *See generally* R. Doc. 7 (Plaintiffs' First Amended Class Action Complaint).

[2]   R. Doc. 58.

*Monell* claim against the City or a false arrest claim under Louisiana law, the Court grants the motion.

## I.    BACKGROUND

### A.    Factual Allegations

In this section 1983 civil rights lawsuit, plaintiffs allege, on behalf of themselves and those similarly situated, that the City of New Orleans, the Orleans Parish Criminal District Court, its judges and judicial administrator, and Orleans Parish Sheriff Marlin Gusman maintain an unconstitutional scheme of jailing indigent criminal defendants and imposing excessive bail amounts for nonpayment "offenses" in an effort to collect unpaid court courts.  According to plaintiffs, the Criminal District Court maintains an internal "Collections Department," informally called the "fines and fees" department, that oversees the collection of court debts from former criminal defendants.  The "typical" case allegedly proceeds as follows.

When a person is charged with a crime, the Criminal District Court judges first determine whether the criminal defendant is legally "indigent," which means they qualify for appointment of counsel through the Orleans Public Defenders under Louisiana Revised Statutes § 15:175.  According to plaintiffs, eight-five percent of the criminal defendants in Orleans Parish are

legally indigent.[3]  With assistance of counsel, the defendants either plead guilty to their criminal charges or proceed to trial.  If convicted, the criminal defendants must appear before a judge at the Criminal District Court for sentencing.

At sentencing, in addition to imposing a term of imprisonment or probation, the court may assess against the criminal defendants various "court costs."  These costs may include restitution to any victim, a statutory fine, fees, or other costs imposed at the judge's discretion.  According to plaintiffs, the discretionary assessments "fund the District Attorney's office, the Public Defender, and the Court[,]" which rely on these collections "to fund their operations and to pay employee salaries and extra benefits."[4] Plaintiffs allege that the Criminal District Court judges impose court costs without inquiring into the criminal defendants' ability to pay.[5]

If the criminal defendants cannot immediately pay in full, the Criminal District Court judges allegedly direct them to the Collections Department, or "fines and fees."  There, a Collections Department employee allegedly imposes, at his discretion and without inquiring into a defendant's ability to

---

[3]      R. Doc. 7 at 5.

[4]      *Id.* at 22-23 ¶ 88.

[5]      *Id.* at 23 ¶ 91.

pay, a payment schedule—usually requiring a certain amount per month.[6] Collections Department employees also allegedly warn the defendants that failure to pay the monthly amount, in full, will result in their arrests. Plaintiffs contend that Collections Department employees allegedly refuse to accept anything less than full payment.[7]

When criminal defendants fail to pay, a Collections Department employee allegedly issues a pre-printed warrant for the defendant's arrest by forging a judge's name.[8] According to plaintiffs' allegations, the Collections Department often issues these warrants "years after a purported nonpayment," and the warrants are "routinely issued in error" or without regard to a debtor's indigence.[9]

Plaintiffs also allege that each Collections Department arrest warrant is "accompanied by a preset $20,000 secured money bond required for release."[10] According to plaintiffs, defendants' adherence to this "automatic $20,000 secured money bond" requirement results from defendants'

---

[6]     *Id.* at 27-28 ¶103.

[7]     *Id.* at 28 ¶ 106.

[8]     *Id.* at 29 ¶ 109.

[9]     *Id.* at ¶ 110.

[10]    *Id.* at ¶ 113.

financial interest in state-court arrestees' paying for their release.[11]  Plaintiffs contend that the Criminal District Court judges collect 1.8% of each bond, while the Orleans Parish District Attorney's office, the Orleans Public Defenders' office, and the Orleans Parish Sheriff each collect 0.4% of each bond.[12]

Plaintiffs allege that when criminal defendants are arrested for nonpayment, they are "routinely told" that to be released from prison, they must pay for the $20,000 secured money bond, the entirety of their outstanding court debts, or some other amount "unilaterally determine[d]" by the Collections Department.[13]  As a result, these indigent debtors allegedly "languish" in prison "indefinite[ly]" because they cannot afford to pay any of the foregoing amounts.[14]  Although "arrestees are eventually brought to court," plaintiffs allege that defendants "have no set policy or practice" regarding how long arrestees must await a hearing.  According to plaintiffs, indigent debtors "routinely" spend a week or more in prison.[15]  Plaintiffs

---

[11]     *Id.* at 21-22 ¶88.

[12]     *Id.* at 22 ¶88.

[13]     *Id.* at 30 ¶114.

[14]     *Id.* at ¶115.

[15]     *Id.*

allege that some arrestees, with help from family and friends, pay for their release without ever having a hearing and thus have "no opportunity to contest the debt or the jailing."[16]

When criminal defendants are brought to court, the Criminal District Court judges allegedly send them back to prison if they are unable to pay their debts or release them "on threat of future arrest and incarceration" if they do not promptly pay the Collections Department.[17] At these brief "failure-to-pay hearings," the judges allegedly do not consider the debtors' abilities to pay.[18]

Plaintiffs contend that these practices are unconstitutional under the Fourth and Fourteenth Amendments.

### B.   Parties

The named plaintiffs in the First Amended Complaint are six individuals who were defendants in the Orleans Parish Criminal District Court—Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell.[19]

---

[16]   *Id.* at ¶114.

[17]   *Id.* at ¶116.

[18]   *Id.*

[19]   *Id.* at 7 ¶7.

The Criminal District Court appointed counsel from the Orleans Public Defenders to represent each of the named plaintiffs, except Reynaud Variste, during their criminal proceedings.[20]  Thus, the court must have determined that Cain, Brown, Reynajia Variste, Long, and Maxwell were legally indigent under Louisiana Revised Statutes §15:175.[21]  Reynaud Variste appears to have retained private counsel.[22]

With the assistance of counsel, all of the named plaintiffs pleaded guilty to their respective criminal charges, which include theft,[23] battery,[24]

---

[20]    R. Doc. 59-3 at 1 (Alana Cain Docket Sheet, entry for 12/04/2012) ("Court appointed Alex Liu, OPD."), 5 (Ashton Brown Docket Sheet, entry for 10/02/2013) ("Court appointed Seth Wayne, OPD."), 9 (Reynajia Variste Docket Sheet, entry for 10/02/2014) ("Court appointed Lindsey Samuel, OPD.") 23 (Vanessa Maxwell Docket Sheet, entry for 12/14/2011) ("Court appointed Jerrod Thompson-Hicks, OIPD."); R. Doc.95-7 at 1 (Thaddeus Long Docket Sheet, entry for 06/02/2011) ("Court appointed Anna Fecker, OIDP).

[21]    *See* R. Doc. 7 at 5.

[22]    R. Doc. 59-3 at 14 (Reynaud Variste Docket Sheet, entry for 9/25/2012) ("Defendant must retain private counsel.").

[23]    *Id.* at 4 (Alana Cain Guilty Plea), 8 (Ashton Brown Guilty Plea).

[24]    *Id.* at 12 (Reynajia Variste Guilty Plea).

drug possession,[25] "simple criminal damage,"[26] and disturbing the peace.[27] At plaintiffs' sentencings, the presiding judges imposed terms of imprisonment, which were often suspended, as well as terms of active or inactive probation.  In addition, the judges assessed against plaintiffs various court costs—whether restitution, fines, and/or discretionary fees and costs.[28] At some point, all of the named plaintiffs were arrested for failing to pay outstanding court costs on a warrant issued by the court's Collections Department.

Plaintiffs sue the City of New Orleans for hiring the Criminal District Court's Collection Department workers and the police officers who execute the allegedly invalid arrest warrants.[29]  Plaintiffs also sue Sheriff Marlin Gusman, in his official capacity, for "unconstitutionally detain[ing]

---

[25]   *Id.* at 22 (Reynaud Variste Guilty Plea).

[26]   *Id.* at 28 (Vanessa Maxwell Guilty Plea).

[27]   R. Doc. 95-7 at 5 (Thaddeus Long Guilty Plea).

[28]   R. Doc. 59-3 at 2 (Alana Cain Docket Sheet, entry for 5/30/2013), 6 (Ashton Brown Docket Sheet, entry for 12/16/2013), 9 (Reynajia Variste Docket Sheet, entry for 10/21/2014), 18 (Reynaud Variste Docket Sheet, entry for 10/31/2013), 23 (Vanessa Maxwell Docket Sheet, entry for 3/06/2012); R. Doc. 95-7 at 1 (Thaddeus Long Docket Sheet, entry for 7/29/2011).

[29]   R. Doc. 7 at 7 ¶8.

impoverished people indefinitely because of their inability to . . . pay[] for their release."[30]   In addition, plaintiffs sue the Orleans Parish Criminal District Court for its role in managing and funding the Collections Department,[31] and the court's Judicial Administrator, Robert Kazik, in his individual and official capacities, because he is allegedly responsible for operating the Collections Department.[32]   Finally, plaintiffs name as defendants every judge at the Criminal District Court—thirteen in all—because they allegedly supervise the Collections Department employees and have failed to provide the parish's criminal defendants with constitutionally-required process before imprisoning them for failure to pay court costs. Plaintiffs sue the judges only for declaratory relief.[33]

### C.   Plaintiffs' Claims for Relief

Plaintiffs filed this civil rights action under 42 U.S.C. § 1983, alleging violations of their Fourth and Fourteenth Amendment rights, as well as

---

[30]    *Id.* at 8 ¶12.

[31]    This Court dismissed the Criminal District Court as a defendant on May 11, 2016.  R. Doc. 123.

[32]    *Id.* at 7-8 ¶¶9-10.  The Court also dismissed all claims against Kazik, except plaintiffs' claim against Kazik, in his individual capacity, for declaratory relief.  R. Doc. 123.

[33]    *Id.* at 8 ¶13.

violations of Louisiana tort law.   Plaintiffs seek damages (including attorneys' fees) and an injunction against all defendants, except the judges. Plaintiffs also seek a declaratory judgment regarding the constitutionality of defendants' practices.[34]

The Court summarizes plaintiffs' claims as follows:

(1)    Defendants' policy of issuing and executing arrest warrants for nonpayment of court costs is unconstitutional under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment;

(2)    Defendants' policy of requiring a $20,000 "fixed secured money bond" for each Collections Department warrant (issued for nonpayment of court costs) is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(3)    Defendants' policy of indefinitely jailing indigent debtors for nonpayment of court costs without a judicial hearing is

---

[34]    Only Cain, Brown, Reynajia Variste, and Maxwell's claims for equitable relief remain.  In an order addressing an earlier motion to dismiss, the Court found that Reynaud Variste and Thaddeus Long lacked standing to pursue prospective equitable relief and dismissed those claims.  R. Doc. 109 at 19-21.

unconstitutional under the Due Process Clause of the Fourteenth Amendment;

(4)     Defendants' "scheme of money bonds" to fund certain judicial actors is unconstitutional under the Due Process Clause of the Fourteenth Amendment.  To the extent defendants argue this scheme is in compliance with Louisiana Revised Statutes §§ 13:1381.5 and 22:822, which govern the percentage of each surety bond that the judicial actors receive, those statutes are unconstitutional;

(5)     Defendants' policy of jailing indigent debtors for nonpayment of court costs without any inquiry into their ability to pay is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(6)     Defendants' policy of jailing and threatening to imprison criminal defendants for nonpayment of court debts is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment because it imposes unduly harsh and punitive restrictions on debtors whose creditor is the State, as compared to debtors who owe money to private creditors;

(7)     Defendants' conduct constitutes wrongful arrest under Louisiana law; and

(8)     Defendants' conduct constitutes wrongful imprisonment under Louisiana law.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true.  *Iqbal*, 556 U.S. at 678.  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Id.* In other words, the face of the complaint must contain enough factual matter

to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## III.  DISCUSSION

With few exceptions, plaintiffs' First Amended Complaint directs its allegations not towards the City, or any other individual or entity, but towards "defendants" as a group.  Rather than identifying specific acts of misconduct by specific defendants, the First Amended Complaint rests largely on allegations of collective wrongdoing by all eighteen defendants. For instance, plaintiffs allege that "[d]efendants have developed a policy, pattern, and practice of advocating for and implementing high bonds, fines, costs and fees without any constitutional basis and any meaningful inquiry into a person's ability to pay, even when they know the person is indigent."[35] They further allege that "[d]efendants are aware of these open policies and

---

[35]     R. Doc. 7 at 22 ¶89.

practices and yet allow them to continue."[36]  Similar allegations pervade the First Amended Complaint.

This pleading structure—lumping all defendants together and asserting identical allegations as to each, without distinction—largely prevents the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions.  As the Seventh Circuit recently noted, "liability is personal."  *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).  Because the notice pleading requirement of the Federal Rules of Civil Procedure entitle "each defendant . . . to know what he or she did that is asserted to be wrongful," allegations based on a "theory of collective responsibility" cannot withstand a motion to dismiss.  *Id.* (affirming dismissal of complaint alleging collectively responsibility as to all defendants); *see also Zola H. v. Snyder*, No. 12-14073, 2013 WL 4718343, at *7 (E.D. Mich. Sept. 3, 2013) (dismissing complaint that lumped defendants together and failed "to impute concrete acts to specific litigants"); *Petri v. Kestrel Oil & Gas Properties, L.P.*, No. CIV.A. H-09-3994, 2011 WL 2181316, at *7 (S.D. Tex. June 3, 2011) ("[T]he remaining claims against all Defendants here are not adequately pleaded under . . . *Twombly* and *Iqbal*

---

[36]     *Id.* at 29 ¶ 111.

and their progeny.  Defendants . . . are entitled to a more definite statement to provide them with adequate notice of the claims against them, as well as factual pleading distinguishing plausible claims against each Defendant individually.").

Accordingly, in evaluating the City's motion to dismiss, the Court looks only to well-pleaded facts concerning the City's alleged misconduct.  The Court disregards bare assertions of collective responsibility, unsupported by concrete factual allegations.  *See Iqbal*, 566 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (quoting *Twombly*, 550 U.S. at 557)).

The entirety of plaintiffs' allegations against the City, rather than all "defendants," are as follows:

- The Orleans Parish Criminal District Court and the City of New Orleans jointly fund the Collections Department as part of their efforts to supplement the City and the Court budgets with the debts collected from mostly indigent people.[37]

- Among other things, the City of New Orleans funds the hiring of the Collections Department employees who openly and as a matter of policy commit the violations at issue in this case.  Moreover, the City of New Orleans police officers execute the Collections Department warrants even though the City knows or should know that the warrants

---

[37]    *Id.* at 6 ¶2.

are invalid and unconstitutional and that arrestees will be subjected to the Defendants' unconstitutional practices once in custody.[38]

- In 2012, the Orleans Parish Criminal District Court judges objected to the transfer of misdemeanor cases to the Municipal Court because it meant that they would lose significant revenue.  During one discussion at a City Council meeting, the Chief Municipal Court Judge responded to a discussion about this controversy: The judges should not be in the business of . . . making money . . . . We're here to . . . dispense justice . . . . We're not even supposed to be placed in that extremely conflicting position, as to be concerned about how many fines and fees we take in so that we can operate.  You cannot place that burden on us any longer.  It's unfair . . . and it goes against the pledge we take when we take office.[39]

- The Court and the City have even agreed to fund extra positions in the Collections in order to maximize additional revenues from more people.[40]

In two footnotes, plaintiffs also allege:

- The Criminal District Court reported to the City Council in June 2015 that it was in the process of collaborating with the City of New Orleans Police Department and the District Attorney to implement a more efficient online warrant system.

- Despite the extra positions funded jointly by the Court and the City of New Orleans, the Court complained to the City Council in June 2015 that a shortage of funding for the Collections Department had forced it to float other employees to cover that and other areas of its administration.  It noted that budget cuts had left it with one vacant position in the Collections Department.  The Court made the same complaints to the City Council in previous years, even though the City

---

[38]    *Id.* at 7 ¶8.

[39]    *Id.* at 26 ¶98.

[40]    *Id.* at 29 ¶111.

has agreed each year jointly to fund additional Collections Department positions.[41]

With these allegations in mind, the Court considers the sufficiency of plaintiffs' section 1983 and state-law claims against the City.

### A.    Section 1983

As noted in plaintiffs' complaint, the City of New Orleans is a municipal government entity.[42]   To state a section 1983 claim against a municipal entity, for both monetary and equitable relief, plaintiffs must satisfy the requirements outlined in *Monell*.[43]  *See Los Angeles Cty. v. Humphries*, 562 U.S. 29, 36-37 (2010) ("The language of § 1983 read in light of *Monell* . . . explains why claims for prospective relief, like claims for money damages, fall within the scope of the 'policy or custom' requirement.").  Under *Monell*, plaintiffs must allege the existence of (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and

---

[41]    *Id.* at n.24 & n.26.

[42]    *Id.* at 7 ¶8.

[43]    In their opposition, plaintiffs assert that "the City does not appear to dispute that it is a proper party for declaratory and injunctive relief."  R. Doc. 67 at 1.  How plaintiffs arrive at this conclusion is unclear.  In its motion to dismiss, the City argues that plaintiffs have not plausibly alleged sufficient facts to support a *Monell* claim, which is necessary to sustain a section 1983 action against a municipal entity.  *See* R. Doc. 58-1.  As noted, *Monell* applies regardless of whether the plaintiff seeks monetary or equitable relief.

(3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010). These elements are necessary "to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted). A municipal entity cannot be held liable under section 1983 on a theory of *respondeat superior* merely because it employs a tortfeasor. *Monell*, 436 U.S. at 694.

The "official policy or custom" may be "an actual policy, regulation or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542. It may also be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Esteves v. Brock*, 106 F.3d 674, 677 (citing *Monell*, 436 U.S. at 694). Importantly, however, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, Civ. Action No. 09–7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, the plaintiff must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. *See, e.g.,*

*Murray v. Town of Mansura*, 76 Fed. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 Fed. App'x 315, 316 (5th Cir. 2003).

As to the second element, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policymaking authority." *Valle*, 613 F.3d at 542 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)).  Finally, to satisfy the "moving force" element, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).  In other words, "the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411).  "Deliberate indifference," often described as a "high standard" or a "stringent test," requires a municipal actor's "disregard[ing] [the] known or obvious consequence" that a constitutional violation would result from his actions. *Brown*, 520 U.S. at 410; *accord Valle*, 613 F.3d at 542; *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

Here, plaintiffs have not identified any policy or custom attributable to the City of New Orleans that was the moving force behind the alleged Fourth and Fourteenth Amendment violations.  Most of plaintiffs' allegations center on the policies and alleged wrongdoing of entities other than the City.  For instance, plaintiffs challenge the alleged policies of failing to inquire into a debtor's ability to pay his court costs,[44] issuing arrest warrants for nonpayment,[45] imposing an "$20,000 secured money bond,"[46] and "indefinitely" detaining indigent arrestees.[47]  Plaintiffs level these allegations against "defendants" as a group, but none of the policies identified in the complaint can be reasonably attributed to the City.  *See, e.g.*, La. Code Crim. Proc. art. 202 (authorizing judges to issue arrest warrants); La. Code Crim. Proc. art. 333 (authorizing judges to fix bail).  Absent a plausible allegation that the City exercises policymaking authority in these areas, these allegations fail to state a section 1983 claim against the City.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("[T]he challenged action must have been taken pursuant to a policy adopted by the official or officials

---

[44]   *Id.* at 22-23 ¶¶89, 91.

[45]   *Id.* at 21 ¶¶85, 88.

[46]   *Id.* at ¶88;

[47]   *Id.* at 15 ¶ 47.

responsible under state law for making policy in *that area* of the city's business."); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy *with respect to the subject matter in question*." (emphasis added)).

In opposition, plaintiffs characterize the City's "using police officers to execute unconstitutional warrants" or "permitting its police officers to execute" these warrants as an additional municipal policy for which the City may be liable. [48] The only allegation *as to the City* on this point is a single sentence in a forty-four-page complaint. Plaintiffs allege that "the City of New Orleans police officers execute the Collections Department warrants even though the City knows or should know that the warrants are invalid and

---

[48] Plaintiffs' opposition brief also includes other allegations, not present in their complaint, regarding policies allegedly attributable to the City. "[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *1 (E.D. La. Sept. 24, 2015) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (collecting cases)). Because a Rule 12(b)(6) motion tasks the Court with "assess[ing] the legal sufficiency of the *complaint*," the Court does not consider allegations that appear for the first time in plaintiffs' briefing. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (emphasis added).

unconstitutional and that arrestees will be subjected to the Defendants'

unconstitutional practices once in custody."[49]  By plaintiffs own allegations,

these arrest warrants are issued from the Criminal District Court and bear

the signatures of the court judges.  Other than referring to these warrants as

"illegal," "invalid," or "unconstitutional," in conclusory fashion, plaintiffs

have not alleged any facts from which the Court can infer that these warrants,

once issued, are facially deficient.  In light of an officer's legal duty to arrest

someone on the basis of an outstanding warrant, *see, e.g.*, *Smith v. Gonzales*,

670 F.2d 522, 527 (5th Cir. 1982), it is questionable whether the City's

"permitting" the New Orleans Police Department officers to perform their

duties can constitute an official policy of the City.  Plaintiffs fail to allege any

facts, or to cite any law, indicating that the City has authority to prohibit

police officers from carrying out their legal duties by executing outstanding

arrest warrants.  *See Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d

788, 791 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more

innocuous and constitutionally permissible, and whose causal connection to

the alleged violation is more attenuated, than the 'policy' of enforcing state

law.").

---

[49]    *Id.* at 7 ¶8.

Further, plaintiffs fail to allege that the City acted with the requisite degree of culpability to satisfy *Monell*'s "moving force" element. Aside from sprinkling their complaint with legal buzzwords, such as "the City knows or should know," plaintiffs have failed to plausibly allege any facts from which the Court can reasonably infer that the City disregarded known or obvious consequences of its conduct. *See Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 442-43 (5th Cir. 2015) (finding phrases such as "knew or should have known" to be "too conclusory to survive a motion to dismiss") (collecting cases). As noted, deliberate indifference is a high standard, and conclusory allegations or formulaic recitations of the legal elements will not suffice. *See Iqbal*, 556 U.S. at 678. Plaintiffs point to two allegations in their Complaint which they contend undoubtedly reveal that the City had actual knowledge of the Collections Department's alleged practices and therefore chose to participate in the allegedly unconstitutional "scheme." First, plaintiffs note that certain employees of the Collections Department testified at an evidentiary hearing in an ongoing criminal case, *State v. Addison*, at the Criminal District Court.[50] Plaintiffs have not presented any facts from which this Court can reasonably infer that City policymakers learned the

---

[50]   R. Doc. 7 at 1, 29 n.25; R. Doc. 7, Exhibit 1.

substance of a single hearing in a single case pending before the court, which undisputedly maintains a busy docket. Second, plaintiffs allege, in a footnote, that the Criminal District Court "collaborat[ed]" with the New Orleans Police Department and the District Attorney "to implement a more efficient online warrant system."[51] From this, plaintiffs contend, "the only reasonable inference . . . is that [Criminal District Court] officials convinced the City that it was important to perpetuate and expand their collections work."[52] This inference, however, is implausible. These entities regularly perform complementary functions within the criminal justice system to request, issue, and execute arrest warrants for a host of state and local crimes. That the Court, the DA, and the police department allegedly worked to streamline the parish's arrest warrant process does not suggest that these actors conspired to jail indigent court debtors in violation of the Constitution.

In sum, for all its allegations of collective wrongdoing by all eighteen defendants, plaintiffs fail to plausibly allege that an official policy attributable to the City of New Orleans caused their alleged constitutional

---

[51]   *Id.* aat 29 n.25.

[52]   R. Doc. 67 at 8.

injuries.  Plaintiffs' section 1983 claims against the City must therefore be dismissed.  *See, e.g., Simmons v. Mesquite Indep. Sch. Dist.*, CIV. A. No. 3:03–CV–2665, 2004 WL 1171189, at *5 (N.D. Tex. May 26, 2004) ("Because plaintiffs fail to allege that they were damaged by the action of an official policymaker or defendant's policy, practice, or custom, plaintiffs have failed to state a claim under § 1983.").

### B.    State-Law Claims

In addition to their section 1983 claims, plaintiffs also allege that "defendants" are liable for wrongful arrest (count seven) and wrongful imprisonment (count eight) under Louisiana law.  The City of New Orleans challenges plaintiffs' ability to state a claim under the Louisiana jurisprudence.[53]  Plaintiffs neglected to reference any Louisiana law on this point in their opposition.

To start, "wrongful arrest" and "wrongful imprisonment" are not separate causes of action.  *See Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006) (using "wrongful arrest" and "the tort of false imprisonment" interchangeably); *Parker v. Town of Woodworth*, 86 So. 3d

---

[53]    R. Doc. 58-1 at 21.

141, 144 (La. App. 3 Cir. 2012) ("[F]alse arrest is not distinguished as a separate tort from false imprisonment.").

Plaintiffs fail to state a plausible claim for relief under Louisiana law due to plaintiffs' penchant for group pleading and theory of collective responsibility, as the Court discussed earlier.  In addition, construing plaintiffs' complaint most generously—which this Court need not do because plaintiffs are represented by counsel—the only potential theory of liability against the City under Louisiana law is vicarious liability or *respondeat superior* for the conduct of its employees, officers of the New Orleans Police Department.  As the City argues in its motion to dismiss and as this Court earlier explained, nothing in plaintiffs' complaint indicates that the Collections Department arrest warrants were facially invalid.   Rather, plaintiffs' complaint and incorporated state-court hearing transcript indicate that the warrants appear to be issued under the authority of the Criminal District Court and appear to bear the signatures of court judges.   In Louisiana, an arresting officer cannot be liable for false arrest when he acts pursuant to a facially valid arrest warrant.  *Winn v. City of Alexandria*, 685 So. 2d 281, 283 (La. App. 3 Cir. 1996); *accord McMasters v. Dep't of Police*, 172 So. 3d 105, 116 (La. App. 4 Cir. 2015) ("[P]robable cause to arrest 'is an absolute defense to any claim against police officers for wrongful arrest, false

imprisonment, or malicious prosecution.'" (quoting *Brown v. City of Monroe*, 135 So. 3d 792, 796 (La. App. 2 Cir. 2014)); *Dyas v. Shreveport Police Dep't*, 136 So. 3d 897, 903 (La. App. 2 Cir. 2014) ("False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority."). If City employees have not acted tortuously, the City, as their employer, whose liability is only "secondary or derivative," cannot be liable either. *Griffin v. Kmart Corp.*, 776 So. 2d 1226, 1232 (La. App. 5 Cir. 2000). Therefore, plaintiffs false to state a claim for false arrest against the City.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the City's motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

New Orleans, Louisiana, this ____13th____ day of May, 2016.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE