UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALANA CAIN, ET AL.                                    CIVIL ACTION

VERSUS                                                NO. 15-4479

CITY OF NEW ORLEANS, ET AL.                           SECTION: R(2)

## ORDER AND REASONS

Named plaintiffs Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell filed this civil rights action under 42 U.S.C. § 1983 seeking to declare the manner in which the Orleans Parish Criminal District Court judges collect post-judgment court costs from indigent debtors unconstitutional.  According to plaintiffs, the judges maintain a policy of jailing criminal defendants who fail to pay their court costs solely because of their indigence.[1]

The "judicial defendants" now ask the Court to dismiss plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] Defendants argue that the Criminal District Court judges are not legally required to inquire into a state-court criminal defendant's reasons for

_____

[1]   *See generally* R. Doc. 7 (Plaintiffs' First Amended Class Action Complaint).

[2]   R. Doc. 97.

nonpayment because the criminal defendant must affirmatively raise his indigence to excuse his failure to pay.  Defendants also argue that indigence does not excuse nonpayment when the state-court criminal defendant agreed to pay court costs in his plea agreement with the State.  Finally, defendants argue that named plaintiffs willfully failed to pay their court costs and that therefore the judges lawfully issued arrest warrants for plaintiffs' nonpayment, regardless of their indigence.   Finding that defendants' arguments fail under the law and plaintiffs' alleged facts, the Court denies defendants' motion to dismiss.

## I.   BACKGROUND

### A.   Factual Allegations

In this section 1983 civil rights lawsuit, plaintiffs allege that the Criminal District Court judges, among others, maintain an unconstitutional scheme of jailing indigent criminal defendants and imposing excessive bail amounts for nonpayment "offenses" in an effort to collect unpaid court courts.  According to plaintiffs, the Criminal District Court maintains an internal "Collections Department," informally called the "fines and fees" department, that oversees the collection of court debts from former criminal defendants.  The "typical" case allegedly proceeds as follows.

When a person is charged with a crime, the Criminal District Court judges first determine whether the criminal defendant is legally "indigent," which means they qualify for appointment of counsel through the Orleans Public Defenders under Louisiana Revised Statutes § 15:175.  According to plaintiffs, eight-five percent of the criminal defendants in Orleans Parish are legally indigent.[3]  With assistance of counsel, the defendants either plead guilty to their criminal charges or proceed to trial.  If convicted, the criminal defendants must appear before a judge for sentencing.

At sentencing, in addition to imposing a term of imprisonment or probation, the judge may assess against the criminal defendants various "court costs."  These costs may include restitution to any victim, a statutory fine, fees, or other costs imposed at the judge's discretion.  According to plaintiffs, the discretionary assessments "fund the District Attorney's office, the Public Defender, and the Court[,]" which rely on these collections "to fund their operations and to pay employee salaries and extra benefits."[4] Plaintiffs allege that the Criminal District Court judges impose court costs without inquiring into the criminal defendants' ability to pay.[5]

---

[3]     R. Doc. 7 at 5.

[4]     *Id.* at 22-23 ¶ 88.

[5]     *Id.* at 23 ¶ 91.

If the criminal defendants cannot immediately pay in full, the judges allegedly direct them to the Collections Department, or "fines and fees." There, a Collections Department employee allegedly imposes, at his discretion and without inquiring into a defendant's ability to pay, a payment schedule—usually requiring a certain amount per month.[6]  Collections Department employees also allegedly warn the defendants that failure to pay the monthly amount, in full, will result in their arrests.  Plaintiffs contend that Collections Department employees refuse to accept anything less than full payment.[7]

When criminal defendants fail to pay, a Collections Department employee allegedly issues a pre-printed warrant for the defendant's arrest by forging a judge's name.[8]  According to plaintiffs' allegations, the Collections Department often issues these warrants "years after a purported nonpayment," and the warrants are "routinely issued in error" or without regard to a debtor's indigence.[9]

---

[6]    *Id.* at 27-28 ¶103.

[7]    *Id.* at 28 ¶ 106.

[8]    *Id.* at 29 ¶ 109.

[9]    *Id.* at ¶ 110.

Plaintiffs also allege that each Collections Department arrest warrant is "accompanied by a preset $20,000 secured money bond required for release."[10]  According to plaintiffs' allegations, the amount a debtor must pay to satisfy the $20,000 secured money bond is often more than the entirety of the debtor's outstanding court costs.[11]  Plaintiffs allege that defendants' adherence to this "automatic $20,000 secured money bond" results from defendants' financial interest in state-court arrestees' paying for their release.[12]  Plaintiffs contend that the Criminal District Court judges collect 1.8% of each bond, while the Orleans Parish District Attorney's office, the Orleans Public Defenders' office, and the Orleans Parish Sheriff each collect 0.4% of each bond.[13]

Plaintiffs allege that when criminal defendants are arrested for nonpayment, they are "routinely told" that to be released from prison, they must pay for the $20,000 secured money bond, the entirety of their outstanding court debts, or some other amount "unilaterally determine[d]"

---

[10]     *Id.* at ¶ 113.

[11]     *See id.* at ¶ 47.

[12]     *Id.* at 21-22 ¶88.

[13]     *Id.* at 22 ¶88.

by the Collections Department.[14]  As a result, these indigent debtors allegedly "languish" in prison "indefinite[ly]" because they cannot afford to pay any of the foregoing amounts.[15]   Although "arrestees are eventually brought to court," plaintiffs allege that defendants "have no set policy or practice" regarding how long arrestees must wait for a hearing.  According to plaintiffs, indigent debtors "routinely" spend a week or more in prison.[16]   Plaintiffs allege that some arrestees, with help from family and friends, pay for their release without ever having a hearing and thus have "no opportunity to contest the debt or the jailing."[17]

When criminal defendants are brought to court, the judges allegedly send them back to prison if they are unable to pay their debts or release them "on threat of future arrest and incarceration" if they do not promptly pay the Collections Department.[18]   The judges allegedly hold these brief "failure-to-

---

[14]     *Id.* at 30 ¶114.

[15]     *Id.* at ¶115.

[16]     *Id.*

[17]     *Id.* at ¶114.

[18]     *Id.* at ¶116.

pay hearings" without providing the debtors notice of the critical issues or considering the debtors' abilities to pay. [19]

Plaintiffs contend that these practices are unconstitutional under the Fourth and Fourteenth Amendments.

### B.   Parties

The named plaintiffs in the First Amended Complaint are six individuals who were defendants in the Orleans Parish Criminal District Court—Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell. [20]

The Criminal District Court appointed counsel from the Orleans Public Defenders to represent each of the named plaintiffs, except Reynaud Variste, during their criminal proceedings. [21]  Thus, the court must have determined that Cain, Brown, Reynajia Variste, Long, and Maxwell were legally indigent

---

[19]     *Id.*

[20]     *Id.* at 7 ¶7.

[21]     R. Doc. 59-3 at 1 (Alana Cain Docket Sheet, entry for 12/04/2012) ("Court appointed Alex Liu, OPD."), 5 (Ashton Brown Docket Sheet, entry for 10/02/2013) ("Court appointed Seth Wayne, OPD."), 9 (Reynajia Variste Docket Sheet, entry for 10/02/2014) ("Court appointed Lindsey Samuel, OPD.") 23 (Vanessa Maxwell Docket Sheet, entry for 12/14/2011) ("Court appointed Jerrod Thompson-Hicks, OIPD."); R. Doc.95-7 at 1 (Thaddeus Long Docket Sheet, entry for 06/02/2011) ("Court appointed Anna Fecker, OIDP).

under Louisiana Revised Statutes §15:175.[22]   Reynaud Variste appears to have retained private counsel.[23]

With the assistance of counsel, all of the named plaintiffs pleaded guilty to their respective criminal charges, which include theft,[24] battery,[25] drug possession,[26] "simple criminal damage,"[27] and disturbing the peace.[28] At plaintiffs' sentencings, the presiding judges imposed terms of imprisonment, which were often suspended, as well as terms of active or inactive probation.  In addition, the judges assessed against plaintiffs various court costs—whether restitution, fines, and/or discretionary fees and costs.[29]

---

[22]    *See* R. Doc. 7 at 5.

[23]    R. Doc. 59-3 at 14 (Reynaud Variste Docket Sheet, entry for 9/25/2012) ("Defendant must retain private counsel.").

[24]    *Id.* at 4 (Alana Cain Guilty Plea), 8 (Ashton Brown Guilty Plea).

[25]    *Id.* at 12 (Reynajia Variste Guilty Plea).

[26]    *Id.* at 22 (Reynaud Variste Guilty Plea).

[27]    *Id.* at 28 (Vanessa Maxwell Guilty Plea).

[28]    R. Doc. 95-7 at 5 (Thaddeus Long Guilty Plea).

[29]    R. Doc. 59-3 at 2 (Alana Cain Docket Sheet, entry for 5/30/2013), 6 (Ashton Brown Docket Sheet, entry for 12/16/2013), 9 (Reynajia Variste Docket Sheet, entry for 10/21/2014), 18 (Reynaud Variste Docket Sheet, entry for 10/31/2013), 23 (Vanessa Maxwell Docket Sheet, entry for 3/06/2012); R. Doc. 95-7 at 1 (Thaddeus Long Docket Sheet, entry for 7/29/2011).

At some point, all of the named plaintiffs were arrested for failing to pay outstanding court costs on a warrant issued by the court's Collections Department.

Plaintiffs now sue, among others, every judge at the Criminal District Court—thirteen in all—because they allegedly supervise the Collections Department employees and have failed to provide the parish's criminal defendants with constitutionally-required process before imprisoning them failure to pay court costs.  Plaintiffs sue the judges only for declaratory relief.[30]

### C.    Plaintiffs' Claims for Relief

Plaintiffs filed this civil rights action under 42 U.S.C. § 1983, alleging violations of their Fourth and Fourteenth Amendment rights, as well as violations of Louisiana tort law.[31]

---

[30]    *Id.* at 8 ¶13.

[31]    Only Cain, Brown, Reynajia Variste, and Maxwell's claims for equitable relief remain.  In an order addressing an earlier motion to dismiss, the Court found that Reynaud Variste and Thaddeus Long lacked standing to pursue prospective equitable relief and dismissed those claims.  R. Doc. 109 at 19-21.

The Court summarizes plaintiffs' claims as follows:

(1)     Defendants' policy of issuing and executing arrest warrants for nonpayment of court costs is unconstitutional under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment;

(2)     Defendants' policy of requiring a $20,000 "fixed secured money bond" for each Collections Department warrant (issued for nonpayment of court costs) is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(3)     Defendants' policy of indefinitely jailing indigent debtors for nonpayment of court costs without a judicial hearing is unconstitutional under the Due Process Clause of the Fourteenth Amendment;

(4)     Defendants' "scheme of money bonds" to fund certain judicial actors is unconstitutional under the Due Process Clause of the Fourteenth Amendment.  To the extent defendants argue this scheme is in compliance with Louisiana Revised Statutes §§ 13:1381.5 and 22:822, which govern the percentage of each

surety bond that the judicial actors receive, those statutes are unconstitutional;

(5)    Defendants' policy of jailing indigent debtors for nonpayment of court costs without any inquiry into their ability to pay is unconstitutional under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment;

(6)    Defendants' policy of jailing and threatening to imprison criminal defendants for nonpayment of court debts is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment because it imposes unduly harsh and punitive restrictions on debtors whose creditor is the State, as compared to debtors who owe money to private creditors;

(7)    Defendants' conduct constitutes wrongful arrest under Louisiana law; and

(8)    Defendants' conduct constitutes wrongful imprisonment under Louisiana law.

In moving for dismissal, defendants limit their arguments to plaintiffs' claims that defendants unconstitutionally issue and execute arrest warrants for nonpayment and unconstitutionally imprison court debtors without

meaningfully inquiring into their ability to pay.[32]   Accordingly, the Court limits its analysis to those claims.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true.  *Iqbal*, 556 U.S. at 678.  It need not contain detailed factual allegations, but it must go beyond labels, legal

---

[32]   *See* R. Doc. 97 at 1("[Defendants] move this court for an order dismissing this action, particularly claims (a) & (d) in plaintiffs' Request for Relief.").  Although defendants appear to ask the Court to dismiss plaintiffs' complaint as a whole, defendants' arguments are plainly limited to the claims stated above.

conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## III.   DISCUSSION

In their First Amended Complaint, plaintiffs cite, in passing, *Bearden v. Georgia*, 461 U.S. 660 (1983), as support for their constitutional challenges to defendants' conduct. Because defendants' motion to dismiss focuses on whether certain aspects of *Bearden* apply to this case, the Court begins its analysis with a brief discussion of two Supreme Court cases.

In *Tate v. Short*, the United States Supreme Court addressed a constitutional challenge to a state's method of collecting fines from an indigent criminal defendant. 401 U.S. 395 (1971). The criminal defendant in *Tate* had accumulated fines for traffic offenses, offenses punishable only by fine. *Id.* at 396-97. Because the defendant was indigent when the state

court imposed the fines, the court sentenced him to a term of imprisonment—each day counted as five dollars toward the defendant's outstanding fines. *Id.* The Supreme Court invalidated this practice under the Equal Protection Clause of the Fourteenth Amendment, explaining that "[t]he Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Id.* at 398 (citation omitted).

Over a decade later, in *Bearden v. Georgia*, the Supreme Court held—in the context of a probation revocation proceeding—that courts cannot revoke an indigent defendant's probation (and thereby sentence him to a term of imprisonment) for his failure to pay a court-imposed fine or restitution "absent evidence that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate. *See* 461 U.S. 660, 665 (1983). Specifically, the Court held:

> [A] sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment . . . If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made

> sufficient bona fide efforts to pay.  To do otherwise would deprive
> the probationer of his conditional freedom simply because,
> through no fault of his, he cannot pay the fine.

*Id.* at 672-73.

The judicial defendants ask the Court to dismiss plaintiffs' claims against them for three reasons.  First, defendants argue that, contrary to plaintiffs' assertions that a court must inquire into a debtor's reasons for failing to pay, Fifth Circuit law imposes an affirmative duty on the debtors to assert indigence to avoid arrest for nonpayment.[33]  Second, defendants argue that *Bearden* does not apply to court costs imposed pursuant to a criminal defendant's plea agreement with the State.[34]  Third, defendants argue that plaintiffs' conduct "reveals a willful disregard to pay" and that therefore plaintiffs were legally arrested regardless of their financial status.[35]

According to defendants, plaintiffs cannot state a claim because they did not appear before the court and assert their indigence.  Defendants do not explain in what form and/or at what proceeding plaintiffs were expected to do so.[36]  No court has held that indigent debtors are required to initiate

---

[33]    R. Doc. 97-1 at 8-12.

[34]    *Id.* at 14-15.

[35]    *Id.* at 13.

[36]    To the extent defendants argue that plaintiffs should have raised their indigence at sentencing, when the Criminal District Court judges imposed

proceedings to request a modification of their financial obligations or otherwise risk imprisonment for nonpayment.  The two Fifth Circuit cases defendants cite do not stand for this proposition.  In both cases—*Garcia v. City of Abilene* and *Sorrells v. Warner*—the state-court criminal defendants indicated an ability and willingness to pay their court costs.  *See* 21 F.3d 1109, *3 n.8. (5th Cir. 1994); 890 F.2d 773, 774 (5th Cir. 1989).  The criminal defendants also failed (or repeatedly failed) to appear, in person, at previously scheduled court hearings and thus squandered any occasion they had to inform the courts otherwise.  21 F.3d at *1; 890 F.2d at 774.  In both cases, the Fifth Circuit noted in passing that the criminal defendants' arguments under *Tate* and *Bearden* failed because, in those cases, the indigent defendants had appeared before the court and "asserted" their indigence.  21 F.3d at *3; 890 F.2d at 776.  Neither case holds that a state court's obligation to ascertain the reason for nonpayment depends on the debtor's initiating proceedings to raise his indigence to the court.  On the contrary, the Fifth Circuit recently reiterated that *Bearden* "require[s] a court to inquire into the reasons for the [criminal defendant's] failure to pay

---

court costs, this argument is plainly inconsistent with *Bearden*.  In *Bearden*, the lower court revoked the criminal defendant's probation when he became unable to pay the court-imposed fine and restitution after sentencing.  *See* 461 U.S. at 663.

before revoking probation." *United States v. Scales*, ___ F. App'x ___, 2016 WL 1072133, at *7 (5th Cir. 2016) (citing *Bearden*; 461 U.S. at 672; *United States v. Payan*, 992 F.2d 1387, 1396 (5th Cir. 1993)).

To the extent that defendants argue that the Criminal District Court afforded plaintiffs an opportunity to inform the court of their indigence before being arrested and imprisoned for nonpayment, this is unsupported by cognizable evidence and is contradicted by the allegations in plaintiffs' complaint, which the Court must accept as true. [37] According to the First Amended Complaint, plaintiffs were arrested and imprisoned on

---

[37]    Defendants have asked the Court to take judicial notice of records from the Criminal District Court files. R. Doc. 95. These records are a jumble of 248 pages, including computer "screen shots," unsigned arrest warrants, unsigned and admittedly misdated letters from the court, and what appear to be place-holder documents for the court's internal files. *See, e.g.*, R. Doc. 95-3 at 36, 40-41, 47; R. Doc. 95-6 at 17; *see also* R. Doc. 95 at 1 n.2 ("The attached payment notices contained the date they were printed and reflect the print date."); R. Doc. 97-1 at 7 ("Please note that the date listed on the Notice is part of the computer program that automatically prints the date of printing[.]").   None of the documents is authenticated by affidavit or otherwise.  Because of the manner in which these records were submitted, the Court is unable to discern for itself either their authenticity or relevance to the issues raised by defendants' motion.  The Court therefore cannot take judicial notice. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").   Regardless, defendants' arguments are simply contested factual disputes—insufficient to demonstrate that plaintiffs' allegations fail as a matter of law.

improperly-issued warrants, not supported by probable cause, solely for their failure to pay court costs due to indigence.  Plaintiffs allege that the Criminal District Court judges failed to inquire into plaintiffs' reasons for nonpayment before issuing the illegal warrants.  In addition, plaintiffs allege that the Criminal District Court imposed a pre-set $20,000 secured money bond on each plaintiff, the payment of which cost more than plaintiffs' outstanding court debts.  Plaintiffs also allege that they "languished" in prison with no set hearing date and that when they were eventually brought to court—if they were ever brought to court before their release from prison— the court failed to meaningfully inquire into their ability to pay court costs before re-imposing strict payment deadlines and sending some plaintiffs back to prison because they could not afford their debts.  Plaintiffs further allege that they repeatedly told the Collections Department employees—who had "standing authority"[38] over collecting court costs—that they were unable to pay due to indigence.

---

[38]      R. Doc. 7-1 at 23.

For example, named plaintiff Alana Cain asserts that she advised a Collections Department supervisor that she did not have enough money to pay her usual monthly payment.[39]  Although Cain allegedly offered to pay a lower amount, the Collections Department "refuse[d] to accept any payment smaller than $50," and the court issued a warrant for her arrest.[40]  Plaintiffs also allege that some debtors argued their indigence, to no avail, directly to the Criminal District Court judges.   According to the First Amended Complaint, after plaintiff Ashton Brown was arrested for nonpayment, he told a Criminal District Court judge that he could not afford his court debts unless he was released from prison to secure employment, but "[t]he judge told [Brown] that he could not release [Brown] unless [Brown] paid at least $100."[41]  The judge sent Brown back to jail and told Brown that he would be kept there unless a family member paid his outstanding debt.[42]  Accepting the well-pleaded factual allegations as true, as this Court must on a 12(b)(6) motion, plaintiffs have plausibly stated a claim for relief.

---

[39]    R. Doc. 7 at 10.

[40]    *Id.*

[41]    *Id.* at 13.

[42]    *Id.* at 13-14.

Defendants also argue that the Criminal District Court judges are not legally required to inquire into state-court criminal defendants' failure to pay outstanding court costs when the defendants "voluntarily agree[] to pay restitution as part of the[ir] plea agreement[s]."[43] The only cases on which defendants rely for this proposition are non-binding and factually dissimilar. In *United States v. Mitchell*, for example, the Court of Appeals for the Armed Forces interpreted *Bearden* alongside the Armed Forces' Manual for Courts Martial in a case involving a criminal plea agreement. 51 M.J. 490, 493-94 (C.A.A.F. 1999). The criminal defendant "negotiated a pretrial agreement in which *he offered . . . to make full restitution for the bad checks.*" *Id.* at 491 (emphasis added). The defendant's plea agreement reflected that he "underst[ood] and agree[d] that restitution [wa]s a specific condition" the defendant offered in exchange for the plea agreement. *Id.* Further, the defendant represented in the course of negotiating the agreement and in the court-martial proceeding that he had the necessary financial resources to make full restitution. *Id.* When the defendant failed to satisfy his restitution obligations, his hearing officer concluded that the defendant failed to make "a sufficient bona fide effort to acquire funds in light of the resources

---

[43]     R. Doc. 97-1 at 14.

alternatives he represented to the Government in his pretrial agreement" and that the defendant "was less than straightforward . . . in representing the status of his finances." *Id.* In affirming the hearing officer's revocation of the defendant's suspended sentence, the Court of Appeals for the Armed Forces held "that the Due Process Clause does not protect an accused who offers to make full restitution, knowing full well that he cannot; nor does it protect an accused who fails to take timely and reasonable steps to safeguard his assets so that he can make restitution as promised." *Id.* at 494.

Relying on *Mitchell* and another military court opinion, the Supreme Court of North Dakota has also held that a criminal defendant "who had control over the plea agreement and its contents" and "knew his financial situation before he entered into the plea agreement" fails to satisfy *Bearden*'s requirement of good faith when he subsequently neglects his restitution obligations. *State v. Nordahl*, 680 N.W.2d 247, 252-53.

There are a number of reasons why *Mitchell* and *Nordahl* are factually inapposite. First, defendants emphasize in support of their other arguments that "inability to pay is not necessarily a permanent state."[44] By the same logic, a person's *ability* to pay is equally impermanent. Neither *Mitchell* nor

---

[44]   *Id.* at 12.

*Nordahl* stand for the proposition that a criminal defendant, who experiences a change in circumstances after pleading guilty, has *per se* willfully failed to pay when he cannot later meet his financial obligations. In addition, *Mitchell* and *Nordahl* do not address mandatory financial obligations, which—by definition—a criminal defendant cannot voluntarily offer to pay. As defendants have argued to this Court in support of other motions to dismiss, some of the costs the judges impose are mandatory,[45] which means that the state-court defendants have no ability to bargain over these assessments in their plea negotiations. Finally, certain Criminal District Court records show that plaintiffs either did not agree to any amount of court costs or agreed to an amount less than what the court ultimately imposed.[46] Accepting plaintiffs' well-pleaded factual allegations as true,

---

[45]  *See generally* R. Doc. 53-1 (Defendants' Motion to Dismiss for Failure to Join Required Parties); R. Doc. 111 at 20 (order denying defendants' joinder motion).

[46]  Alana Cain seemingly agreed to pay total of $901.50 in her plea agreement. R. Doc. 59-3 at 4. Although the presiding judge assessed Cain with these costs at her sentencing on May 30, 2013, the court also ordered Cain to pay $1,800 in restitution, an obligation not listed in her plea agreement, over a month later, on July 8, 2013. *Id.* at 2 (entries for 05/30/2013 and 07/08/2013). Similarly, Ashton Brown agreed to pay $500 in court costs, but Brown's docket sheet and Collections Department records reflect that the court holds Brown responsible for a total debt to $542.50. *Id.* at 8; *Id.* at 5 (entry for 12/16/2013); R. Doc. 95-4 at 37 (Orleans Parish Collections Department Payment Receipt). According to Vanessa Maxwell's plea agreement, she did not agree to pay any amount of court costs, but her

supported by the limited Criminal District Court records of which this Court has taken judicial notice, plaintiffs plausibly state a claim for relief.

Finally, defendants argue that plaintiffs' conduct "reveals a willful disregard to pay" their outstanding court costs.[47]  Defendants note that in *Bearden*, the Supreme Court did not preclude a court's imprisoning a defendant who "willfully refuse[s] to pay the fine or restitution when he has the means to pay."  461 U.S. 660, 668 (1983).  In support of dismissal on this basis, defendants first argue, again without citation to supporting evidence, that all of the named plaintiffs received notice of their defaults from the court and ignored that notice.  In addition, defendants argue that if "plaintiffs were unable to pay . . . they need to come to court and say so."[48]  For the reasons the Court has explained throughout this order, these conclusory arguments are factually contested or otherwise legally insufficient to warrant dismissal.

---

docket sheet reflects that the court nonetheless imposed $191.50.  R. Doc. 59-3 at 28; *Id.* at 23 (entry for 03/06/2012).

[47]     R. Doc. 97-1 at 13.

[48]     *Id.*

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss under Rule 12(b)(6) for plaintiffs' purported failure to plead their indigence in state court.


New Orleans, Louisiana, this ___23rd___ day of May, 2016.


_____
          SARAH S. VANCE
    UNITED STATES DISTRICT JUDGE