UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALANA CAIN ET AL.                          CIVIL ACTION

VERSUS                                     NO. 15-4479

CITY OF NEW ORLEANS ET AL.                 SECTION "R" (2)

## ORDER AND REASONS ON MOTIONS

The sole remaining defendants at present[1] are the thirteen judges of the Criminal District Court for the Parish of Orleans, State of Louisiana, and Robert Kazik, the Judicial Administrator for that court.  They filed a Motion for Protective Order, Record Doc. No. 185, seeking an order that plaintiffs may conduct no discovery in this potential class action involving claims that defendants unconstitutionally use threats of imprisonment, imprisonment and arrest warrants issued by the court's collections department, rather than by judges themselves, to collect court debts from indigent criminal defendants.  Plaintiffs' claims include an allegation that because some of the assessed fees go to the statutorily authorized "Judicial Expense Fund," which the judges use for financing some of the court's and their expenses, the judges have "an intolerable financial conflict of interest" that deprived plaintiffs of their due process rights to neutral judicial action.  Record Doc. No. 7, First Amended Class Action Complaint, ¶¶ 92-99 & Count Four, ¶¶ 151-52.  The only claims remaining in this case are for declaratory relief

---

[1] A motion is currently pending seeking the return to the case of previously dismissed defendants, including by amending the complaint. Record Doc. No. 183.

against the judges and Kazik in his individual capacity.  Record Doc. No. 119 at p. 28; Record Doc. No. 123 at p. 4.

Plaintiffs filed a timely memorandum in opposition to the motion for protective order, Record Doc. No. 195, and both sides filed supplemental memoranda.  Record Doc. Nos. 210, 211.  In their supplemental memorandum, defendants alternatively request that discovery be stayed at least until the court decides their pending motion for summary judgment, Record Doc. No. 202, based on plaintiffs' alleged lack of standing.

In addition, plaintiffs filed a Motion to Compel, Record Doc. No. 192, in which they seek additional responses and document production as to certain of their interrogatories and requests for production.  Defendants filed a timely written opposition memorandum.  Record Doc. No. 200.  Thereafter, in response to my orders re-noticing and setting plaintiffs' motion for submission and providing counsel with an opportunity to advise the court what issues in plaintiffs' motion remain to be determined, plaintiffs filed supplemental memoranda.  Record Doc. Nos. 209 - 213.

Discovery is currently stayed until January 1, 2017, and the deadlines on all other pending motions have been suspended pending further orders of the court, to give the presiding district judge time to determine plaintiffs' pending motion for review of my prior denial of plaintiffs' motion to amend their complaint and to facilitate settlement negotiations and efforts to formulate a stipulation of facts that may streamline further proceedings.  Record Doc. No. 205.

Having considered the record, the applicable law and the written submissions of counsel, **IT IS ORDERED** that the motions are determined as follows.

(A)     DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

Fed. R. Civ. P. 26(c)(1) governs motions for protective orders.  The Rule provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order . . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>         (A) forbidding the disclosure or discovery;
>         (B) specifying terms . . . for the . . . discovery; . . . .

Fed. R. Civ. P. 26(c)(1) (emphasis added).

The requirement "of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'"  In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); see also United States v. Talco Contractors, Inc., 153 F.R.D. 501, 513 (W.D.N.Y. 1994) ("Good cause must be established and not merely alleged.").

Defendants have not met their burden to show good cause.  First, they have cited no authority mandating that discovery should be stayed pending the court's decision on their motion for summary judgment.  Whether to stay discovery pending resolution of a dispositive motion is within the court's discretion.  Rynearson v. United States, 601 F.

3

App'x 302, 305 (5th Cir. 2015), <u>cert. denied sub nom.</u> <u>Rynearson v. Lands</u>, 136 S. Ct. 1448 (2016) (citing <u>Brazos Valley Coal. for Life, Inc. v. City of Bryan</u>, 421 F.3d 314, 327 (5th Cir. 2005)); <u>Carder v. Cont'l Airlines, Inc.</u>, 595 F. App'x 293, 300 (5th Cir. 2014) (citing <u>Itel Corp. v. M/S Victoria U</u>, 710 F.2d 199, 202 (5th Cir. 1983)).

Discovery is stayed until January 1, 2017. Defendants have not articulated good cause for an additional stay until the court rules on their summary judgment motion. If the presiding district judge decides that the named plaintiffs lack standing, the decision would not be dispositive of the merits of the case, and a dismissal of the named plaintiffs' claims without prejudice would not preclude other persons who are members of the proposed class from bringing their similar claims. I therefore consider defendants' motion for a protective order in light of the existing parties and claims.

Second, defendants' argument that discovery is barred by absolute judicial or quasi-judicial (in Kazik's case) immunity is unavailing. The court has already held in ruling on defendants' motions to dismiss that plaintiffs' claims <u>for declaratory relief</u> against the judges and against Kazik in his individual capacity are <u>not</u> subject to judicial or quasi-judicial immunity. Defendants have cited no authority in the instant motion to undermine that holding. In the absence of immunity, plaintiffs are free to pursue relevant and proportional discovery regarding their claims for declaratory relief.

None of the decisions that defendants cite regarding judicial or quasi-judicial immunity are on point. Those cases involved attempted discovery regarding particular

cases in which the judge or quasi-judicial official from whom discovery was sought and who was held to be immune had participated in some way in adjudicating the underlying case, a judicial function that was clearly protected by immunity.  See, e.g., Gary W. v. State of La., 861 F.2d 1366, 1369 (5th Cir. 1988) (court-appointed special master "was performing a quasi-judicial function" when she submitted formal recommendation and could not be deposed about her mental processes in making that recommendation).

In contrast, plaintiffs in the instant matter assert that the discovery they seek is relevant to the Orleans Parish Criminal Court judges' policy-making function, which is administrative or executive rather than judicial in nature.  It is well established that judicial and quasi-judicial immunity apply only to "tasks that are an integral part of the judicial process" and "were undertaken in the judge's role of resolving and adjudicating issues, rather than administrative, legislative, or executive functions performed by a judge which are not entitled to immunity."  Adams v. Comm. on Judicial Conduct & Disability, 165 F. Supp. 3d 911, 921-22 (N.D. Cal. 2016) (citing Forrester v. White, 484 U.S. 219, 230 (1988); Mullis v. U.S. Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir.1987) (citing Pierson v. Ray, 386 U.S. 547 (1967); Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1872))); see also Forrester, 484 U.S. at 228 ("Administrative decisions, even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts" for purposes of judicial immunity.).

5

Defendants next argue that a judicial privilege, sometimes known as the judicial deliberative process or mental processes privilege, precludes plaintiffs from obtaining any discovery from them, including depositions of the judges and Kazik.  As the parties' memoranda indicate and my own research confirms, very few decisions discuss this privilege, "undoubtedly because its existence and validity has [sic] been so universally recognized.  Its source is rooted in history and gains added force from the constitutional separation of powers of the three departments of government."  United States v. Aguilar, 994 F.2d 609, 616 (9th Cir.), as amended (Aug. 9, 1993), opinion withdrawn, 11 F.3d 124 (9th Cir. 1993), and on reh'g, 21 F.3d 1475 (9th Cir. 1994), aff'd in part, rev'd in part, 515 U.S. 593 (1995) (citing Nixon v. Sirica, 487 F.2d 700, 740 (D.C. Cir. 1973) (MacKinnon, J., dissenting)); accord In re Certain Complaints Under Investigation by an Investigating Comm'ee of the Judicial Council of the Eleventh Cir., 783 F.2d 1488, 1519 (11th Cir. 1986), superseded by statute on other grounds as stated in In re McBryde, 120 F.3d 519, 524 (5th Cir. 1997) (citing Nixon, 487 F.2d at 740); see also Charles W. Sorenson, Jr., Are Law Clerks Fair Game?  Invading Judicial Confidentiality, 43 Val. U. L. Rev. 1, 66-67 (2008) (footnotes omitted) ("[A] judicial deliberations privilege, with roots in the common law as well as constitutional, functional, and separation of powers principles, is well-entrenched in both state and federal courts. . . .  The relatively small amount of attention to the privilege in case law and secondary sources should not be attributed to the novelty or tenuousness of the privilege.").

Thus, "a judge may not be compelled to testify concerning the mental processes used in <u>formulating official judgments</u> or the reasons that motivated him in the performance of his official duties," <u>i.e.</u>, "matters within the scope of his <u>adjudicative duties</u>." <u>Ciarlone v. City of Reading</u>, 263 F.R.D. 198, 202 (E.D. Pa. 2009) (quotations omitted) (citing <u>United States v. Morgan</u>, 313 U.S. 409, 422 (1941); <u>Fayerweather v. Ritch</u>, 195 U.S. 276, 306-07 (1904); <u>Robinson v. Comm'r of Internal Revenue</u>, 70 F.3d 34, 38 (5th Cir. 1995); <u>Grant v. Shalala</u>, 989 F.2d 1332, 1344-45 (3d Cir. 1993); <u>United States v. Roebuck</u>, 271 F. Supp. 2d 712, 718 (D.V.I. 2003); <u>United States v. Edwards</u>, 39 F. Supp. 2d 692 (M.D. La. 1999)) (emphasis added).

The Supreme Judicial Court of Massachusetts (the highest appeals court in that state) exhaustively reviewed decisions from federal and state courts upholding the judicial deliberative process privilege and summarized the purposes of the privilege as follows:

> 1. Finality.  To ensure the finality of judgments, judges have long been barred from testifying to impeach their own <u>verdicts</u>. . . .  "[T]he finality and integrity of <u>judgments</u> would be threatened by a rule that enabled parties to attack a judgment by probing the mental processes of a judge."  . . .  <u>Washington v. Strickland</u>, 693 F.2d 1243, 1263 (5th Cir. 1982), <u>rev'd on other grounds</u>, 466 U.S. 668 . . . (1984).
>
> 2. Quality and integrity of decision-making.  In addition to ensuring the finality of judgments, protecting judges from the post hoc probing of their mental processes also ensures the integrity and quality of judicial decision-making.  Federal and State courts faced with requests to question judges or their law clerks regarding judicial deliberations have underscored the importance of protecting that process, not just for the sake of the judge's personal interests, but to ensure the quality and integrity of decision-making that benefits from the free and honest development of a

judge's own thinking and candid communications among judges and between judges and the courts' staff in <u>resolving cases before them</u>.

  . . . .

    3. Independence and impartiality.  The judiciary's independence from the other branches of government and from outside influences and extraneous concerns has been one of the cornerstones of our constitutional democracy, intended to ensure that judges will be free to <u>decide cases</u> on the law and the facts as their best judgment dictates, without fear or favor.

  . . . .

    Equally important [as judicial immunity] to ensuring judicial independence and the free and impartial <u>judging of disputes among parties</u> regardless of how powerful or powerless they might be (or how popular or unpopular their causes) is the protection of a judge's deliberative process.

  . . . . The privilege also protects confidential communications among judges and between judges and court staff made in the course of and related to their deliberative processes <u>in particular cases</u>.

<u>In re Enforcement of Subpoena</u>, 463 Mass. 162, 168-69, 171-72, 174, 972 N.E.2d 1022, 1029 (2012) (additional citations omitted).

    A party raising a claim of judicial privilege has the burden of demonstrating that the matters under inquiry fall within the confines of the privilege.  The judicial privilege is grounded in the need for confidentiality in the effective discharge of the . . . judge's duties.  In the main, the privilege can extend only to communications among judges and others relating to official judicial business such as, for example, the framing and researching of <u>opinions, orders, and rulings</u>.

<u>Matter of Certain Complaints</u>, 783 F.2d at 1520.

    As the emphasized language in the quotations above indicates, the deliberative process privilege primarily protects judicial decision-making in the context of adjudicating particular cases.  <u>See also</u> <u>Hale v. State Farm Mut. Auto. Ins. Co.</u>, No. 12-cv-660-DRH-SCW, 2015 WL 12791328, at *2-3 (S.D. Ill. Jan. 16, 2015) (Plaintiffs alleged that defendant State Farm devised a scheme to elect Justice Karmeier to the

Illinois Supreme Court and to conceal State Farm's involvement in the financing and management of the justice's campaign, so that he could preside over a class action that was pending in the Illinois Supreme Court.[2]  Plaintiffs sought to depose the justice about his recruitment as a candidate, his campaign and his fundraising.  "[W]hile the topics do not necessarily relate to the deliberative process surrounding the <u>Avery</u> decision <u>on the merits</u>, examination of the topics highlights the real crux of the issue before the Court–all of these topics relate to Justice Karmeier's decision not to <u>recuse</u> himself, and the Illinois Supreme Court's decision not to compel his <u>recusal</u>, in <u>Avery</u>.  The decision not to recuse is the most important deliberative choice at issue here. . . .  [T]he testimony Plaintiffs seek from Justice Karmeier is directly relevant to his deliberative judicial determination not to recuse in the <u>Avery</u> case and, potentially, others. . . .  Plaintiffs want to impeach a decision of Justice Karmeier and the Illinois Supreme Court.").

Some state courts have held that the judicial deliberative process privilege is absolute.  <u>E.g.</u>, <u>In re Enforcement of Subpoena</u>, 463 Mass. at 174.  However, the Eleventh Circuit held in the leading case in the federal courts that the privilege is a qualified one, which does not prevent disclosure in every instance.

> [T]he investigating party can attempt to show the importance of the inquiry for which the privileged information is sought; the relevance of that information to its inquiry; and the difficulty of obtaining the desired information through alternative means.  The court then must weigh the investigating party's demonstrated need for the information against the

---

[2]<u>Avery v. State Farm Mut. Auto. Ins. Co.</u>, 216 Ill. 2d 100, 835 N.E.2d 801 (2005).

degree of intrusion upon the confidentiality of privileged communications necessary to satisfy that need.

In re Certain Complaints, 783 F.2d at 1522.  If a sufficient showing of need is made, the qualified privilege can be overcome even if the information sought falls within its scope.

The Eleventh Circuit held that a federal judge's appointment diaries, daily schedules, calendars, travel itineraries, guest sign-in sheets, telephone message books, logs and memoranda "would not ordinarily be expected to reveal the substance of communications among [the judge], his colleagues, and his staff concerning [his] official duties," but that, even if the documents contained some substantive communications, the judge's qualified privilege was overcome by the relevance and serious need of the materials by the Eleventh Circuit's judicial committee, which was investigating multiple allegations of judicial misconduct, including that the judge had accepted a bribe in return for an official act.  Id. at 1520.  The appeals court also held that the testimony of the judge's law clerks clearly "implicate[d] communications among a judge and his staff concerning performance of judicial business" and was "presumptively privileged."  Id. at 1522.  However, the qualified privilege was "overridden" by the committee's need for the law clerks' testimony to investigate "a matter of surpassing [public] importance" that involved "grave" allegations against a sitting judge, "implicate[d] concerns of fairness and thoroughness of a high order," and for which there was no adequate substitute.  Id. Weighing those concerns against the judge's interest in the confidentiality of his in-chambers communications, the Eleventh Circuit found that the judge's

> assertion of a confidentiality interest is generalized in nature. [He] has not directed the attention of this court to any further, specific need for secrecy over and above those needs which normally apply and give rise, in the first place, to a privilege. On the other side of the balance, again, the Committee's particular need for these witnesses' testimony implicates concerns of great moment.

Id. at 1523-24. "Therefore, having weighed the competing concerns in the balance, we hold that the Committee's need for these witnesses' testimony outweighs [the judge's] asserted interest in non-disclosure. We add that while the Committee's questions to [the law clerks] were manifestly relevant here, we would enforce the subpoenas upon a lesser showing of relevance so long as a reasonable degree of materiality could be discerned." Id. at 1525.

In the absence of any binding Fifth Circuit precedent concerning the judicial deliberative process privilege, I find that the Eleventh Circuit's reasoning in In re Certain Complaints is persuasive and that the decision counsels against the blanket prohibition of discovery that defendants seek in the instant case. Privileges, as exceptions to the demand for relevant evidence and derogations from the search for the truth, are strictly construed. As I and other judges have held,

> [s]pecial caution should be exercised in recognizing a privilege in a civil rights case because "application of the federal law of privilege, rather than state law, in civil rights actions is designed to ensure that state and county officials may not exempt themselves from the very laws which guard against their unconstitutional conduct by claiming that state law requires all evidence of their alleged wrongdoing to remain confidential."

Chauvin v. Lee, No. 99-2200, 2000 WL 6268, at *2 (E.D. La. Jan. 4, 2000) (quoting Torres v. Kuzniasz, 936 F. Supp. 1201, 1213 (D.N.J. 1996)) (citing Hinsdale v. City of Liberal, 961 F. Supp. 1490, 1495 (D. Kan.), aff'd, 981 F. Supp. 1378 (D. Kan. 1997) (citing United States v. Nixon, 418 U.S. 683, 710 (1974))); accord Carr v. Monroe Mfg. Co., 431 F.2d 384, 389 (5th Cir. 1970); Williams v. Connick, No. 12-1274, 2014 WL 6698299, at *3 (E.D. La. Nov. 26, 2014).

Plaintiffs' claims raise serious constitutional concerns of significant public interest. Obtaining the desired information through alternative means may be difficult. However, plaintiffs' written discovery requests in general address administrative, rather than judicial, decision-making. The specific relevance and proportionality of particular discovery requests are addressed below in the ruling on plaintiffs' separately pending motion to compel discovery responses. Having weighed the competing concerns in the balance, I find that plaintiffs' need for discovery outweighs defendants' interest in a blanket prohibition of all discovery, including depositions, from these defendants.

For the foregoing reason, defendants have not carried their burden to show good cause for the requested blanket protective order, and their motion is DENIED. Of course, the court cannot foresee every deposition question that might be asked. Thus, if during a deposition a particular question strays into the arena of a particular judge's adjudicative deliberations, rather than administrative or executive matters, the privilege may be asserted in the manner contemplated in Fed. R. Civ. P. 30(c)(2).

12

(B)   PLAINTIFFS' MOTION TO COMPEL

In this motion, plaintiffs seek (a) answers to their Interrogatories Nos. 1, 4, 6, 7, 8, 9, 13 and 14 to the judges and Nos. 3, 4, 5, 6 and 15-20 to Kazik, and (b) additional written responses and document production as to their Requests for Production Nos. 2, 11 and 12 to the judges and Nos. 7 and 14 to Kazik.  On November 28, 2016, counsel for both sides met in person in my office in a conference that I supervised.  Record Doc. No. 212.  At that time, counsel comprehensively and in good faith engaged in discussions in an attempt to resolve their discovery dispute.  As they subsequently reported to the court, Record Doc. No. 213, agreement was reached that defendants would supplement certain of their discovery responses and that plaintiffs would accept, at least in the short run, narrower production in response to some of the broadest requests.

Much of the parties' discovery dispute discussed during the conference centered upon proportionality concerns. The parameters established by Rule 26 are that permissible discovery extends only to that which is non-privileged, relevant to claims and defenses in the case and within the applicable Rule's proportionality limits, regardless whether those limits arise from the indistinguishable standards of Fed. R. Civ. P. 26(b)(1) and (b)(2)(C) as they existed at the time this case was filed or in those same amended Rules, which became effective less than three months after filing and as presently configured. Proportionality analysis includes consideration of various factors, including the importance of the issues at stake, the amount in controversy, the parties' relative

access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Evaluating this discovery against these standards leads to the mixed conclusion that some of plaintiffs' requests are excessive and beyond what is necessary and beneficial to resolution of this case. As to the specific proportionality factors, the issues at stake are important matters of civil rights and public interest. Oddly, although plaintiffs themselves are allegedly impoverished, the legal resources they bring to bear, including 12 counsel of record, appear superior to those of defendants, at least in terms of sheer numbers. The discovery appears important to resolution of the issues at stake for the most part, although not in its entirety. However, the burden and expense appear substantial, in light of the vast scope of the discovery requests, and outweigh the discovery's likely benefit to the case of requiring the full range of responses plaintiffs seek. The only remaining claims are for declaratory relief, so the amount in controversy is negligible.

During and after the November 28th conference, plaintiffs addressed some of defendants' proportionality objections by agreeing that they would accept as an adequate document production in response to some of their requests a streamlined sample of the vast universe of materials originally requested, while continuing to seek the full relief

originally requested in their motion.  In light of these discussions, plaintiffs' motion is determined as follows.

The motion is dismissed without prejudice insofar as it seeks (1) sworn verification of interrogatory answers, which the parties have agreed will be provided in the form of the verification of a single judge acting with authority for all; and (2) answers to Interrogatories Nos. 1, 4, 9 and 14 to the judges and Nos. 3 and 15 through 20 to Kazik, which defendants have agreed to supplement. If plaintiffs contend that the answers remain deficient after supplementation, their right to file a new motion addressing any such alleged deficiencies is preserved, but only _after_ the current discovery stay is lifted.

The motion is granted as to Interrogatories Nos. 6 through 8 to the judges and Nos. 4 through 6 to Kazik.  The objections are overruled for the reasons set out above denying defendants' motion for a protective order.  Even if the asserted privilege applied in this case seeking declaratory relief and principally concerning administrative, rather than adjudicative, functions of the judges, none of the purely factual information requested in these interrogatories, relating to highly relevant facts, could be expected to reveal any such adjudicative deliberations.

The motion is denied as to Interrogatory No. 13 to the judges.  The current answer is sufficient, as long as the answer and the referenced exhibits are truthful and accurate. Of course, defendants are under a continuing obligation to supplement this response "in

a timely manner if [they] learn that in some material respect [it] is incomplete or incorrect," Fed. R. Civ. P. 26(e)(1)(A), an obligation I am confident the judges will take seriously in providing the promised sworn verification of their interrogatory answers.

The motion is denied as to Request for Production No. 2 to the judges. The response is sufficient and appropriately limited to what is relevant and proportional in response to this overly broad request, i.e., the operations of the court's collections department. The response clearly states that defendants have no such documents.

In light of the supplementation agreement reached by the parties at the November 28th conference, the motion is dismissed without prejudice insofar as it seeks production of the overly broad and proportionally inappropriate panoply of materials requested in Requests for Production Nos. 12 to the judges (court budget and income materials) and 14 to Kazik ("all accounting documents detailing the revenues and expenditures of the Judicial Administrator and the Collections Department"). The materials defendants have agreed to produce through supplementation of their prior responses listed in the last three bullet points set out in Record Doc. No. 213 at p. 1 should be sufficient to provide plaintiffs with proportionally appropriate, relevant materials responsive to these requests. If, after receiving and reviewing these materials, plaintiffs contend that this production remains insufficient, their right to file a new motion seeking particularly identified additional responsive materials is preserved, but only after the current discovery stay is lifted.

The motion is granted in part and denied in part as to Request No. 11 to the judges ("all warrants for failure to pay fines and/or fees . . . in the past five years") and Request No. 7 to Kazik ("all communications . . . that reference fines and/or fees collection practices, policies, or individual collections cases").  The judges initially responded in part to Request No. 11 that "[w]e do not possess those copies."  Record Doc. No. 192-9 at p. 7.  In addition, the burden imposed on defendants in responding to this vast request and its lack of proportionality are apparent on the face of the request.  As a result of the November 28th conference, the court has been advised that "Plaintiffs have a better understanding now about what the Defendants will have to do to comply, and Plaintiffs are, accordingly, willing to work with a representative subsample of certain materials that exist only in paper form, while reserving the right to seek additional information in the future." Record Doc. No. 213 at p. 2.  Unfortunately, the parties could not agree on what might constitute an appropriate sub-sample.  Accordingly, this part of the motion is denied in part insofar as it seeks production of all materials that might be responsive to these requests, but is granted in part as follows:

IT IS ORDERED that, after the discovery stay is lifted, for each section of court, plaintiffs must select the names of no more than ten (10) persons from 2015 and five (5) persons from each of 2013 and 2014, who were either arrested on capias warrants issued by the court's collections department or who have outstanding fines and fees, and submit the names to defense counsel.  Within 30 days of receipt of those names, defendants must

17

make available to plaintiffs for inspection and related Rule 34 activities the court case records of the identified persons, consisting of the docket master, the paper record maintained by the clerk of court and the computer and paper files maintained by the court's collections department, all of which are "[t]he records of the criminal court," according to defendants' opposition memorandum.  Record Doc. No. 200 at pp. 1-2. This production from the computer and paper files of the collections department concerning the individuals identified by plaintiffs as part of this sub-sample must include any communications with the identified individuals and any policies or practices of the collections department or the court concerning collection of fees or fines owed by those persons.

Finally, the letter submitted by plaintiffs' counsel following the November 28th conference states that "Plaintiffs continue to seek full relief as follows:  A complete read-only copy of the Collections Department's electronic database, known as 'GCR.'" Record Doc. No. 213 at p. 2.  None of the requests for production placed at issue in this motion expressly seek unfettered inspection of this database.  No good explanation has been provided of exactly what kind of information is maintained on that database, what kind of burden might be placed on defendants in permitting its inspection, or why the benefits of unfettered access to these materials might outweigh any burden.  It seems likely that the database should include some information responsive to some requests, while also including information that is irrelevant to the claims and defenses in the case.

The court has insufficient evidence at this time, either from plaintiffs or defendants, to determine whether the broad-ranging access to this database plaintiffs apparently seek is justified either on relevance or proportionality grounds.  Accordingly, that request is denied at this time.  If, <u>after</u> plaintiffs receive and review the materials provided herein and the discovery stay is lifted, plaintiffs determine that they have some continuing need for a complete read-only copy of GCR, they may submit such a Rule 34 request to defendants, who must respond in the manner contemplated by Fed. R. Civ. P. 34(b)(2).

New Orleans, Louisiana, this ___8th___ day of December, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
**HON. SARAH S. VANCE**