## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALANA CAIN, ET AL.**    )  | **CIVIL ACTION NO. 15-4479** |
| )  | **(CLASS ACTION)** |
| **v.**    )  | |
| )  | **JUDGE VANCE** |
| **THE CITY OF NEW ORLEANS, ET AL.**    ) | |
| )  | **MAGISTRATE WILKINSON** |

**Defendants' Joint Response to Plaintiffs' Partial Summary Judgment Motion**

May It Please The Court:

### INTRODUCTION

This Joint Response Memorandum does not repeat the factual and legal arguments Defendants previously made in their summary judgment motion. Rec. Doc. 250. Plaintiffs write at length about their Claim Seven, to which the Sheriff specifically responds, *infra*.

The bulk of plaintiffs' motion deals with collection practices which are no longer in force and, as shown by Rec. doc. 250, are moot.  Nothing further on that subject need be said.

Plaintiffs failed to meet their burden of proof; they did not prove that the statutes at issue are unconstitutional. The remaining aspects of plaintiffs' motion all concern the same concepts – separation of powers and judicial discretion, neither of which are mentioned in plaintiffs' moving papers. Plaintiffs ignore or do not understand the true nature of the issues they raise. Plaintiffs do not like the fact that the judges have statutory discretion to assess and collect and operate and administer the court. At its core, these issues relate to the legislative power to determine the crimes and the range of punishments, along with the differences between judicial and legislative power, i.e., separation of powers. In short, a person complaining about these issues should go to Baton Rouge and not to federal court.

{00650723 - v1}                                        1

## PLAINTIFFS FAILED TO MEET BURDEN OF PROOF

Plaintiffs had the burden of proving unconstitutional the Judicial Expense Fund statute allowing for court funding operations and administration and the commercial surety tax, a source of court funding, but failed to do so.[1] All they proved was that after sentencing and arrest these plaintiffs went to federal court and said they were unable to pay. They neglected to say that each plaintiff have the right to file a motion, appeal, or just appear in court and explain why they could not pay, nor do they offer a reason why they chose not to seek such relief in the state court. If they wanted to be heard on the issue of lowering or negating a court debt or serving community service in lieu of a court debt they would be heard.

Due process requires notice and the opportunity to be heard; it does not require that their hands be held by the judge every step in the process. They received due process but simply failed to avail themselves of its benefits. Their declarations that the judges ignored them or would not listen to them have been shown to be false, as were their declarations that they were unable to pay—all to a person testified in their state court proceeding that they had a job or other source of income and would pay.

There is no equal protection violation, as the laws at issue do not make wealth-based distinctions.[2] If plaintiffs could not pay, they should have spoken up at sentencing or thereafter; the burden rests with them if they are unable to comply with their sentence.[3]

---

[1] *State v. Hatton*, 2007-2377, p. 13 (La. 7/1/08, 985 So. 2d 709, 719; Statutes are presumed constitutional, and the party challenging its validity bears the burden of proving it unconstitutional. To meet this burden, the party must clearly establish it. *State v. Muschkat*, 96-2922, p. 4 (La. 3/4/98), 706 So. 2d 429, 432.

[2] Gregory v. Ashcroft, 501 U.S. 452 ( )

[3] Each plaintiff pled guilty to a reduced charge following a negotiation process they and their attorney engaged in with the District Attorney.  Each plaintiff relinquished their constitutional rights and satisfied the judge that they made the decision to plead guilty of their own free will.  Each plaintiff knew or should have known of their potential sentence obligations before they agreed to the deal, and if not, they certainly knew it at the time they were formally sentenced and the fines/fees were assessed  because there is a written record of it as well as a document signed by each of them.  No one made plaintiffs agree to the plea bargain; they could have backed out, not agreed, or appealed within the allotted 30 days but failed to do so.  In Louisiana, plea bargains are treated as contracts, with allowances for constitutional rights. All parties to a contract are presumed to act in good faith at the time the agreement is confected, meaning they believe and warrant that they can do what they have agreed to do.  When a person entering into a contract lacks the financial

## SEPARATION OF POWERS AND JUDICIAL DISCRETION

The Louisiana Constitution divides the powers of government into three separate branches: legislative, executive, and judicial.[4] The Constitution further provides that no branch may exercise power belonging to another.[5] The legislative power of the state rests exclusively in the legislature.[6] Thus, it is axiomatic that the Legislature is vested with the sole law-making power of the state.[7]

The legislative branch of government is free to decide what constitutes a crime as well as "what punishment shall be meted out by a court after the judicial ascertainment of guilt."[8] The fixing of penalties is purely a legislative function, but a trial judge has the discretion to determine the appropriate sentence within the sentencing range fixed by the legislature.[9] One of the traditional, inherent, and exclusive powers of the judiciary is the power to sentence.[10] After a defendant is convicted of a crime, the determination of his sentence is within the sound discretion of the trial judge.[11] The fixing of penalties is purely a legislative function, but the trial judge has the discretion to determine the appropriate sentence within the sentencing range fixed by the legislature.[12]

Plaintiffs claim that the Judicial Defendants are unconstitutionally biased because they assess costs, collect costs, and use them in accordance with state law to operate and administer to the court's needs by paying or supplementing salaries to necessary employees. The judicial expense fund statute grants discretion to the judges to do just that—operate and administer. They likewise complain that the judges are implementing and enforcing those statutes to garner maximum money

---

means to meet his contractual undertaking yet nonetheless enters the deal without disclosing his true financial situation, the law has a term for it--fraud. *State v. Louis*, 94-0761 (La. 11/30/94), 645 So. 2d 1144, 1148-49; LSA CC art 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention to gain an unjust advantage….Fraud may also result from silence or inaction."

[4] La. Const. art II, §1; *World Trade Ctr. Taxing Dist. V. All Taxpayers, Prop. Owners*, 05-374 (La. 908 So. 2d 623, 632)
[5] La. Const. art. II, §2; this division creates in the judicial branch powers with which the legislative and executive branches shall not interfere. *Singer Hutner Levine Seeman & Stuart v. La. State Bar Ass'n*, 378 So. 2d 423 (La. 1979)
[6] La. Const. art II, §1; *World Trade Ctr. Taxing Dist. V. All Taxpayers, Prop. Owners*, 05-374 (La. 908 So. 2d 623, 632)
[7] Id
[8] *State v. Hamdalla*, 12-1413, p. 15 (La. App. 4th Cir. 10/2/13); 126, So. 3d 619, 626
[9] *State v. LeCompte*, 406 So. 2d 1300, 1311 (La. 1981)
[10] *State v. Jackson*, 298 So. 2d 777, 780 (La. 1974)
[11] *State v. Normand*, 285 So. 2d 210, 211 (La. 1973)
[12] *State v. Dorthey*, 623 So. 2d 1276, 1280 (La. 1993)

for their use in court administration and operation. The legislature gave the discretion to fine or not, and to assess costs or not, to the judges charged with the responsibility of sentencing the guilty. Any defendant—especially those represented by counsel—can and do ask for a certain fine or cost or for none at all. They are free to ask for community service. If, after sentencing, paying court debts becomes a problem, a criminal defendant can file a motion or take an appeal. All they have to do is come forward in open court and tell the judge the problem but none of these plaintiffs did that. What they did was not say they were unable to pay, not pay (excluding Cain),[13] not come forward and as a result they gave the court every reason to conclude their failure to pay was willful.

It is true that the judges do not convert court debts into a civil judgment; that is their prerogative.[14] Because the legislature has enacted statutes which provide the judges with discretion to be exercised as they deem appropriate under the facts and circumstances, they will do so unless the law is declared unconstitutional or it is repealed. The majority of the statutes which grant judicial discretion and draw plaintiffs' ire are not even before this Court on constitutional grounds.

When Louisiana was drafting its Constitution it was well aware of *Bearden v. Georgia* and what it meant. The system ultimately crafted allows (1) for the state and the responsible local entities to provide certain required resources to the district court and (2) that part of the penalty for crimes would include fines and costs which could be assessed in certain amounts with a maximum provided by the legislature. Rather than have every court send in all of its fines and costs for dividing up in Baton Rouge, the legislature instructed each court to keep the money it collected and to use it for court administration and operations. There is no question that this is precisely what the Judicial Defendants have done; employing secretaries, clerks, and others, and having paper, copy machines and pest control are all ordinary expenses attributable to court operation and administration.

---

[13] Cain made a payment plan but later on 'forgot' to pay and 'forgot' to advise the court.

[14] The Judges believe that it they did, the criminal defendant would end up paying more in the end as judicial interest and new civil court costs would be incurred and due. As it is, they pay no late charges or interest.

We know as a matter of constitutional law that if the judges spent or used the money on themselves for something personal (not court-related) there would be a constitutional problem due to potential bias but that never occurred here. Plaintiffs complain about the salaries paid to court workers; it is not a justiciable issue. The Judicial Defendants submit that the method of funding is constitutional and that any complaint these plaintiffs and their attorneys have about the discretion the legislature has granted should be taken up with the legislature and not this Court.

Political questions are not justiciable and whether an issue presents a political question cannot be determined with a precise formula.[15] The test is whether one or more of these factors apply, if so, the case must be dismissed as it is non-justiciable under Article III "case or controversy" requirement:[16]

- A textually demonstrable constitutional commitment of the issue to a coordinate political department;

- A lack of judicially discoverable and manageable standards for resolving it;

- The impossibility of deciding without an initial policy determination of a kind clearly for non-judicial discretion;

- The impossibility of a court's undertaking the independent resolution without expressing lack of the respect due coordinate branches of government;

- An unusual need for unquestioning adherence to a political decision already made;

- The potential of embarrassment from multifarious pronouncements by various departments on one question.

As shown, defining crimes and punishments for them is a legislative function as is the decisions to be made on how state government is funded. Courts are not equipped to redefine

---

[15] *Saldano v. O'Connell*, 322 F. 3d 365, 368 (5th Cir. 2003).
[16] *Baker v. Carr*, 369 U.S. 186, 210- 217 (1962).

criminal punishments; rather, their task is to define the constitutional limits of due process, equal protection, and cruel and unusual punishment. The task of the legislature in part is to divide up limited resources by identifying the needs of the state. To do that, they have hearings and listen to constituents. This Court is not charged with that responsibility and could not assume it without encroaching on the legislative prerogative. By insinuating itself in this process, this Court would be expressing its lack of respect for coordinate branches of government.

### SHERIFF'S SPECIFIC RESPONSE

The Plaintiffs in this matter were detained pursuant to fugitive bench warrants and already had counsel appointed and bail set at the time of their arrests.    No Plaintiff had a right, nor a need, to be brought before a magistrate commissioner, as a commissioner had no authority to modify the bail amounts set by a Criminal District Court judge, and the commissioner could not appoint counsel on a case in which counsel had already been appointed.  The Sheriff notes that the Plaintiffs misstated this Court's February 3, 2017 Order as "not[ing] the Sheriff's systematic incompetence," when the Court actually noted the Plaintiffs' allegations of systematic incompetence, but intentional misrepresentation has been par for the course when dealing with the Plaintiffs' counsel.

The Hon. Jay Zainey presided over the matter of *Gallegos, Jr. v. Strain*, et al., 2008 WL 218503 (E.D. La. 2008), in which the Plaintiff alleged he was not afforded a 72-hour hearing pursuant to 230.1.  In that matter, the Plaintiff had been released following a conviction and had been ordered to attend court on a particular date for sentencing. After arrest under that bench warrant, he was not brought before a magistrate judge. The Court's decision adopted Judge Shushan's report and recommendation, which stated:

> Although this Court has located no cases addressing the instant factual scenario under article 230.1, there is a strikingly similar case which arose under the analogous Fed.R.Crim.P. 5(a): MacNeil v.. Gray, 158 F.Supp. 16 (D.Mass.1957).  In that case, the plaintiff had likewise been convicted and released pending appeal. When his conviction was affirmed, he was ordered to comply with the sentence but he failed to do so. An arrest warrant was then issued, and he was in fact arrested based on that

warrant. He then complained that his rights were violated because he was not afforded a Rule 5(a) hearing. The court rejected that claim, holding:

The contention that [the marshal] should have taken [the plaintiff] before the United States Commissioner in Boston is frivolous. When a person had been adjudicated a criminal and his attendance is required for further proceedings, he may be arrested pursuant to a bench warrant. There is no occasion to bring him before a commissioner, and there is nothing for a commissioner to hear or decide. Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C., governing arrest on a complaint and before trial, is patently inapplicable.

Id. at 18; cf. United States v. Harrison, 461 F.2d 1127 (5th Cir.1972) (Fed.R.Civ.P.5(a) found to be inapplicable to persons arrested under a parole violator warrant "because a parole violator is not technically 'arrested' as Rule 5(a) contemplates"; rather, the parole violator "is merely placed in actual custody rather than allowed constructive custody under a parole status.").

Based on this persuasive authority, the undersigned concludes that article 230.1 is simply inapplicable in the instant situation where plaintiff was arrested pursuant to a bench warrant when he failed to appear for sentencing. Accordingly, plaintiff's claim should be dismissed as frivolous.

This decision should be most persuasive, as the Plaintiffs, like *Gallegos*, were given orders to appear in Court and failed to comply with those orders.  As was the situation in *Gallegos*, there was absolutely nothing for a magistrate commissioner to hear or decide in any of the Plaintiffs' cases. Each Plaintiff already had counsel, each plaintiff already had bail set via the bench warrant, and the magistrate had no power to take any action in any of their cases, all of which had been allotted to Criminal District Court judges.

The Plaintiffs cite *Wageanfeald v. Gusman*, 675 F.3d 475, 480 (5th Cir. 2012), for no purpose other than to show the tort of false imprisonment.  The Plaintiffs failed to note that unlike the instant Plaintiffs, the *Wageanfeald* plaintiffs were new arrestees who had neither attorneys nor bail, and that *Wagenfeald* was ultimately dismissed in its entirety with a finding of no liability.  This Court should apply the same findings set forth in *Gallagos* and deny the Plaintiffs' Motion for Summary Judgment on Count Seven.  The Sheriff notes that this Honorable Court's May 18, 2017 Order (R. Doc. 246) did not Order summary judgments to be filed on Count Seven and the Sheriff reserves his

right to file a summary judgment on this count on or before the date and time set by this Court, should this Court allow it.

CONCLUSION

The material facts necessary for this Court to rule on the cross-motions currently before it are not in dispute; further discovery will do nothing to clarify those facts or bring them into focus any more clearly than they already are.  Plaintiffs' motion for summary judgment should be denied and Defendants' cross-motion granted.

Respectfully submitted,

/s/ Celeste Brustowicz

**Burglass and Tankersley, LLC**
Dennis J. Phayer (#10408) (T.A.)
dphayer@burglass.com
Celeste Brustowicz (#16835) (T.A.)
cbrustowicz@burglass.com
Christopher K. Tankersley (#19176)
ctankersley@burglass.com
Elizabeth A. Doubleday (#34916)
edoubleday@burglass.com
5213 Airline Drive
Metairie, LA 70001
Tel: (504) 836-0428
Fax: (504) 287-0468
*Attorneys for:* Judicial Administrator Robert Kazik, Honorable Judge Laurie A. White, Honorable Judge Tracey Flemings-Davillier, Honorable Judge Benedict Willard, Honorable Judge Keva Landrum-Johnson, Honorable Judge Robin Pittman, Honorable Judge Byron C. Williams, Honorable Judge Camille Buras, Honorable Judge Karen K. Herman, Honorable Judge Darryl Derbigny, Honorable Judge Arthur Hunter, Honorable Judge Franz Zibilich, and Magistrate Judge Harry Cantrell

Respectfully submitted,
ORLEANS PARISH SHERIFF'S OFFICE


/s/ Blake J. Arcuri
_____
BLAKE J. ARCURI (32322)
FREEMAN R. MATTHEWS (9050)
2800 Perdido St.
New Orleans, LA 70119
Telephone: (504) 202-9404
Fax: (504) 202-9454
Email: arcurib@opso.us


CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of July, 2016, a copy of the foregoing pleading has been forwarded to all counsel of record via CM/ECF filing through the United States District Court system, email and/or United States Mail.


/s/ Celeste Brustowicz
_____