UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALANA CAIN, ET AL.                                    CIVIL ACTION

VERSUS                                                      NO. 15-4479

CITY OF NEW ORLEANS, ET AL.              SECTION "R" (2)


## ORDER AND REASONS

Before the Court are plaintiffs' motion for class certification[1] and defendants' motion for summary judgment on Count Six.[2]  For the following reasons, the Court grants both motions.


## I.    BACKGROUND

Plaintiffs Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, and Vanessa Maxwell filed this civil rights putative class action under 42 U.S.C. § 1983, challenging the manner in which the Orleans Parish Criminal District Court (OPCDC) collects post-judgment court debts from indigent criminal defendants.  These named plaintiffs are former criminal defendants in OPCDC.[3]   All named plaintiffs, except

---

[1]    R. Doc. 296.
[2]    R. Doc. 295.
[3]    *See* R. Doc. 248 at 4-5.

Reynaud Variste, were appointed counsel.[4]  The Court has held that Reynaud Variste, Reynajia Variste, Long, and Maxwell no longer have live claims for equitable relief.[5]

The remaining defendants are OPCDC Judges Laurie A. White, Tracey Flemings-Davillier, Benedict Willard, Keva Landrum-Johnson, Robin Pittman, Byron C. Williams, Camille Buras, Karen K. Herman, Darryl Derbigny, Arthur Hunter, Franz Zibilich, and Magistrate Judge Harry Cantrell (collectively, the Judges), and OPCDC Judicial Administrator Robert Kazik.

### A.    Factual Background

The named plaintiffs are among the thousands of individuals who are prosecuted and sentenced in OPCDC each year.[6]  The Judges impose various costs—collectively known as fines and fees or court debts—on convicted criminal defendants at their sentencing.  First, the Judges may impose a fine, the proceeds of which are divided evenly between OPCDC and the District Attorney (DA).  La. R.S. § 15:571.11(D).  Second, the Judges may order a criminal defendant to pay restitution to victims.  La. Code Crim. Proc. art.

---

[4]     R. Doc. 59-3 at 2, 6, 9, 18, 23; R. Doc. 95-7 at 1.
[5]     *See* R. Doc. 109 at 19-21; R. Doc. 279 at 43.
[6]     *See* R. Doc. 248 at 5-6.  The Court recites only those facts necessary to resolve the instant motions.  For a more extensive discussion of the facts, see the Court's December 13, 2017 order, R. Doc. 279.

883.2.  Third, the Judges impose various fees and court costs that go to OPCDC and other entities, such as the Orleans Public Defender, the DA, and the Louisiana Supreme Court.  *See* La. R.S. § 13:1377; *id.* § 13:1381.1; *id.* § 13:1381.4; La. Code Crim. Proc. art. 887(A).  After sentencing, OPCDC may further assess criminal defendants for the costs of drug treatment and drug testing.  La. R.S. § 13:5304.

As a result of their criminal convictions, the named plaintiffs were assessed fines and fees ranging from $148 (imposed on Long) to $901.50 (imposed on Cain).[7]  Cain was also ordered to pay $1,800 in restitution.[8]

All named plaintiffs were subject to OPCDC's debt collection practices. At least until September 18, 2015, the Judges delegated authority to collect court debts to the Collections Department, which the Judges and Administrator Kazik jointly instructed and supervised.[9]  The Collections Department created payment plans for criminal defendants, accepted payments, and granted extensions.[10]  Some Judges also delegated authority to the now-defunct Collections Department to issue alias capias warrants against criminal defendants who failed to pay court debts.[11]  Each named

---

[7]   R. Doc. 248 at 4-5.
[8]   R. Doc. 59-3 at 2.
[9]   R. Doc. 248 at 7.
[10]   *Id.*
[11]   *Id.*

plaintiff was arrested on such a warrant, and imprisoned for periods ranging from six days to two weeks.[12]

Alana Cain was arrested pursuant to an alias capias warrant on March 11, 2015.[13]  Apparently unable either to make a payment or to post the $20,000 bond, she spent a week in jail before she obtained a court hearing on March 18.[14]  At that hearing, the judge asked Cain when she would be able to continue making payments.[15]  Cain explained that she had missed a payment after giving birth a few weeks earlier, but could continue making payments upon her release.[16]  The judge ordered her release and directed her to return to court for a status update two weeks later.[17]  OPCDC suspended Cain's court debts on April 7, 2016,[18] although Cain made further payments toward her court debts after that date.[19]

Ashton Brown spent two weeks in jail before his family secured his release by making a $100 payment to OPCDC.[20]  An alias capias warrant was

---

[12]    *Id.* at 4; R. Doc. 251-2 at 23; R. Doc. 255-5 at 25.

[13]    R. Doc. 251-5 at 369; *see also* R. Doc. 59-3 at 2 (warrant issued on March 4, 2015).

[14]    R. Doc. 251-2 at 23; R. Doc. 255-5 at 25.

[15]    R. Doc. 95-3 at 30.

[16]    *Id.* at 28-31.

[17]    *Id.* at 32.

[18]    R. Doc. 250-3 at 22

[19]    *See* R. Doc. 230-3 at 1-2 (payment receipts dated August 26, 2016, and October 12, 2016).

[20]    R. Doc. 251-2 at 23; R. Doc. 255-5 at 25.

issued on July 16, 2015, and Brown was arrested on July 23.[21]   Brown appeared in court without counsel on August 6; the court agreed to release Brown upon payment of $100 to OPCDC.[22]   Brown's family made this payment the next day, and Brown was released.[23]   OPCDC suspended Brown's court debts on September 23, 2016,[24] although Brown, like Cain, made further payments after that date.[25]

Reynajia Variste was arrested pursuant to an alias capias warrant on May 28, 2015.[26] On June 2, one of her family members paid $400 to OPCDC in order to secure her release.[27]   Although Variste did not appear before a judge on that date, her attorney did.[28] OPCDC waived Variste's outstanding debt on August 31, 2016.[29]

Vanessa Maxwell was arrested on May 10, 2015, on an alias capias warrant.[30]   On May 12, she filed a grievance with the Orleans Parish Sheriff's Office seeking a new date to make a payment.[31]   The office responded that

---

[21]   R. Doc. 59-3 at 6.
[22]   *Id.*
[23]   *Id.*
[24]   R. Doc. 250-3 at 23.
[25]   R. Doc. 230-3 at 3 (payment receipt dated February 10, 2017).
[26]   R. Doc. 95-6 at 1.
[27]   *Id.* at 1-2, 22.
[28]   *Id.* at 1.
[29]   R. Doc. 250-3 at 25.
[30]   R. Doc. 95-8 at 2; R. Doc. 251-5 at 370.
[31]   R. Doc. 251-5 at 362.

she did not yet have a court date, and that to secure her release she just needed to "get someone to go to fines and fees to make arrangements."[32] Maxwell filed another grievance two days later, asking the Sheriff's Office to place her on the court's docket; the office again directed Maxwell to "get a family [member] to go over and make arrangements with fines n fees [sic]. Explain you have been incarcerated[;] they will make some type of arrangements for payments."[33]  Maxwell finally appeared before a judge, with counsel, on May 22, 2015.[34]  The judge ordered her release without payment.[35]  Maxwell paid off her court debt on June 2, 2016.[36]

After this suit was filed, the Judges revoked the Collections Department's authority to issue warrants.[37]  The Judges also recalled all active fines and fees warrants issued by the Collections Department before September 18, 2015, unless restitution remained unpaid or the individual had failed to appear in court.[38]  In doing so, the Judges wrote off $1,000,000

---

[32]    *Id.*
[33]    *Id.*
[34]    R. Doc. 95-8 at 2.
[35]    *Id.*
[36]    R. Doc. 250-3 at 24.
[37]    R. Doc. 250-2 at 13, 76; R. Doc. 250-3 at 3.
[38]    R. Doc. 250-3 at 4.

in court debts.[39]  Each Judge now "handles collection-related matters on their respective dockets."[40]

Nevertheless, at least some active warrants for failure to pay restitution still exist.[41]  And the Judges themselves now issue alias capias warrants for failure to pay fines and fees.[42]  There is no evidence that the Judges generally consider ability to pay before imprisoning indigent criminal defendants for failure to pay fines and fees.  Indeed, the Judges do not routinely solicit financial information from criminal defendants who fail to pay court debts,[43] though they state that they do consider ability to pay when the issue is brought to their attention.[44]

In addition to their judicial duties, the Judges manage the budget of OPCDC.[45]  From 2012 through 2015, the court's revenue ranged from $7,567,857 (in 2012) to $11,232,470 (in 2013).[46]  Some of this revenue could be used only for specified purposes and went into a restricted fund; unrestricted revenue went into OPCDC's Judicial Expense Fund, which is the

---

[39]   *Id.*
[40]   *Id.* at 5.
[41]   *Id.*
[42]   *See, e.g., id.* at 16, 21.
[43]   R. Doc. 251-2 at 17.
[44]   R. Doc. 250-2 at 12; R. Doc. 259-1 at 8.
[45]   R. Doc. 251-2 at 3; R. Doc. 255-5 at 5.
[46]   R. Doc. 248 at 2.

court's general operating fund.[47]   The Judges exclusively control this fund and may use it "for any purpose connected with, incidental to, or related to the proper administration or function of the court or the office of the judges thereof."  La. R.S. § 13:1381.4(C).  They may not use it to supplement their own salaries.  *Id.* § 13:1381.4(D).  Most money for salaries and benefits of OPCDC employees (apart from the Judges) comes from the Judicial Expense Fund.[48]

From 2012 through 2015, the Judicial Expense Fund's annual revenue was approximately $4,000,000.[49]   Roughly half of this revenue came from other governmental entities, especially the City of New Orleans.[50]   About $1,000,000 came from bail bond fees, and another $1,000,000 from fines and other fees.[51]   Since at least 2013, all fines and fees revenue has gone to the Judicial Expense Fund.[52]

---

[47]     *Id.*; R. Doc. 251-2 at 2-3.  The Judicial Expense Fund is also known as the General Fund.  R. Doc. 248 at 2.

[48]     R. Doc. 251-2 at 5; R. Doc. 255-5 at 9.

[49]     R. Doc. 248-1 at 1-4.  Specifically, the Judicial Expense Fund had $4,090,707 in revenue in 2012; $4,100,413 in 2013; $3,928,025 in 2014; and $3,940,535 in 2015.

[50]     R. Doc. 248 at 1-3.

[51]     *Id.* at 2.

[52]     R. Doc. 251-2 at 12.

### B.   Procedural History

Plaintiffs filed this civil rights action under 42 U.S.C. § 1983, on behalf of themselves and all others similarly situated.   There are two remaining claims in plaintiffs' operative second amended complaint.   Count Five challenges the Judges' practice of failing to inquire into ability to pay before criminal defendants are imprisoned for nonpayment of court debts.[53]   Count Five also challenges the Judges' failure to provide a neutral tribunal to adjudicate ability to pay.[54]   Count Six, an equal protection claim, asserts that the Judges' policy of jailing and threatening to imprison criminal defendants for nonpayment of court debts imposes unduly harsh and punitive restrictions on debtors whose creditor is the State, as compared to debtors who owe money to private creditors.[55]

On December 13, 2017, the Court granted plaintiffs' motion for summary judgment on Count Five.[56]   The Court also denied both plaintiffs' and defendants' motion for summary judgment on Count Six.[57]   Plaintiffs now move for class certification on Counts Five and Six.[58]   Plaintiffs'

---

[53]   R. Doc. 161-4 at 59.

[54]   *Id.* at 59-60.

[55]   *Id.* at 60.

[56]   R. Doc. 279.

[57]   *Id.*

[58]   R. Doc. 296.  Plaintiffs first moved for class certification on February 10, 2017, *see* R. Doc. 230, but the Court stayed all motion practice—and thus

proposed class includes "[a]ll persons who currently owe or who will incur court debts arising from cases adjudicated in the Orleans Parish Criminal District Court."[59]   Additionally, defendants again move for summary judgment on Count Six.[60]  The Court heard oral argument on these motions on June 20, 2018.

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   Legal Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the

---

denied plaintiffs' class certification motion without prejudice—pending further order, *see* R. Doc. 237.

[59]   R. Doc. 296-1 at 9.

[60]   R. Doc. 295.

nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. A dispute about a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal quotation marks and citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with

respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## B.   Discussion

Count Six is an equal protection challenge against defendants' debt collection practices. Specifically, plaintiffs challenge defendants' use of arrest warrants to enforce collection of court debts. Plaintiffs argue that this enforcement mechanism constitutes invidious discrimination against criminal defendants as compared to civil judgment debtors.[61]

The Fourteenth Amendment to the U.S. Constitution provides that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This command "is essentially a direction

---

[61]   R. Doc. 305 at 2-3.

that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (noting that the Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant respects alike" (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992))).   It is well-established that the Equal Protection Clause is implicated "only 'if the challenged government action classifies or distinguishes between two or more relevant groups.'" *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996) (quoting *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993)); *see also Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 139 (5th Cir. 2009).  "State actors may create classifications facially, when such categorization appears in the language of legislation or regulation, or *de facto*, through the enforcement of a facially neutral law in a manner so as to disparately impact a discernible group." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citation omitted).  Courts apply different levels of scrutiny depending on the type of classification.  *City of Cleburne*, 473 U.S. at 439-40.

The Supreme Court addressed the type of classification asserted by plaintiffs—between criminal judgment debtors and civil judgment debtors—in *James v. Strange*, 407 U.S. 128 (1972).  The Kansas recoupment statute at

issue in that case allowed the state to "recover in subsequent civil proceedings counsel and other legal defense fees expended for the benefit of indigent defendants." *Id.* at 128. The statute excluded these indigent defendants from "the array of protective exemptions Kansas has erected for other civil judgment debtors," such as "the exemption of his wages from unrestricted garnishment." *Id.* at 135. The Court recognized that recoupment statutes serve legitimate state interests, and "that enforcement procedures with respect to judgments need not be identical." *Id.* at 138, 141. Nonetheless, the Court held, recoupment statutes "need not blight in such discriminatory fashion the hopes of indigents for self-sufficiency and self-respect." *Id.* at 141-42. The Court struck down Kansas's statute as "embod[ying] elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law." *Id.* at 142; *see also Robinson v. Purkey*, No. 17-1263, 2018 WL 2862772, at *45 (M.D. Tenn. June 11, 2018) (suggesting that Tennessee statute was unconstitutional because it permitted the state to suspend the licenses of those who owed traffic debts, a form of coercion not applicable to other judgment debtors).

Plaintiffs do not point to any state law that facially discriminates against criminal judgment debtors like the Kansas recoupment statute in *James*. Indeed, the Judges' practice of arrest warrants and imprisonment to

collect court-imposed debts does not appear to be authorized by any state law.  Plaintiffs instead focus their challenge on the Judges' *policy* of using arrest warrants to enforce collection of court debts.[62]  Plaintiffs rely solely on distinctions between (1) state and federal law protections for civil judgment debtors and (2) OPCDC's policy with respect to criminal defendants who owe court debts.[63]  On its face, the policy does not distinguish between civil judgment debtors and criminal judgment debtors because the policy operates only on the latter group.  After all, OPCDC has no jurisdiction over civil judgment debtors.  *See* La. R.S. § 13:1336 ("The criminal district court for the Parish of Orleans shall have exclusive jurisdiction of the trial and punishment of all crimes, misdemeanors, and offenses committed within the parish of Orleans if the jurisdiction is not vested by law in some other court.").  For the same reason, there is no evidence that the Judges' policy is applied in a discriminatory manner, or that it has a disparate impact on criminal judgment debtors compared to civil judgment debtors.  Plaintiffs merely argue that there must be an equal protection violation because they are *actually* treated differently from how civil judgment debtors, who are not

---

[62]     R. Doc. 305 at 1.

[63]     Notably, Count Six does not assert an equal protection claim based on indigence.  *Cf. Bearden v. Georgia*, 461 U.S. 660 (1983); *ODonnell v. Harris County*, 892 F.3d 147, 161-63 (5th Cir. 2018).

even subject to the Judges' policy, are *supposed to be* treated.  Plaintiffs fail to cite a single case on point, *i.e.*, a case in which the defendant has no authority over the favored class and does not act pursuant to state law, but nonetheless violates the Equal Protection Clause in its treatment of the disfavored class.

Differential treatment based on jurisdiction alone does not violate the Equal Protection Clause. *See Griffin v. Cty. Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218, 230 (1964) ("[S]howing that different persons are treated differently is not enough, without more, to show a denial of equal protection."); *Mills v. City of Roanoke*, 518 F. Supp. 2d 815, 823 (W.D. Va. 2007) ("As long as all individuals within the jurisdictional reach of a policy are equally affected by the policy, it does not matter that those in a different jurisdiction are not subjected to the same policy.").  In *Woodard v. Andrus*, 419 F.3d 348 (5th Cir. 2005), for example, the plaintiff sued a parish clerk of court who allegedly charged excessive or unauthorized fees.  *Id.* at 350.  The plaintiff asserted that "she and other Calcasieu Parish litigants [were] being treated differently from litigants in other Louisiana parishes."  *Id.* at 354.  The Fifth Circuit held that these facts did not support an equal protection claim because there was no showing that the defendant, who had no jurisdiction over residents of other parishes, was "selectively enforcing the

state statute based upon any impermissible ground," or that the defendant "distinguish[ed] between different groups." *Id.*

Here too, there is no showing that the Judges' policy distinguishes between criminal judgment debtors and civil judgment debtors. Like the defendant in *Woodard*, the Judges lack jurisdiction over the favored class. Thus, the state action challenged by plaintiffs—*i.e.*, the Judges' policy—does not distinguish between different groups. *See Woodard*, 419 F.3d at 354. That civil judgment debtors outside OPCDC's jurisdiction and criminal judgment debtors in OPCDC are treated differently, without more, does not show an equal protection violation. *See Griffin*, 377 U.S. at 230.

Nor is there any showing that the Judges are enforcing a policy in violation of state law with some discriminatory purpose. As noted earlier, a state actor may create a classification "through the enforcement of a facially neutral law in a manner so as to disparately impact a discernible group." *Johnson*, 110 F.3d at 306. But "disparate impact alone cannot suffice to state an Equal Protection violation"; a plaintiff must also show that the challenged state action was motivated by discriminatory purpose. *Id.* "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group."

*Id.* at 307 (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)). Plaintiffs point to no evidence of discriminatory purpose in this case. Thus, the disparate impact of the Judges' policy on criminal judgment debtors in OPCDC does not in itself show an equal protection violation.

Moreover, "an alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution." *Jones v. Lowndes County*, 678 F.3d 344, 352 (5th Cir. 2012) (quoting *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1349 (7th Cir. 1985)). Louisiana Code of Criminal Procedure article 24 regulates contempt proceedings in the criminal courts. Before holding an individual in contempt, a court must issue a rule to show cause; this rule must be served on the criminal defendant at least 48 hours before trial on the rule; and if the court finds the defendant guilty, it must issue "an order reciting the facts constituting the contempt." La. Code Crim. Proc. art. 24. Additionally, Louisiana law provides that failure to comply with an order to pay money "shall not be construed as a contempt" if the debtor is currently unable to pay, and was also unable to pay when the order was issued. La. R.S. § 13:4206.

The Judges' policy and practice of essentially holding criminal defendants in contempt for nonpayment of court debts fails to adhere to

18

these statutes.  To some extent, the procedural rights encompassed by Louisiana Code of Criminal Procedure article 24 may be guaranteed by the U.S. Constitution.  But those rights sound in due process, not equal protection, and the Court has addressed those rights in connection with Count Five.  The substantive right encompassed by Louisiana Revised Statutes section 13:4206 does relate to equal protection of indigents.  *See Bearden v. Georgia*, 461 U.S. 660 (1983).  But again, Count Six does not assert an equal protection claim based on indigence.

Count Six, as pleaded, asserts an equal protection claim based on differential treatment of criminal defendants in OPCDC versus civil judgment debtors in other courts.  The Judges' policy of arresting and imprisoning criminal defendants for nonpayment of court debts is not discriminatory on its face because it operates only on criminal defendants in OPCDC.  Additionally, there is no evidence that the Judges adopted the policy with any discriminatory purpose.  Thus, plaintiffs fail to raise a genuine dispute of material fact in support of their equal protection claim, and defendants are entitled summary judgment on Count Six.

## III.   CLASS CERTIFICATION

### A.   Legal Standard

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure.  "The class certification determination rests within the sound discretion of the trial court."  *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).  A court, however, should not grant class certification unless it is satisfied, after "rigorous analysis," that all Rule 23 prerequisites have been met.  *Id.* (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

To be certified, the class must first satisfy four threshold requirements. A court may certify a class only if:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The party moving for certification bears the burden of establishing these requirements.  *Unger*, 401 F.3d at 320 (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001)).

If the prerequisites of Rule 23(a) are met, the proposed class must additionally satisfy one of the three provisions for certification under Rule

23(b).  For certification of an injunctive or declaratory class under Rule 23(b)(2), plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

## B.    Discussion

Plaintiffs seek to certify the following class: "All persons who currently owe or who will incur court debts arising from cases adjudicated in the Orleans Parish Criminal District Court."[64]  Defendants' chief objection to class certification is that the proposed class definition is overbroad. Specifically, the class definition includes no time limits; does not distinguish between the different types of court debts—restitution, fines, fees, and other court debts; includes non-indigent individuals; and includes individuals who have received or will receive an ability-to-pay inquiry.[65]  Defendants also argue that monetary damages predominate over equitable relief.[66]

### 1.    Numerosity

Rule 23(a)(1) requires that the class be so large that "joinder of all members is impracticable."  To satisfy the numerosity requirement, "a

---

[64]    R. Doc. 296-1 at 9.
[65]    R. Doc. 299 at 4-7.
[66]    *Id.* at 7-9.

plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).  A "mere allegation that the class is too numerous to make joinder practicable" is insufficient.  *Id.* (quoting *Fleming v. Travenol Labs., Inc.*, 707 F.2d 829, 833 (5th Cir. 1983)).

Thousands of individuals are prosecuted in OPCDC each year.[67]  Most of these individuals plead guilty, and the Judges regularly impose fines and fees at sentencing.[68]  Thus, it is apparent—and defendants do not contest—that plaintiffs' proposed class comprises thousands of individuals.  Joinder at such a large scale is clearly impracticable.  *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (noting that "the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement").  Moreover, "that the class includes unknown, unnamed future members also weighs in favor of certification." *Pederson*, 213 F.3d at 868 n.11.  Plaintiffs have therefore satisfied the numerosity requirement.

---

[67]    R. Doc. 248 at 5-6.
[68]    *Id.* at 4.

## 2.    *Commonality*

The second requirement of Rule 23(a) is that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court explained that Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Id.* at 349-50 (quoting *Falcon*, 457 U.S. at 157)).  The class members' "claims must depend upon a common contention."  *Id.* at 350.  And this common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

The Court has now resolved all issues of fact and law pertaining to the named plaintiffs' claims: the Court has granted summary judgment to plaintiffs on Count Five, and the remaining counts are dismissed.   In granting summary judgment on Count Five, the Court held it undisputed that the Judges have a policy or practice of failing to conduct an ability-to-pay inquiry before plaintiffs are imprisoned for nonpayment of court debts.[69] The Court also held it undisputed that the Judges' institutional incentives

---

[69]    R. Doc. 279 at 48-52.

create a conflict of interest when they determine, or are supposed to determine, plaintiffs' ability to pay fines and fees.[70]

Regarding the first aspect of Count Five, all criminal defendants who owe court debts to OPCDC are at risk of suffering the same constitutional injury: imprisonment for failure to pay court debts without an ability-to-pay determination.[71]  *See Dukes*, 564 U.S. at 349-50.  Plaintiffs' claims "depend upon [the] common contention" that defendants' policy or practice is unconstitutional.  *Id.* at 350.  Furthermore, this contention is "of such a nature that it is capable of classwide resolution": the Court's resolution of this aspect of Count Five turned on the constitutionality of the policy or practice, not on the specific facts of the named plaintiffs' experiences.  *Id.*

Although defendants cite differences between class members, these differences have no bearing on the common questions of fact and law that the Court has already decided.  *See Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (noting that "[d]issimilarities among class members should be considered to determine whether a common question is truly presented," but that "[e]ven a single common question of law or fact can suffice to establish commonality, so long as resolution of that question 'will resolve an issue that

---

[70]     *Id.* at 76.

[71]     The Court discussed evidence of this ongoing risk of imprisonment in its earlier order.  *See id.* at 31-32.

24

is central to the validity of each one of the [class member's] claims in one stroke'" (quoting *Dukes*, 564 U.S. at 350)).  First, defendants assert that court debts owed by the putative class members vary by type and time of imposition.  But the challenged policy or practice relates to the Judges' collection, not imposition, of court debts.  The Judges' collection practices create the same risk of injury regardless of when a criminal defendant's court debts were imposed or what types of court debts the individual currently owes.[72]

Second, defendants point out that not all criminal defendants in OPCDC are indigent.  But a putative class member's right to an ability-to-pay inquiry does not depend on indigence; the procedural protections required by the Supreme Court in *Bearden* apply equally to indigent and non-indigent individuals.  461 U.S. at 672 ("We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay.").  Thus, every criminal defendant subject to the Judges' debt collection practices is entitled to an

---

[72]    Defendants also contend that fines have never been at issue in this case.  R. Doc. 299 at 6.  But the numerous references to fines in plaintiffs' complaint, the parties' joint stipulations, and the Court's December 13, 2017 order belie this contention.  *See* R. Docs. 161-4, 248, 279.

ability-to-pay hearing.  Indeed, the point of such a hearing is to determine indigence.

Third, defendants contend that some putative class members have received or will receive an ability-to-pay inquiry.  Any such inquiry would be tainted by the unconstitutional conflict of interest found by the Court in its earlier order, so long as the criminal defendant's court debts were at least partly owed to the Judicial Expense Fund.  Moreover, defendants' contention lacks evidentiary support in the record.  In response to an interrogatory, defendants admit that they have no written policies related to ability-to-pay determinations.[73]  Defendants state that they will generally consider the issue if a criminal defendant raises it.[74]  But this practice puts the onus on a criminal defendant to raise the issue.  *Bearden* requires more.  As the Court explained in its earlier order, *Bearden* commands that before a court imprisons an individual for failure to pay a court-imposed fine or fee, the court must inquire into her reasons for failure to pay.  461 U.S. at 672.  If the individual is unable to pay the court debts despite sufficient bona fide efforts

---

[73]    R. Doc. 251-5 at 297.

[74]    *Id.*  The Court also notes that when this case was filed, the Collections Department issued alias capias warrants for nonpayment of court debts.  R. Doc. 248 at 7.  This process did not even involve the Judges, let alone guarantee a constitutionally adequate ability-to-pay inquiry before imprisoning criminal defendants for failure to pay.  *See id.*

to do so, then the court must consider alternative measures. *Id.* Providing ad hoc ability-to-pay inquiries only if the issue is brought to a Judge's attention does not meet these constitutional requirements.[75] Thus, there is no evidence that any Judge conducts, or has conducted, constitutionally adequate *Bearden* hearings.

In any event, defendants' argument misses the mark. The Fifth Circuit has recognized that not all putative class members must suffer in the same way because of the defendants' conduct; it is enough to show that the same challenged conduct creates the same threat of injury. *See Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017); *see also In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (noting that common questions may "relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct"). In *Yates*, the district court certified an injunctive class of inmates challenging the conditions of their

---

[75]    Furthermore, based on the Court's review of the record in this case, the Judges' focus in dealing with criminal defendants who were imprisoned for nonpayment of court debts was to collect the debts, regardless of where the money came from or the criminal defendants' financial resources. *See* R. Doc. 95-3 at 27-35 (transcript of Alana Cain's hearing after she was imprisoned for nonpayment of court debts); *see also* R. Docs. 8-2, 8-3, 8-7 (plaintiffs' affidavits describing how the court compelled them to make payments without inquiring into their ability to pay); R. Doc. 251-5 at 284 (July 2014 City Council hearing in which a Judge explained that the Judges were sharing ideas "in an effort to increase [their] collection" of fines and fees).

confinement. The district court noted two common questions of law or fact: (1) "excessive heat constitutes a condition of confinement that poses a substantial *risk* of serious harm to the health of all inmates," and (2) prison "officials were deliberately indifferent to the *risk* posed to the inmates." *Id.* at 362 (emphasis added). The defendants argued that age and health differences among the inmates and the availability of various "heat-mitigation measures" made it impossible to answer the first question on a classwide basis. *Id.* at 362-63. While the district court acknowledged that "no two individuals have the exact same risk," it found that "heat-mitigation measures . . . were ineffective to reduce the risk of serious harm to a constitutionally permissible level for *any* inmate, including the healthy inmates." *Id.* at 363 (alterations omitted). The Fifth Circuit upheld the district court's findings and reasoning. *Id.* at 365.

Here, as in *Yates*, not all putative class members have suffered or will suffer the same injury. But if the only way to possibly get an ability-to-pay determination (albeit a constitutionally deficient one) is to ask for it, as the defendants' interrogatory response suggests, then all criminal defendants who owe court debts in OPCDC are at risk of imprisonment without due process. All putative class members face the same *threat* of injury because

of the Judges' unconstitutional policy or practice.  This is enough to establish commonality with respect to the first part of Count Five.

The second part of Count Five, challenging the Judges' conflict of interest, does not necessarily affect every member of the proposed class.  Of course, every putative class member is entitled to a neutral forum to determine ability to pay.  But a Judge would not be conflicted in determining the ability to pay of an individual who owes only restitution, for example, because restitution goes only to the victim.  *See* La. Code Crim. Proc. art. 883.2.  The Court therefore divides plaintiffs' proposed class into one subclass, comprising persons whose debts are at least partly owed to the OPCDC Judicial Expense Fund.  *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").  All such persons' claims depend upon the common contention that the Judges' conflict of interest violates due process, a contention that is clearly capable of classwide resolution.  Thus, plaintiffs have shown commonality with respect to the second part of Count Five.

### 3.    *Typicality*

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  The requirement depends "less on the relative strengths of the named and unnamed plaintiffs'

cases than on the similarity of legal and remedial theories behind their claims." *Ibe*, 836 F.3d at 529 (quoting *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)). A typicality inquiry may be used to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." 7A Wright & Miller, *Federal Practice and Procedure* § 1764 (3d ed. 2018).

Count Five challenges defendants' practice of failing to conduct an ability-to-pay inquiry and defendants' conflict of interest in evaluating ability to pay—both of which are generally applicable to the putative class members. *Cf. Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (finding typicality satisfied where plaintiff "framed her challenge in terms of [defendant's] general practice of overestimating social security benefits"). Indeed, the named plaintiffs' claims for declaratory relief are identical to those of the other putative class members. Plaintiffs have therefore satisfied the typicality requirement.

### 4.    *Adequacy of representation*

The final requirement of Rule 23(a) is that the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is "essential to due process, because a final

30

judgment in a class action is binding on all class members." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)).   To meet the adequacy requirement, the "class representative[s], their counsel, and the relationship between the two [must be] adequate to protect the interests of absent class members." *Unger*, 401 F.3d at 321.   The Court must consider both "the zeal and competence" of counsel and "the willingness and ability of the representatives to take an active role in and control the litigation." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002).

Plaintiffs' attorneys in this case have proven to be both zealous and competent.   The declarations by Alec Karakatsanis, Jon M. Greenbaum, David P. Fuad, and William P. Quigley highlight counsel's extensive experience in civil rights cases.[76]   Additionally, the Court is satisfied that the representative parties have adequately represented the interests of the class members, and will continue to do so.   All named plaintiffs have executed affidavits detailing their personal experiences regarding defendants' policies and practices; Alana Cain and Ashton Brown continue to owe court debts to OPCDC; and Cain and Brown have kept counsel apprised of defendants'

---

[76]   R. Docs. 296-3, 296-4, 296-5, 296-6.

ongoing debt collection efforts.  The class representatives and counsel are therefore adequate.

### 5.   *Declaratory class*

Rule 23(b)(2) permits a class action to be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  To satisfy Rule 23(b)(2), "class members must have been harmed in essentially the same way." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007).  "It is well-established that '[i]nstead of requiring common issues, [Rule] 23(b)(2) requires common behavior by the defendant toward the class.'" *Yates*, 868 F.3d at 366 (quoting *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012).  In *Dukes*, the Supreme Court noted that "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Plaintiffs must also show that their claims for equitable relief predominate over any damages claims.  *Maldonado*, 493 F.3d at 524.

32

"[M]onetary relief predominates in [Rule 23](b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998). Incidental damages "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id.* "Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations." *Id.*

Here, plaintiffs' sole remaining claim seeks declaratory relief. Contrary to defendants' arguments, plaintiffs do not seek reimbursement for court debts or other damages. Plaintiffs do seek attorney's fees under 42 U.S.C. § 1988,[77] but such fees are incidental to plaintiffs' request for declaratory relief. *See Yates*, 868 F.3d at 359 n.1 (affirming certification of Rule 23(b)(2) class even though plaintiffs sought attorney's fees).

As explained earlier, the first aspect of Count Five challenges a policy or practice that is generally applicable to the class, and all class members are at risk of suffering the same constitutional injury. The Judges' policy or practice may be declared unconstitutional only as to all of the class members or as to none of them. *Dukes*, 564 U.S. at 360. This general applicability

---

[77]    *See* R. Doc. 161-4 at 61.

satisfies Rule 23(b)(2) even though not all members of the class will actually be imprisoned for nonpayment of court debts. *See* Fed. R. Civ. P. 23 advisory committee note to 1966 amendment ("Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."). The second aspect of Count Five, challenging the Judges' institutional conflict of interest, involves the same conduct and the same injury for all members of the subclass defined earlier. This conflict of interest may be declared unconstitutional only as to all members of the subclass or as to none of them. Plaintiffs have therefore satisfied Rule 23(b)(2)'s requirements.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment on Count Six. Count Six is DISMISSED WITH PREJUDICE. Plaintiffs' motion for class certification is GRANTED. The following class is certified as to the first part of Count Five: all persons who owe or will incur court debts arising from cases adjudicated in OPCDC. The following subclass is also certified as to the second part of Count Five: all

class members whose debts are at least partly owed to the OPCDC Judicial Expense Fund.

New Orleans, Louisiana, this __2nd__ day of August, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

35